UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MICHAEL WHITE**, on behalf of himself and all others similarly situated,<br><br>       Plaintiff,<br>vs.<br><br>**MEMBERS 1ST CREDIT UNION**,<br><br>       Defendant. | **CLASS ACTION COMPLAINT**<br><br>No: _____<br><br>**JURY TRIAL DEMANDED** |

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

COMES NOW the Plaintiff Michael White, by counsel, and for his Class Action Complaint against the Defendant, he alleges as follows:

**INTRODUCTION**

1. This is a civil action seeking monetary damages, restitution and declaratory relief from Defendant, Members 1st Federal Credit Union ("Members 1st"), arising from the unfair and unconscionable assessment and collection of "Overdraft Fees" ("OD Fees") on accounts that were never actually overdrawn.

2. Besides being deceptive, unfair and unconscionable, these practices breach contract promises made in the Members 1st's adhesion contracts—specifically, the promise to charge OD Fees only on transactions which actually overdraw an account.

3. In plain, clear, and simple language, the checking account contract documents discussing OD Fees promise that the Members 1st will only charge OD Fees on transactions with insufficient funds to "pay" a given transaction.

4. As happened to Plaintiff, however, Members 1st charges OD Fees even when the transaction has not overdrawn an account. For example, Plaintiff White was charged an OD Fee

on October 12, 2017.  But, according to the monthly account statement prepared by Members 1st, *Plaintiff's account balance was never negative during the entire two weeks preceding the supposed overdraft event*. By definition, then, there were always funds to "cover" that transaction—yet Members 1st assessed an OD Fee on it anyway.

5. In short, Members 1st is not authorized by contract to charge OD Fees on transactions that have not overdrawn an account, but it has done so and continues to do so. Its assessment of OD Fees in this manner also violates federal Regulation E, which requires full and fair disclosure of overdraft practices.

6. Plaintiff and other Members 1st customers have been injured by Members 1st's practices.  On behalf of herself and the putative class, Plaintiff seeks damages, restitution and injunctive relief for Members 1st's breach of contract.

## JURISDICTION

7. This Court has original jurisdiction over this putative class action lawsuit pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332(d)(2) & (6), because the aggregate sum of the claims of the members of each of the putative classes exceeds $5 million, exclusive of interest and costs, because Plaintiff brings this action on behalf of proposed classes that are each comprised of over one hundred members, and because at least one of the members of each of the proposed classes is a citizen of a different state than Members 1st.

8. Venue is proper in this district pursuant to 218 U.S.C. § 1391 because Members 1st is subject to personal jurisdiction here and regularly conducts business in the Middle District of Pennsylvania, and because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this district.

**PARTIES**

9. Plaintiff Michael White ("Plaintiff White") is a natural person who resides in Lebanon, PA. Plaintiff White has a personal checking account with Members 1st.

10. Defendant Members 1st is a credit union with approximately $4 billion in assets. It is one of the largest credit unions in Pennsylvania. Members 1st is headquartered in Mechanicsburg, PA and maintains branch locations across the Commonwealth of Pennsylvania. Members 1st's account holders are located primarily in Pennsylvania but, on information and belief, many account holders of Members 1st reside in surrounding states.

11. Plaintiff is informed and believes, and thereupon alleges, that at least one of the members of each of the proposed classes is a citizen of a state other than Pennsylvania. Members 1st's website makes clear that individuals who reside outside of Pennsylvania are welcomed to join the credit union as members, so long as they meet some other criteria.

12. Plaintiff is informed and believes, and thereupon alleges, that numerous individuals who reside outside of Pennsylvania are in fact members of Members 1st, and that many of those non-Pennsylvania resident members are members of the proposed classes in this case.

13. Even for accountholders who first opened a Members 1st account while they lived in Pennsylvania, many now reside outside of Pennsylvania. Upon information and belief, at least one of those persons is a member of the putative classes.

**FACTUAL BACKGROUND AND GENERAL ALLEGATIONS**

14. Plaintiff has a checking account with Members 1st.

15. Members 1st issues debit cards to its checking account customers, including Plaintiff, which allows its customers to have electronic access to their checking accounts for purchases, payments, withdrawals and other electronic debit transactions.

16. Pursuant to its standard account agreement, Members 1st charges fees (currently in the amount of $37) for debit card transactions that purportedly result in an overdraft.

