**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

MICHAEL WHITE, on Behalf of
Himself and All Others Similarly
Situated,

                     Plaintiff,

v.

MEMBERS 1ST FEDERAL CREDIT
UNION,

                   Defendant.

**Case No. 1:19-cv-00556-JEJ**

**PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF CLASS SETTLEMENT AND FOR
CERTIFICATION OF CLASS
AND INCORPORATED MEMORANDUM OF LAW**

<h1 style="text-align:center"><u>Table of Contents</u></h1>

I.   INTRODUCTION ................................................................ 1

II.  STATEMENT OF FACTS ................................................. 4

A. Factual Background and Procedural History ........................... 4

B. Summary of the Settlement Terms. ...................................... 4

1.   The Class. ............................................................ 4

2.   Relief for the Benefit of the Class. .......................... 4

3.   Class Release. ....................................................... 5

4.   The Notice Program. .............................................. 5

5.   Attorneys' Fees and Costs. ...................................... 6

6.   Class Representative's Service Awards. ..................... 6

III. ARGUMENT .................................................................. 6

A. The Legal Standard for Preliminary Approval. ........................ 6

B. This Settlement Satisfies the Criteria for Preliminary
   Approval. ................................................................... 8

1.   23(e)(2)(A):  The Class Representative and Class Counse  l
     Adequately Represent the Class. ............................... 9

2.   23(e)(2)(B); This Settlement is the Product of Arm's Length
     Negotiations. ....................................................... 10

3.   23(e)(2(C):  The Relief Provided to the Class is Adequate. .. 12

4.   23(e)(2)(D):  The proposal treats class members equitably. 17

C. Certification of the Class is Appropriate. ............................ 17

D. The Court Should Approve the Proposed Notice Program
   Because it is Constitutionally Sound. ................................ 22

E. The Court Should Schedule a Final Approval Hearing. ........ 23

IV.  CONCLUSION ................................................................ 24

i

## Table of Authorities

**Cases**                                                                 **Page(s)**

*In re Am. Family Enters.*, 256 B.R. 377 (D.N.J. 2000) ........................... 10

*Amchem Prods. v. Windsor*, 521 U.S. 591 (1997) ............................... 18, 20

*Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534 (S.D. Fla. 1988) ... 15, 16

*Callahan v. Commonwealth Land Title Ins. Co.*, 1990 WL 168273

    (E.D. Pa. Oct. 29, 1990) ...................................................... 15

*In re Cendant Corp. Litig.*, 264 F.3d 201 (3d Cir. 2001) ....................... 21

*In re Cendant Corp. Sec. Litig.*, 109 F. Supp. 2d 235 (D.N.J. 2000) ....... 23

*In re Cigna Corp. Sec. Litig.*, 2007 WL 2071898

    (E.D. Pa. July 13, 2007) ................................................... 11, 12

*Daniel B. v. O'Bannon*, 633 F. Supp. 919 (E.D. Pa. 1986) ..................... 15

*GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768

    (3d Cir. 1995) ................................................................ 21

*Hall v. Accolade, Inc.*, 2019 U.S. Dist. LEXIS 143542

    (E.D. Pa. Aug. 23, 2019) ..................................................... 7

*Hall v. AT&T Mobility L.L.C.*, 2010 WL 4053547

    (D.N.J. Oct. 13, 2010) ....................................................... 11

*In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241 (3d Cir. 2009) ......... 21

*Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298

    (S.D. Fla. 2005)........................................................ 13-14, 16

*Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306 (1950) ............ 22

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. 450

    (D.N.J. 1997) ................................................................ 10

*Sacred Heart Health Sys. v. Humana Mil. Healthcare Servs.*, 601 F.3d

    1159 (11th Cir. 2010) ................................................... 21, 22

*Serrano v. Sterling Testing Sys., Inc.*, 711 F. Supp. 2d 402
  (E.D. Pa. 2010) ............................................................... 10, 11

*Stewart v. Abraham*, 275 F.3d 220 (3d Cir. 2001) .................................. 19