### A. **Members 1st Account Documents**

17. Plaintiff's checking account with Members 1st was, at all relevant times, governed by Members 1st's standardized contract for deposit accounts, the material terms of which are drafted by Members 1st, amended by Members 1st from time to time at its convenience and complete discretion, and imposed by Members 1st on all of its customers.

18. In plain, clear, and simple language, the checking account contract documents discussing OD Fees promise that the Members 1st will only charge OD Fees on transactions with insufficient funds to "pay" a given transaction:

> If, on any day, the available funds in your share or deposit account are not sufficient to pay the full amount of a check, ACH, Bill Pay, or point-of-sale (POS) transaction, or other item posted to your account plus any applicable fee ("overdraft"), we may pay or return the overdraft. The Credit Union's determination of an insufficient available account balance may be made at any time between presentation and the Credit Union's midnight deadline with only one 5 (1) review of the account required. We do not have to notify you if your account does not have sufficient available funds to pay an overdraft. Your account may be subject to a charge for each overdraft regardless of whether we pay or return the overdraft. Except as otherwise agreed in writing, if we exercise our right to use our discretion to pay an overdraft, we do not agree to pay overdrafts in the future and may discontinue covering overdrafts at any time without notice. If we pay an overdraft or impose a fee that overdraws your account, you agree to pay the overdrawn amount in accordance with your overdraft protection, in accordance with our overdraft services policy. For ATM and everyday debit card purchases, you must be consented to the Credit Union's extra courtesy pay in order for the transaction amount to be covered. Without your consent, the Credit Union may not authorize and pay an overdraft resulting from these types of transactions. Services and fees for overdrafts are shown in the document the Credit Union uses to capture the member's opt-in choice for extra courtesy pay and the Rate and Fee Schedule.

"Members 1st Membership Booklet," attached as Exhibit A.

19. Similarly, the account's fee schedule states:

| 2017 Service Charges | |
|---|---|
| Non-Sufficient Funds Posted Point-of-Sale Item | $37 each (does not apply to declined transactions) |
| Non-Sufficient Funds Courtesy Paid Check, Debit, Bill Pay or Point-of-Sale Item | $37 each |

"Fee Schedule," attached as Exhibit B.

20. Federal law requires that banks and credit unions receive affirmative consent from accountholders before charging overdraft fees for ATM and/or non-recurring debit card purchases.

21. Regulation E required Members 1st to provide its customers the information required to obtain their legally binding informed consent because. But Members 1st failed to do this, because its opt-in disclosures contained the same or similar misrepresentations regarding Members 1st's true overdraft policies as the account contract documents did.

22. The importance of Regulation E is highlighted by the fact that the Consumer Financial Protection Bureau's ("Bureau") study of actual practices found that: 1) ATM and debit card transactions are by far the most frequent transactions that occur; 2) overdraft fee policies entail expensive fees at very little risk to the financial institutions; and 3) opted-in accounts have seven times as many overdrafts that result in fees as not opted-in accounts.

**B.    Plaintiff's Experience**

23. On August 24, 2018, Plaintiff White was assessed two OD Fees in the amount of $37 each on debit card transactions that did not overdraw his account. According to the bank statement issued by Members 1st, his account never went negative for such transactions. His account, in fact, never did not go into the negative until after Members 1st assessed $74 in OD

Fees. In short, Plaintiff had sufficient funds to cover the transactions that supposedly caused OD Fees.

## CLASS ALLEGATIONS

24. Plaintiff brings this action on behalf of himself and all others similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure. This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of Rule 23.

25. The proposed classes are defined as:

> All Members 1st checking account holders who, during the applicable statute of limitations through the date of class certification, were charged OD Fees on transactions that did not overdraw their checking accounts.

> All Members 1st checking account holders that reside within the Commonwealth of Pennsylvania, who, during the applicable statute of limitations through the date of class certification, were charged OD Fees on transactions that did not overdraw their checking accounts.

26. Plaintiff reserves the right to modify or amend the definition of the proposed Class before the Court determines whether certification is appropriate.