*Torres v. Bank of Am.* (*In re Checking Account*), 830 F. Supp. 2d 1330
  (S.D. Fla. 2011) .............................................................. 12-13

*United States v. D'Auterive*, 51 U.S. (10 How.) 609 (1851) .................... 21

*United States v. Glens Falls Newspapers*, 160 F.3d 853
  (2d Cir. 1998) ............................................................... 14, 15

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ............................ 19

*Warfarin Sodium Antitrust Litig.*, 391 F.3d 516 (3d Cir. 2004) ........ 19, 20

**Rules**

Fed. R. Civ. P. 23 ............................................................... *passim*

**Other**

*Manual for Compl. Lit.* § 21.312 ........................................... 22

# I.    <u>INTRODUCTION</u>

Plaintiff Michael White ("Plaintiff"), respectfully moves for Preliminary Approval of the Settlement Agreement and Release ("Settlement" or "Agreement"), attached as Exhibit A, which will resolve all claims against Members 1st Federal Credit Union ("Members 1st"). The Court should grant Preliminary Approval because the Settlement provides substantial relief for the class of former Members 1st account holders defined in  the Agreement ¶ 1(f) ("Class"),   and the terms of the Settlement are well within the range of reasonableness and consistent with applicable case law.   The relief provided by the Settlement is outstanding.  It provides $1.13 million in monetary relief to the Settlement Class, including $910,000 in cash, the forgiveness of approximately $170,000 in debt from former account holders that arose from these challenged fees, and the payment of all notice and administration costs, estimated to be about $50,000.  In addition, Members 1st has implemented a system update, a portion of which is designed to prevent overdraft fees on transactions approved on a positive available balance.  *See* Agreement ¶¶ 2, 3, 9.

Accordingly, Plaintiff respectfully requests that the Court

1

preliminarily approve this Settlement, approve the Notice Program and the form and content of the Notice attached to the Agreement as Exhibit 1, certify a Class under Rule 23; and set a Final Approval Hearing Date and other deadlines.

The Settlement satisfies all Third Circuit criteria for settlement approval. One of the keystones of this Settlement is that Class Members will automatically—without having to do anything at all—receive their *pro rata* share of the Net Settlement Fund. There are no claims forms to fill out, and Class Members will not be asked to prove that they were damaged as a result of Members 1st's practice regarding overdraft fees. Instead, Class Counsel, Class Counsel's expert, and the Settlement Administrator will use available Members 1st data to determine which Members 1st checking account holders were affected by the practice, and will apply a simple formula to calculate each Class Member's *pro rata* share of the Net Settlement Fund. Agreement ¶ 9(e).

Another testament to the reasonableness and fairness of the Settlement is the magnitude of the Settlement Fund. Class Counsel negotiated a $910,000 cash payment, which alone represents approximately 50% of the most likely recovery the Class could have achieved at trial; the other monetary benefits place the recovery at closer

2

to 65% of damages.  Joint Declaration of Kenneth J. Grunfeld, Jeffrey Kaliel, and Arthur Stock ("Joint Decl.") ¶10, attached as Exhibit B. In the face of certain risks discussed below, this Settlement is eminently fair and reasonable and merits Preliminary Approval.

Therefore, as detailed below, Plaintiff respectfully requests that the Court take the following initial steps in the Settlement approval process: (1) grant Preliminary Approval to the Settlement; (2) certify for settlement purposes the proposed Class, pursuant to Rule 23(b)(3) and (e) of the Federal Rules of Civil Procedure; (3) appoint Michael White as class representative; (4) approve and order disclosure of Members 1st data concerning Class members to the Settlement Administrator for purposes of implementing the Settlement's Notice Program;  (5) approve the Notice Program set forth in the Agreement and approve the form and content of the Notices attached to the Agreement as Exhibits 1 and 2; (6) approve and order the opt-out and objection procedures set forth in the Agreement; (7) stay the Action against Members 1st pending Final Approval of the Settlement; (8) appoint as Class Counsel the law firms of Kaliel PLLC, Greg Coleman Law Firm, and Golomb & Honik; and (9) schedule a Final Approval Hearing to occur no sooner than 205 days from the date of Preliminary Approval .