27. Excluded from the Class are Members 1st, its parents, subsidiaries, affiliates, officers and directors, any entity in which Members 1st has a controlling interest, all customers who make a timely election to be excluded, governmental entities, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

28. The members of the Class are so numerous that joinder is impractical. The Class consist of thousands of members, the identity of whom is within the knowledge of and can be ascertained only by resort to Members 1st's records.

29. The claims of the representative Plaintiff are typical of the claims of the Class in that the representative Plaintiff, like all Class members, was charged OD Fees by Members 1st as

a result of charging OD Fees on transactions that did not actually overdraw checking accounts. The representative Plaintiff, like all Class members, has been damaged by Members 1st's misconduct in that they have been overdraft charges that violate the account contract. Furthermore, the factual basis of Members 1st's misconduct is common to all Class members and represents a common thread of unfair and unconscionable conduct resulting in injury to all members of the Class.

30. There are numerous questions of law and fact common to the Class and those common questions predominate over any questions affecting only individual Class members.

31. Among the questions of law and fact common to the Class are whether Members 1st:

    a. Imposed OD Fees on debit card transactions when those transactions did not overdraw accounts;

    b. Breached its covenant of good faith and fair dealing with Plaintiffs and other members of the Classes through its overdraft policies and practices;

    c. Violated the consumer protection acts of certain states through its overdraft policies and practices.

    d. Violated Regulation E and EFTA.

Other questions of law and fact common to the Class include:

    e. The proper method or methods by which to measure damages, and

    f. The declaratory relief to which the Class are entitled.

32. Plaintiff's claims are typical of the claims of other Class members, in that they arise out of the same wrongful overdraft policies and practices of Members 1st's account contract. Plaintiff has suffered the harm alleged and has no interests antagonistic to the interests of any other

Class member.

33. Plaintiff is committed to the vigorous prosecution of this action and has retained competent counsel experienced in the prosecution of class actions and, in particular, class actions on behalf of consumers and against financial institutions. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

34. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Since the amount of each individual Class member's claim is small relative to the complexity of the litigation, and due to the financial resources of Members 1st, no Class member could afford to seek legal redress individually for the claims alleged herein. Therefore, absent a class action, the Class members will continue to suffer losses and Members 1st's misconduct will proceed without remedy.

35. Even if Class members themselves could afford such individual litigation, the court system could not. Given the complex legal and factual issues involved, individualized litigation would significantly increase the delay and expense to all parties and to the Court. Individualized litigation would also create the potential for inconsistent or contradictory rulings. By contrast, a class action presents far fewer management difficulties, allows claims to be heard which might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale and comprehensive supervision by a single court.

## FIRST CLAIM FOR RELIEF
### Breach of Contract and Breach of the Covenant of Good Faith and Fair Dealing[1]
**(On Behalf of the Class)**

36. Plaintiff repeats paragraphs 1 through 35 above.

37. Plaintiff and Members 1st have contracted for bank account deposit, checking, ATM, and debit card services.

38. Under the laws of Pennsylvania, good faith is an element of every contract pertaining to the assessment of overdraft fees. Whether by common law or statute, all such contracts impose upon each party a duty of good faith and fair dealing. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit – not merely the letter – of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form. Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

39. Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes his conduct to be justified. A failure to act in good faith may be overt or may consist of inaction, and fair dealing may require more than honesty. Examples of violations of good faith and fair dealing include evasion of the spirit of the bargain, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.

---

[1] Certain states recognize a claim for breach of the covenant of good faith and fair dealing as a separate and independent claim from breach of contract. Other states like Pennsylvania treat breach of the covenant of good faith and fair dealing as a species of breach of contract. For the sake of convenience, these claims are brought in a single count.

40. Members 1st has breached the covenant of good faith and fair dealing in its account agreement with customers through its overdraft policies and practices as alleged herein.

41. Members 1st breached promises included in the account documents as described herein when it charged overdraft fees on transactions that did not overdraw checking accounts.

42. Plaintiff and members of the Class have performed all, or substantially all, of the obligations imposed on them under the contract.

43. Plaintiff and members of the Class have sustained damages as a result of Members 1st's breach of the contract.

### SECOND CLAIM FOR RELIEF
### Violations of Pennsylvania Unfair Trade Practice Laws
**(On Behalf of the Pennsylvania Class)**

44. Plaintiff repeats paragraphs 1 through 44 above.

45. This claim is asserted on behalf of the Subclass of Members 1st customers who are Pennsylvania residents and enjoy the protections of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1 *et seq*.