3

II.   **STATEMENT OF FACTS**

A.   **Factual Background and Procedural History**

This case concerns Members 1st's  practice of charging Overdraft Fees on transactions where the account holder had sufficient funds at the time the transaction occurred, but insufficient funds at the that the transaction was processed, often later in the same day ("Authorize Positive, Purportedly Settle Negative Fees" or  "APPSN Fees").   The factual background, allegations, and procedural history are set forth in the Joint Decl. ¶¶ 5-12.

B.   **Summary of the Settlement Terms.**

1.   **The Class.**

The Class is defined as:

**former members of Members who were charged APPSN Fees between March 29, 2015 and January 14, 2019, and who had closed their accounts prior to January 14, 2019.**

Agreement ¶ 1(f).  The Class excludes individuals who held accounts after January 14, 2019 because those individuals have agreed to arbitrate disputes and have waived participation in class actions against Members 1st.  Joint Decl. ¶ 7.

2.   **Relief for the Benefit of the Class.**

The Settlement consideration consists of four main components:  (a)

4

a $910,000 cash Settlement Fund to be distributed to Class Members; (b) forgiveness of debts in the amount of $170,000 incurred by Class Members to Members 1st, other than debts as a consequence of credit cards, loans, or fraud,[1] (c)the separate payment of costs of providing Notice to the Class and administration of the Settlement, including the fees and expenses of the Settlement Administrator and the Notice Administrator, approximately $50,000; and (d) implementation of a system update, a portion of which is designed to prevent overdraft fees on transactions approved on a positive available balance. Agreement ¶¶ 2, 3, 6(e),  9.

### 3.       Class Release.

In exchange for the benefits conferred by the Settlement, all Class Members will be deemed to have released members 1st from claims relating to the subject matter of the Action.  Agreement ¶ 14.

### 4.       The Notice Program.

Notice will be distributed to all Class members by United states mail.  The Notice Program is described in detail in the Agreement ¶ 6 and Joint Decl. ¶, ¶¶ 15-17.

---

[1] It is assumed that these debts arose as a consequence of overdraft charges that are at issue in this case.

**5.      Attorneys' Fees and Costs.**

In a fee petition to be filed before the Final Hearing, Class Counsel may request attorneys' fees of up to thirty-three percent (33 1/3%) of the value of the Settlement, as well as reimbursement of costs and expenses incurred in connection with the Action.  Agreement ¶ 9(e)(i); Joint Decl. ¶¶ 18-19.

**6.      Class Representative's Service Awards.**

Class Counsel will also seek a Service Award of up to $5,000 for Plaintiff Michael White. Agreement ¶ 9(e) (2).   If approved by the Court at the time of Final Approval, the Service Award will be paid from the Settlement Fund, and will be in addition to the Class Member Payments the Plaintiff will be entitled to under the terms of the Settlement.  Id.

## III.   ARGUMENT

### A.     The Legal Standard for Preliminary Approval.

The 2018 amendments to Fed.R.Civ.P. 23(e) sets forth the standards for this Court's consideration of the motion for preliminary approval:

(1) **Notice to the Class**

(A) **Information That Parties Must Provide to the Court.** The parties must provide the court with information sufficient to enable it to determine whether to give notice of

the proposal to the class.

(B) **Grounds for a Decision to Give Notice.** The court must direct notice in a reasonable manner to all class members who would be bound by the proposal if giving notice is justified by the parties' showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal.

(2)   *Approval of the Proposal.*
If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:

(A) the class representatives and class counsel have adequately represented the class;
(B) the proposal was negotiated at arm's length;
(C) the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;
(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
(iii) the terms of any proposed award of attorney's fees, including timing of payment; and
(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

*see generally Hall v. Accolade, Inc.,* 2019 U.S Dist. LEXIS 143542 at *5-6

and n.1 (E.D. Pa. Aug. 23, 2019) (noting that the new Rule 23(e)

standards for final approval overlap with standards previously set forth

7

by the Third Circuit).