46. The UTPCPL, PA ST 73 P.S. § 201-3 prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."

47. Members 1st engages in unfair business practices relating to the imposition of overdraft fees on consumers, in violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1 *et seq*. In particular, the wrongful conduct described herein violated 73 P.S. § 201-2(4)(v) (representing that goods or services have characteristics, uses, or benefits that they do not have), § 201-2(4)(xiv) (failing to comply with the terms of any

written guarantee or warranty given to a buyer), and § 201-2(4)(xxi) (engaging in any other deceptive conduct which creates a likelihood of confusion or misunderstanding).

48. Pursuant to PA ST 73 P.S. § 201-9.2, *et seq.*, Plaintiff and members of the Pennsylvania Class purchased services, in the form of banking services, from Members 1st that were used primarily for personal, family or household purposes.

49. Members 1st engaged in unlawful conduct, made affirmative misrepresentations, or otherwise violated the UTPCPL by, *inter alia*, knowingly and intentionally employing an unfair and deceptive policy and practice regarding its overdraft policy in its Deposit Agreement and related documents.

50. Specifically, Members First affirmatively promises to customers like the Plaintiff to only charge OD Fees on transactions which actually overdraw an account. These promises are a written guarantee of how the Plaintiff and Class Members' money will be handled by Members 1st. However, Members 1st does charge OD Fees even when the transaction has not overdrawn an account.

51. Members 1st intended that Plaintiff and all Class Members rely on the affirmative misrepresentations which were false and deceived the Plaintiff and Class Members in the process of choosing a retail bank, in making purchase decisions, and in conducting their day to day activities in an objective effort not to be charged OD fees. Plaintiff and all Class Members justifiably relied upon Members 1st's promises and guarantees.

52. Members 1st also engaged in unlawful conduct in violation of the UTPCPL by making knowing and intentional omissions. Members 1st knowingly failed to disclose its policy and practice regarding its overdraft policy in its Deposit Agreement and related documents.

53. Members 1st intended that Plaintiff and all Class Members rely on the acts of concealment and omissions, so that Plaintiff and all Class Members would continue to incur overdraft fees.

54. Members 1st's conduct caused Plaintiff and Class members to suffer ascertainable losses in the form of excessive overdraft fees that, but for Members 1st's unfair and deceptive policy, would not otherwise have been imposed.

55. A causal relationship exists between Members 1st's unlawful conduct and the ascertainable losses suffered by Plaintiff and the Class. Had Members 1st processed transactions as it should have, Plaintiff and the Class would not have incurred excessive overdraft fees in violation of the UTPCPL.

56. As redress for Members 1st's repeated and ongoing violations of these consumer protection statutes, Plaintiff and the Subclass are entitled to, inter alia, damages and declaratory relief.

**THIRD CLAIM FOR RELIEF**
<u>**Violation of Electronic Fund Transfers Act (Regulation E)**</u>
<u>**C.F.R. § 1005 et seq. (authority derived from 15 U.S.C. § 1693 et seq.))**</u>
**(On Behalf of the Class)**

57. Plaintiff repeats paragraphs 1 through 54 above.

58. By charging overdraft fees on ATM and nonrecurring transactions, Members 1st violated Regulation E (12 C.F.R. §§1005 et seq.), whose "primary objective" is "the protection of consumers" (§1005.l(b)) and which "carries out the purposes of the [Electronic Fund Transfer Act 15 U.S.C. §§1693 et seq.), the "EFTA"] (§1005. l(b)), whose express "primary objective" is also "the provision of individual consumer rights" (15 U.S.C. §1693(b)).

59. Specifically, the charges violated what is known as the "Opt In Rule" of Regulation E (12 C.F.R. § 1005.17.) The Opt In Rule states: "a financial institution ... shall not assess a fee

or charge ... pursuant to the institution's overdraft service, unless the institution: (i) [p]rovides the consumer with a notice in writing [the opt-in notice]. . . describing the institution's overdraft service" and (ii) "[p ]rovides a reasonable opportunity for the consumer to affirmatively consent" to enter into the overdraft program. (Id.) The notice "shall be clear and readily understandable." (12 C.F.R. §205.4(a)(l).) To comply with the affirmative consent requirement, a financial institution must provide a segregated description of its overdraft practices that is accurate, non-misleading and truthful and that conforms to 12 C.F.R. § 1005.17 prior to the opt-in and must provide its customers a reasonable opportunity to opt-in after receiving the description. The affirmative consent must be provided in a way mandated by 12 C.F.R. § 1005.17, and the financial institution must provide confirmation of the opt-in in a manner that conforms to 12 C.F.R. § 1005.17.