The Court's grant of Preliminary Approval will allow all members of the Class to receive notice of the proposed Settlement's terms, and of the date and time of the Final Approval hearing at which Class Members may be heard, and at which further evidence and argument concerning the fairness, adequacy, and reasonableness of the Settlement may be presented by the Parties.

**B.     This Settlement Satisfies the Criteria for Preliminary Approval.**

Each of the relevant factors weighs in favor of Preliminary Approval of this Settlement. The Class Representative and Class Counsel adequately represent the Class.  The Settlement was reached through arm's length negotiations by competent counsel, aided by an experienced mediator.  A preliminary review of the factors related to the fairness, adequacy and reasonableness of the Settlement demonstrates that the Settlement fits well within the range of reasonableness, such that Preliminary Approval is warranted.  Finally, all class members are treated equitably relative to each other.

Any settlement requires the parties to balance the merits of the claims and defenses asserted against the attendant risks of continued litigation and delay.  Plaintiff believes that the claims asserted are

8

meritorious and that they would prevail if this matter proceeded to trial. Members 1st argues that Plaintiff's claims are unfounded, denies any potential liability, and up to the point of settlement has indicated a willingness to litigate those claims vigorously.

The parties concluded that the benefits of settlement in this case outweigh the risks and uncertainties of continued litigation, as well as the attendant time and expenses associated with contested class certification proceedings and possible interlocutory appellate review, completing merits discovery, pretrial motion practice, trial, and final appellate review.  Joint Decl. ¶¶ 20-34.

> **1. 23(e)(2)(A):  The Class Representative and Class Counsel Adequately Represent the Class.**

Plaintiff's interests are coextensive with, and not antagonistic to, the interests of the Class, because Plaintiff and the absent members of the Class have the same interest in the relief afforded by the Settlement, and the absent members of Class have no diverging interests.  Further, Plaintiff is represented by qualified and competent counsel.  Class Counsel have devoted substantial time and resources to this Action and will vigorously protect the interests of the Class.

Class Counsel possess extensive experience in prosecuting class

actions, including cases involving overdraft fees, in courts throughout the United States, and have recovered hundreds of millions of dollars for the classes they have represented.  Joint Decl. ¶35-37 and Joint Decl. Exhibits 1-3.  Class Counsel is qualified to represent the Class and will, along with the class representatives, vigorously protect the interests of the Class.  Id.

Recommendations of experienced counsel are entitled to great weight in evaluating a proposed settlement in a class action.  *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. 450, 543 (D.N.J. 1997), *aff'd*, 148 F.3d 283, 311 (3d Cir. 1998).  "Significant weight" should be given "to the belief of experienced counsel that settlement is in the best interest of the class, so long as the Court is satisfied that the settlement is the product of good faith, arms-length negotiations."  *In re American Family Enterprises*, 256 B.R.  377, 421 (D.N.J.  2000); *see also Serrano v. Sterling Testing Sys., Inc.*, 711 F. Supp. 2d 402, 414 (E.D. Pa. 2010).

 2. **23(e)(2)(B); This Settlement is the Product of Arm's Length Negotiations.**

The Settlement in this case is the result of intensive, arm's-length negotiations between experienced attorneys who are familiar with class

action litigation and with the legal and factual issues of this Action.
Joint Decl. ¶¶ 8-9.   The Parties engaged in a full day formal mediation
before an experienced and respected mediator, Justice J. Michael Eakin.
Id.  "[T]he participation of an independent mediator in settlement
negotiations virtually ensures that the negotiations were conducted at
arm's length and without collusion between the parties." *Hall v. AT & T
Mobility LLC*, No. 07-5325 (JLL), 2010 WL 4053547, at *7 (D.N.J. Oct.
13, 2010) (internal quotation marks omitted); *see also In re Cigna Corp.
Sec. Litig.*, 2007 WL 2071898, at *3 (E.D. Pa. July 13, 2007) ("Concerning
the presumption of fairness, it is clear that negotiations for the
settlement occurred at arm's length, as the parties were assisted by a
retired federal district judge who was privately retained and served as a
mediator.").