60. The intent and purpose of this Opt-In Contract is to "assist customers in understanding how overdraft services provided by their institutions operate .... by explaining the institution's overdraft service ... in a clear and readily understandable way"-as stated in the Official Staff Commentary (74 Fed. Reg. 59033, 59035, 59037, 5940, 5948), which is "the CFPB's official interpretation of its own regulation," "warrants deference from the courts unless 'demonstrably irrational,'" and should therefore be treated as "a definitive interpretation" of Regulation E. *Strubel v. Capital One Bank (USA)*, 2016 U.S. Dist. LEXIS 41487, *11 (S.D. N.Y. 2016) (quoting *Chase Bank USA v. McCoy*, 562 U.S. 195, 211 (2011)) (so holding for the CFPB's Official Staff Commentary for the Truth In Lending Act's Regulation Z)).

61. Members 1st failed to comply with Regulation E, 12 C.F.R. § 1005.17, which requires affirmative consent before a financial institution is permitted to assess overdraft fees against customers' accounts through an overdraft program for ATM and non-recurring debit card

transactions. Members 1st has failed to comply with the 12 C.F.R. § 1005.17 opt-in requirements, including failing to provide its customers with a valid description of the overdraft program which meets the strictures of 12 C.F.R. § 1005.17. Members 1st's opt-in method fails to satisfy 12 C.F.R. § 1005.17 because, inter alia, it states that an overdraft occurs when there is not enough money in the account to cover a transaction but Members 1st pays it anyway, when in fact Members 1st assesses overdraft fees when there is enough money in the account to pay for the transaction at issue.

62. As exhibited by the transactions above, Plaintiff's account had funds to cover the transactions, which were paid, yet Members 1st charged overdraft fees.

63. As a result of violating Regulation E's prohibition against assessing overdraft fees on ATM and non-recurring debit card transactions without obtaining affirmative consent to do so, Members 1st has harmed Plaintiff and the Class.

64. Due to Members 1st's violation of Regulation E (12 C.F.R. § 1005.17), Plaintiff and members of the Classes are entitled to actual and statutory damages, as well as attorneys' fees and costs of suit pursuant to 15 U.S.C.A. § 1693.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff and the Class demand a jury trial on all claims so triable and judgment as follows:

1. Declaring Members 1st's OD Fee policies and practices to be wrongful, unfair and unconscionable;

2. Restitution of all OD Fees paid to Members 1st by Plaintiff and the Class, as a result of the wrongs alleged herein in an amount to be determined at trial;

3. Actual damages in an amount according to proof;

4. Pre-judgment interest at the maximum rate permitted by applicable law;

5. Costs and disbursements assessed by Plaintiff in connection with this action, including reasonable attorneys' fees pursuant to applicable law;

6. Such other relief as this Court deems just and proper.

**TRIAL BY JURY IS DEMANDED**

Respectfully submitted,

*/s/ Kenneth J. Grunfeld*
Kenneth J. Grunfeld
PA Attorney ID: 84121
kgrunfeld@golombhonik.com
**GOLOMB & HONIK, P.C.**
1835 Market Street, Suite 2900
Philadelphia, PA 19103
Telephone: (215) 346-7338
Facsimile: (215) 985-4169

Jeffrey D. Kaliel
(*pro hac vice to be filed*)
**KALIEL PLLC**
1875 Connecticut Ave. NW 10th Floor
Washington, D.C. 20009
(202) 350-4783
jkaliel@kalielpllc.com

GREG F. COLEMAN
(*pro hac vice to be filed*)
greg@gregcolemanlaw.com
**GREG COLEMAN LAW PC**
First Tennessee Plaza
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Telephone: (865) 247-0080
Facsimile: (865) 522-0049

***Counsel for Plaintiffs and the Proposed Classes***