In negotiating this Settlement in particular, Class Counsel had the
benefit of years of experience and a familiarity with the facts of this case
as well as with other cases involving similar claims.  Id.  As detailed
above, Class Counsel conducted a thorough investigation and analysis of
Plaintiff's claims and engaged in informal discovery.  Class Counsel's
review of the data, with their expert, provided to it enabled it to gain an
understanding of the evidence related to central questions in the case,

11

and prepared it for well-informed settlement negotiations.  Id.

Class Counsel were also well-positioned to evaluate the strengths and weaknesses of Plaintiff's claims, and the appropriate basis upon which to settle them, as a result of their litigating similar claims in both state and federal courts across the country.  Joint Decl. ¶ 35-37.

### 3.    23(e)(2(C):  The Relief Provided to the Class is Adequate.

A preliminary review of the below factors supports a determination that Settlement falls within the "range of reason" such that notice to the Class and a final hearing as to the fairness, adequacy, and reasonableness of the Settlement are warranted.

Plaintiff and Class Counsel are confident in the strength of their case, but are also pragmatic in their awareness of the various defenses available to Members 1st, and the risks inherent to litigation.  Joint Decl. ¶ 27.  As another Court examining an Overdraft Fee settlement noted: "The combined risks here were real and potentially catastrophic . . . . [B]ut for the Settlement, Plaintiffs and the class faced a multitude of potentially serious, substantive defenses, any one of which could have precluded or drastically reduced the prospects of recovery."  *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1347-48 (S.D. Fla. 2011).

12

A major risk is that a jury might find that the language in Members 1st's Account agreements permits a defense that it sufficiently disclosed its APPSN fee practice, and its practices were not deceptive or misleading, or in violation of Regulation E.  Joint Decl. ¶ 26.   Because members 1st's practices regarding overdrafts had been in place for many years, many class members (and the Class Representative) faced potential statute of limitations, estoppel, waiver, and/or ratification defenses. In addition, Members 1st asserted numerous defenses to class certification in its Answer that raise substantial litigation risks.  See Dkt. 28 (Answer to Amended Complaint) at 6-11; Joint Decl. ¶ 26.

Each of these risks, by itself, could easily have impeded Plaintiff's and the Class' successful prosecution of these claims at trial and in an eventual appeal.  Under the circumstances, Plaintiff and Class Counsel appropriately determined that the Settlement reached with Members 1st outweighs the gamble of continued litigation.  Joint Decl. ¶ 27.

Moreover, even if Plaintiff prevailed at trial, any recovery could be delayed for years by an appeal.  *Lipuma v. American Express Company*, 406 F. Supp. 2d 1298, 1322 (S.D. Fla. 2005) (likelihood that appellate proceedings could delay class recovery "strongly favor[s]" approval of a settlement).  This Settlement provides substantial relief to Class

13

Members without further delay.

The claims and defenses in this Action are complex, as is clear by Class Counsel's efforts in other bank overdraft fee cases that have been hard fought for years.  There is no doubt that continued litigation here would be difficult, expensive, and time consuming.  The risks and obstacles in this case are just as great as those in other bank overdraft fee cases and this case would likely have taken years as well to successfully prosecute. Recovery by any means other than settlement would require additional years of litigation in this Court and the Third Circuit Court of Appeals.  *See United States v. Glens Falls Newspapers, Inc.*, 160 F.3d 853, 856 (2d Cir. 1998) (noting that "a principal function of a trial judge is to foster an atmosphere of open discussion among  the parties' attorneys  and representatives so that litigation may be settled promptly and fairly so as to avoid the uncertainty, expense and delay inherent in a trial").

One of the most expensive aspects of ongoing litigation in this case involves the retention of experts to perform data analyses and to present those analyses in expert reports, at depositions, and at trial.  Joint Decl. ¶32.   Experts in the fields of marketing and banking may also be necessary.  Id.  These considerations, and the other considerations noted

above, militate heavily in favor of the Settlement.  Id.  *See Behrens*, 118

F.R.D. at 542 (noting likely "battle of experts" at trial regarding damages,

which would pose "great difficulty" for plaintiffs).

The Settlement provides immediate and substantial benefits to

thousands of Class Members.  Joint Decl. ¶ 33.

The proposed Settlement is the best vehicle for the Class to receive

the relief to which they are entitled in a prompt and efficient manner.  Id.

The Settlement reached here is squarely within the range of possible

approval.  As a result of negotiations, the Parties have reached a

Settlement that Class Counsel believe to be fair, reasonable, and in the

Class' best interests.  Class Counsel's assessment in this regard is

entitled to considerable deference.  *See Callahan v. Commonwealth Land

Title Ins. Co.*, 1990 WL 168273, at *16 (E.D. Pa. Oct. 29, 1990) ( "a court

should refrain from merely substituting its own judgment of the merits of

a settlement for that of counsel intimately associated with the litigation

and consequently far more able to weigh its relative strengths and

weaknesses"); *Daniel B. v. O'Bannon*, 633 F. Supp. 919, 926 (E.D. Pa.

1986) ("the professional judgment of counsel involved in the litigation is

entitled to significant weight").

Courts have determined that settlements may be reasonable even

15

where class members recover only part of their actual losses.  *See Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988) ("[T]he fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate").  "The existence of strong defenses to the claims presented makes the possibility of a low recovery quite reasonable." *Lipuma*, 406 F. Supp. 2d at 1323.

Plaintiff's $910,000 recovery, plus debt forgiveness and system updates by Members 1st, is outstanding, given the complexity of the litigation and the significant barriers that would loom in the absence of settlement: motions for summary judgment; trial; and appeals after a Plaintiff's verdict.  Based on Members 1st's data, Class Counsel estimate that the Class' most likely recoverable damages at trial would have been approximately $1.8 million.  Joint Decl. ¶ 11.  Thus, under the Settlement, Plaintiff and the Class are recovering approximately fifty percent of their most probable damages, without further risks attendant to litigation.  Id.

The settlement provides for an effective means of distributing the settlement fund to the Class:  the amount to which each Class member is entitled shall be determined by  the dollar value of APPSN Fees that each Class Member was charged, based on an analysis of data provided by

16

Members 1st.  The Claims Administrator will divide the available funds among the Class members on a *pro rata* basis.  Thus, no one will have to complete any kind of claim form, and all Class Members will receive the amounts due to them.  Agreement ¶ 9(iv).

There can be no doubt that this Settlement is a fair and reasonable recovery for the Class in light of Members 1st's defenses, and the challenging and unpredictable path of litigation Plaintiff would have faced absent a settlement.

### 4.    23(e)(2)(D):  The proposal treats class members equitably.

The very simple formula for distributing the Net Settlement fund assures that all Class members will be treated equitably.  All Class Members paid the same $37 APPSN Fees, and all Class Members will receive a *pro rata* distribution from the Net Settlement Fund based on the number of APPSN Fees each incurred.  The formula reflects that there are no subclasses, and no relevant differences between Class Members.  Similarly, all Class members with remaining debt attributed to their overdraft fees receive full relief from that debt.

### C.    Certification of the Class is Appropriate.

For settlement purposes, Plaintiff respectfully requests that the Court certify the Class defined in paragraph 1(f) of the Agreement.

17

"Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997).  For purposes of this Settlement, Members 1st does not oppose class certification.  For the reasons set forth below, certification is appropriate under Rule 23(a) and (b)(3).

Certification under Rule 23(a) of the Federal Rules of Civil Procedure requires that (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a).  Under Rule 23(b)(3), certification is appropriate if questions of law or fact common to the members of the class predominate over individual issues, and if a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

The numerosity requirement of Rule 23(a) is satisfied because the Class consists of about 7500 former Members 1st account holders, and joinder of all such persons is impracticable.  Joint Decl. ¶33.  *See Steward*

18

*v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001) ("No minimum number of plaintiffs is required to maintain a suit as a class action, but generally if the named plaintiff demonstrates that the potential number of plaintiffs exceed 40, the first prong of Rule 23(a) has been met.").

"Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury,'" and the plaintiff's common contention "must be of such a nature that it is capable of class wide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (citation omitted). The Third Circuit has held that "commonality" may be satisfied by <u>one</u> common issue. *Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 527  (3d Cir. 2004). Here, the commonality requirement is readily satisfied. There are multiple questions of law and fact – centering on Members 1st's charging of APPSN fees– that are common to the Class, that are alleged to have injured all Class members in the same way, and that would generate common answers central to the viability of the claims were the Action to proceed to trial.

For similar reasons, Plaintiff's claims are reasonably coextensive with those of the absent members of the Class, such that the Rule

19

23(a)(3) typicality requirement is satisfied. *See Jerry Enterprises of Gloucester County, Inc. v. Allied Beverage Group, L.L.C.*, 178 F.R.D. 437, 442 (D.N.J. 1998) ("Certainly, as in this case, when the claims arise from the same event or practice or course of conduct that gives rise to the claims of the class members . . . and if it is based on the same legal theory . . . the typicality requirement is easily satisfied.") (internal citations and questions omitted).  They were subjected to the same practices and claim to have suffered from the same injuries, and because they will benefit equally from the relief provided by the Settlement.  *Warfarin*, 391 F.3d at 531 ("The typicality requirement is 'designed to align the interests of the class and the class representatives so that the latter will work to the benefit of the entire class through the pursuit of their own goals.'").

Plaintiff and Class Counsel satisfy the adequacy of representation requirement of Rule23(a)(4), which "serves to uncover conflicts of the interest between named parties and the class they seek to represent." *Amchem Products, Inc.*, 521 U.S. at 594.  "The adequacy inquiry has two components intended to assure that the absentees' interests are fully pursued: it considers whether the named plaintiff's interests are sufficiently aligned with the absentees', and it tests the qualifications of the counsel to represent the class." *G.M. Trucks,* 55 F.3d at 800; *In re*

20

*Cendant Corp. Litig.*, 264 F.3d 201, 265 (3d Cir. 2001).  Both these components are satisfied.

Certification of the Class is further appropriate because a class action is superior to other available methods for the fair and efficient adjudication of the Action.  "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial."  *Amchem Products, Inc.*, 51 U.S. at 620. Rule 23(b)(3) requires that "[c]ommon issues of fact and law . . . ha[ve] a direct impact on every class member's effort to establish liability that is more substantial than the impact of individualized issues in resolving the claim or claims of each class member."  *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1170 (11th Cir. 2010); *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d at 266 (predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation). Plaintiff readily satisfies the Rule 23(b)(3) predominance requirement because liability questions common to all members of the Class substantially outweigh any possible issues that are individual to each member of the Settlement Class.  All Class Members' relationship with

21

Members 1st arise from identical Account Agreements, and all APPSN charges were for the same amount and were levied in the same circumstances.  Id.; *See Sacred Heart Health Sys.*, 601 F.3d at 1171 ("It is the form contract, executed under like conditions by all class members, that best facilitates class treatment.").

### D. The Court Should Approve the Proposed Notice Program Because it is Constitutionally Sound.

"Rule 23(e)(1)(B) requires the court to direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise . . . ." *Manual for Compl. Lit*. § 21.312.  The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co*., 339 U.S. 306, 314 (1950).  "To satisfy this standard, the notice must inform class members of (1) the nature of the litigation; (2) the settlement's general terms; (3) where complete information can be located; and (4) the time and place of the fairness hearing and that objectors may be heard." *In re Cendant*, 109 F. Supp. 2d at 254.

The proposed Notice Program satisfies all of these criteria.  As

recited in the Settlement, the Notice will properly inform members of the Class of the substantive terms of the Settlement. It will advise members of the Class of their options for opting-out of or objecting to the Settlement, and how to obtain additional information about the Settlement. Since Members 1st has name and address records of all Class Members, The Notice Program will reach a high percentage of the Class and satisfies the requirements of constitutional due process. Joint Decl. ¶¶ 14-16. Therefore, the Court should approve the Notice Program and the form and content of the Notice.

      **E.**    **The Court Should Schedule a Final Approval Hearing.**

The last step in the Settlement approval process is a Final Approval Hearing, at which the Court will make its final evaluation of the Settlement. The Court will determine at or after the Final Approval Hearing whether the Settlement should be approved; whether to enter a Final Approval Order and Final Judgment under Rule 23(e); whether to approve Class Counsel's application for attorneys' fees and reimbursement of costs and expenses; and whether to approve the request for Service Awards to the Plaintiff. Plaintiff requests that the Court schedule the Final Approval Hearing Date no sooner than two hundred five (205) days after the date of the Preliminary Approval/Notice

Order to allow adequate time for the parties to retrieve all data necessary for mailing Notice and calculating the amount of each Class Member's claim.  Any objections and request to opt out of the Settlement shall be filed sixty (60) days before the hearing date.   Plaintiff and Class Counsel will file their motion for Final Approval, fee and cost application and request for service award for plaintiff no later than thirty (30) days prior to the Final Approval Hearing Date.

## IV.    CONCLUSION

Plaintiff respectfully requests that the Court: (1) grant Preliminary Approval to the Settlement; (2) certify for settlement purposes the proposed Class (3) appoint Michael White as class representative; (4) approve and order the disclosure of Members 1st data concerning Class members to the Settlement Administrator for purposes of implementing the Settlement's Notice Program; (5) approve the Notice Program and the form and content of the Notice; (6) approve and order the opt-out and objection procedures set forth in the Agreement; (7) stay the Action pending Final Approval of the Settlement; (8) appoint as Class Counsel the law firms of Kaliel PLLC, Greg Coleman Law Firm, and Golomb & Honik; and (9) schedule a Final Approval Hearing no sooner than 205 days after Preliminary Approval.

For the Court's convenience, Plaintiff attaches as Exhibit C a proposed Order Preliminarily Approving Class Settlement and Certifying Class.

Respectfully Submitted,

/s/*Kenneth J. Grunfeld*
Kenneth J. Grunfeld
PA Attorney ID: 84121
kgrunfeld@golombhonik.com
**GOLOMB & HONIK, P.C.**
1835 Market Street, Suite 2900
Philadelphia, PA 19103
Telephone: (215) 346-7338
Facsimile: (215) 985-4169

Jeffrey D. Kaliel (admitted *pro hac*)
Sophia Gold
**KALIEL PLLC**
1875 Connecticut Ave., NW, 10th Floor
Washington, D.C.  20009
(202) 350-4783
jkaliel@kalielpllc.com
sgold@kalielpllc.com

Greg F. Coleman (admitted *pro hac*)
Arthur Stock
PA Attorney ID 64336
**GREG COLEMAN LAW PC**
First Tennessee Plaza
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Telephone: (865) 247-0080
Facsimile: (865) 522-0049
greg@gregcolemanlaw.com
arthur@gregcolemanlaw.com

***Attorneys for Plaintiff***

25

**CERTIFICATION**


Pursuant to Local Rule 7.8(b)(2), I certify that Plaintiff's Unopposed Motion for Preliminary Approval of Class Settlement and for Certification of Class and Incorporated Memorandum of Law contains 4,984 words, excluding caption, tables, and signature block.


*/s/Kenneth J. Grunfeld*
Kenneth J. Grunfeld

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing was served on all counsel of record via the Court's electronic filing system (CM/ECF).

Dated:  January 31, 2020

/s/ *Kenneth J. Grunfeld*
Kenneth J. Grunfeld