# EXHIBIT A

# SETTLEMENT AGREEMENT AND RELEASE

*Michael White v. Members 1st Federal Credit Union*

## PREAMBLE

This Settlement Agreement and Release (the "Agreement") is entered into by and among plaintiff Michael White ("Named Plaintiff") and all those on whose behalf he is prosecuting this action (each of them a "Plaintiff" and all of them "Plaintiffs"), on the one hand, and defendant Members 1st Federal Credit Union ("Members"), on the other hand, as of the date executed below. All references in this Agreement to a "party" or the "parties" shall refer to a party or the parties to this Agreement.

## RECITALS

A.    Named Plaintiff initiated the Action (defined below) by filing a Class Action Complaint in the Philadelphia County Court of Common Pleas on December 6, 2018, alleging breach of contract and violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law. Members filed preliminary objections seeking, among other things, to transfer the Action to Cumberland County, Pennsylvania. Named Plaintiff voluntarily dismissed the Action and filed a new action in the United States District Court for the Middle District of Pennsylvania on March 29, 2019, adding a claim arising under the federal Electronic Funds Transfer Act, and Regulation E established by that Act.

B.    Members moved to dismiss the Action on June 4, 2019, arguing, inter alia, that Named Plaintiff could not represent the members who were bound by the arbitration provision and class action waiver that had been incorporated into its Member Agreements. In response, Named Plaintiff filed an Amended Complaint (defined below) on July 9, 2019.

C.    The Amended Complaint limits the Class to individuals who incurred APPSN Fees between March 29, 2015 (within the four year limitations period for breach of contract from the date the Common Pleas Complaint was filed) to January 14, 2019 the date that Members added the arbitration provision and class action waiver to its Member Agreements. It also limited Class membership to individuals who had closed their accounts before Members added the arbitration provision and class action waivers to its Member Agreements. In doing so, Named Plaintiff acknowledged he did not represent Members' current members.

D.    On November 13, 2019, the Parties engaged in mediation before Justice Michael Eakin (Ret'd), which resulted in this Agreement.

E.    Members is entering into this Agreement to resolve any and all controversies and disputes arising out of or relating to the allegations made in the Amended Complaint, and to avoid the burden, risk, uncertainty, expense, and disruption to its business operations associated with further litigation. Members does not in any way acknowledge, admit to or concede any of the allegations made in the Amended Complaint, and expressly disclaims and denies any fault or liability, or any charges of wrongdoing that have been or could have been asserted in the Amended Complaint. Members nevertheless believes that this settlement is in its best interest

1

and in the best interests of all of its members.  Nothing contained in this Agreement shall be used or construed as an admission of liability and this Agreement shall not be offered or received in evidence in any action or proceeding in any court or other forum as an admission or concession of liability or wrongdoing of any nature or for any other purpose other than to enforce the terms of this Agreement.

F.      Named Plaintiff is entering into this Agreement to liquidate and recover on the claims asserted in the Amended Complaint, and to avoid the risk, delay, and uncertainty of continued litigation.  Named Plaintiff does not in any way concede the claims alleged in the Amended Complaint lack merit or are subject to any defenses.

## **<u>AGREEMENT</u>**

**NOW**, **THEREFORE**, in consideration of the foregoing recitals, which are incorporated into and are an integral part of this Agreement, and in consideration of the mutual promises below, the parties agree as follows:

1.      **<u>DEFINITIONS.</u>**   In addition to the definitions contained elsewhere in this Agreement, the following definitions shall apply:

(a)      "Action" shall mean <u>Michael White v. Members 1st Federal Credit Union</u>, No. 1:19-cv-00556 (JEJ).

(b)      "Amended Complaint" shall mean the Amended Complaint Named Plaintiff filed on July 9, 2019.

(c)      "APPSN Fee(s)" shall mean the overdraft fee that Members charges on certain Point of Sale debit card transactions where there was a sufficient available balance at the time the transaction was authorized, but an insufficient available balance at the time the transaction was presented to Members for payment and posted to a member's account.

(d)      "Bar Date To Object" shall be the date set by the Court as the deadline for Class Members to file an Objection.  The Bar Date To Object shall be thirty (30) days after the date the Notice (defined below) must be delivered to the Class Members.

(e)      "Bar Date To Opt Out" shall be the date set by the Court as the deadline for Class Members to opt out.  The Bar Date To Opt Out shall be thirty (30) days after the date the Notice (defined below) must be delivered to the Class Members.

(f)      "Class" shall mean those former members of Members who were charged APPSN Fees between March 29, 2015 and January 14, 2019, and who had closed their accounts prior to January 14, 2019.

(g)      "Class Counsel" shall mean Kaliel PLLC, Greg Coleman Law, and Golomb & Honik.

(h)     "Class Member" shall mean any former member of Members who is in the Class.

(i)     "Court" shall mean the U.S. District for the Middle District of Pennsylvania.

(j)     "Effective Date" shall be thirty (30) days after the entry of the Final Approval Order (defined below) provided no objections are made to this Agreement.  If there are objections to the Agreement, then the Effective Date shall be the later of: (1) forty five (45) days after entry of the Final Approval Order, if no appeals are taken from the Final Approval Order; or (2) if appeals are taken from the Final Approval Order, then thirty (30) days after an Appellate Court ruling affirming the Final Approval Order; or (3) Thirty (30) days after entry of a dismissal of the appeal.

(k)     "Exclusion Letter" shall mean a letter by a Class Member who elects to opt out of this Agreement.

(l)     "Final Approval Hearing Date" shall be the date set by the Court for the hearing on any and all motions for final approval of this Agreement.

(m)     "Final Approval Order" shall mean the Order and Judgment approving this Agreement issued by the Court at or after the Final Approval Hearing Date.

(n)     "Final Report" shall mean the report prepared by the Settlement Administrator of all receipts and disbursements from the Settlement Fund, as described in Section 10, below.

(o)     "Members' Counsel" shall mean Fox Rothschild LLP and Post & Schell, P.C.

(p)     "Motion For Final Approval" shall mean the motion or motions filed by Class Counsel, as referenced in Section 7, below.

(q)     "Net Settlement Fund" shall mean the net amount of the Settlement Fund after payment of court approved attorneys' fees and costs, any court approved service award and the costs of Notice, and any fees paid to the Settlement Administrator.

(r)     "Notice" shall mean the notice to Class Members of the Settlement provided for under the terms of this Agreement, as ordered by the Court in its Preliminary Approval/Notice Order (defined below) in accordance with Federal Rule of Civil Procedure 23(c)(2), and shall refer to the form of Notice attached hereto as Exhibit 1.

(s)     "Notice Program" shall mean the methods provided for in this Agreement for giving the Notice.

(t)     "Preliminary Approval/Notice Order" shall mean the Order issued by the Court preliminarily approving this Agreement and authorizing the sending of the Notice to Class Members, as provided in Sections 5 and 6, below.

(u)     "Settlement" means the settlement into which the Parties have entered to resolve the Action.  The terms of the Settlement are set forth in this Agreement and the attached exhibit.

(v)     "Settlement Administrator" shall mean the entity that will provide the notice and other administrative handling in this Agreement.  Class Counsel shall request bids from at least two separate qualified claims administrators and the one providing the lowest bid shall be selected.

(w)     "Settlement Fund" shall mean the Nine Hundred and Ten Thousand Dollars ($910,000.00) to be paid by Members to create a common fund for the benefit of the Settlement Class under the terms of this Agreement.

2.     **CHANGE IN PRACTICES**.  Members has implemented the 2019.00 Service Pack 6 Release issued by Symitar, a portion of which is designed to prevent an overdraft fee on transactions approved on a positive available balance.

3.     **DEBT FORGIVENESS.** In addition to the Settlement Fund, Members shall agree not to pursue any Class Member for any balance due and remaining unpaid at the time of the closing of the Class Member's account, other than for negative balances that resulted from a Members' loan, credit card, or fraud.  Members calculates the amount forgiven pursuant to this paragraph to be approximately $170,000.00.  The amounts forgiven pursuant to this paragraph shall cease to be reported as owed to Members in any credit reporting service, including Chexsystems, as of the Effective Date.

4.     **CLASS ACTION SETTLEMENT**.  Named Plaintiff shall propose and recommend to the Court that a settlement Class be certified, which classes shall be comprised of the Class Members.  Members agrees solely for purposes of the Settlement provided for in this Agreement, and the implementation of such Settlement, that this Action shall proceed as a class action; provided, however, that if a Final Approval Order is not issued, then Members shall retain all rights to object to maintaining this Action as a class action.  Named Plaintiff and Class Counsel shall not reference this Agreement in support of any subsequent motion relating to certification of a liability class.

5.     **PRELIMINARY SETTLEMENT APPROVAL**.  Pursuant to the Court's December 19, 2019 Order, on or before January 31, 2020, Class Counsel shall file a motion seeking a Preliminary Approval/Notice Order.  The proposed Preliminary Approval/Notice Order that will be attached to the motion shall be in a form agreed upon by Class Counsel and Members.  The Preliminary Approval/Notice Order shall provide for the following: (1) preliminary approval of this Agreement; (2) provisional certification of the Class for settlement purposes; (3) approval of the Notice Program set forth herein and approval of the form and content of the Notices of Settlement as provided in Section 6 below; (4) appointment of Class Counsel as counsel to the provisionally certified class, and (5) scheduling of a Final Approval Hearing for a time and date mutually convenient for the Court, Class Counsel, and Members' Counsel.

6.      **NOTICE TO THE CLASSES.**

(a)      Members shall provide to the Settlement Administrator sufficient information to determine the number of APPSN Fees incurred by each Class Member, and the names, addresses, and (if known to Members) email addresses of each Class Member.  The Settlement Administrator shall send the Notice to all Class Members no later than 120 days following the Court's approval of the Preliminary Approval/Notice Order.

(b)      The Notice shall be mailed by the Settlement Administrator to Class Members by United States mail to the best available mailing addresses.  Members shall provide the Settlement Administrator with last known mailing addresses for these Class Members.  The Settlement Administrator shall run the names and addresses through the National Change of Address Registry and update as appropriate.  If a mailed Notice is returned with forwarding address information, the Settlement Administrator shall re-mail the Notice to the forwarding address.  For all mailed Notices that are returned as undeliverable, the Settlement Administrator shall use standard skip tracing devices to obtain forwarding address information and, if the skip tracing yields a different forwarding address, the Settlement Administrator shall re-mail the Notice to the address identified in the skip trace, as soon as reasonably practicable after the receipt of the returned mail.  The Settlement Administrator may also attempt to reach Class Members who could not be reached by mail through email or other means.  The Long-Form Notice shall be available on a settlement website maintained by the Settlement Administrator.

(c)      The Settlement Administrator shall maintain a database showing mailing addresses to which each Notice was sent and any Notices that were not delivered by mail.  A summary report of the Notice shall be provided to the Parties at least five (5) days prior to the deadline to file the Motion for Final Approval.  The database maintained by the Settlement Administrator regarding the Notice shall be available to the parties and the Court upon request.  It shall otherwise be confidential and shall not be disclosed to any third party without a court order.

(d)      The Notice shall be in a form approved by the Court and, substantially similar to the notice form attached hereto as Exhibit 1.  The parties may by mutual written consent make non-substantive changes to the Notice without Court approval.

(e)      All costs associated with publishing, mailing and administering the Notice as provided for in this Section, and all costs of administration, including but not limited to the Settlement Administrator's fees and costs shall be paid by Members separate and apart from the Settlement Fund, subject to Members' right to reimbursement discussed at Section 11.

7.      **MOTION FOR FINAL APPROVAL**.  Provided the conditions in Section 15, below, are satisfied, Class Counsel shall file a Motion for Final Approval of this Agreement no later than 175 days following the Court's approval of the Preliminary Approval/Notice Order so that can be heard on the Final Approval Hearing Date.

8.      **ENTRY OF JUDGMENT**.  The Final Approval Order shall constitute the Court's final judgment in this Action. The Court shall retain jurisdiction to enforce the terms of the Final Approval Order.

9.      **THE SETTLEMENT FUND AND DISTRIBUTION.**

(a)     <u>Creation of the Settlement Fund</u>.  Within ten (10) days after the entry of the Preliminary Approval Order, Members shall transfer the Settlement Fund to the Settlement Administrator, who shall hold such funds in an Escrow Account.

(b)     <u>Payments to Class Members</u>.  The Settlement Fund includes (a) Class Counsels' fees and costs; (b) any service award payment to the Named Plaintiff; (c) distributions to Class Members; and (d) any taxes or additional fees, costs and expenses. In the event a Final Approval Order is not issued, or this Agreement is terminated by either party for any reason, including pursuant to Section 15, below, the Settlement Fund shall be refunded to Members within two (2) business days.

(c)     All funds held by the Settlement Administrator shall be deemed and considered to be in *custodia legis* of the Court, and shall remain subject to the jurisdiction of the Court, until distributed pursuant to this Agreement.

(d)     All funds held by the Settlement Administrator at any time shall be deemed to be a Qualified Settlement Fund as described in Treasury Regulation §1.468B-1, 26 C.F.R. §1.468B-1.

(e)     Payments shall be made from the Settlement Fund as follows:

(i)     <u>Named Plaintiff's Attorneys' Fees and Costs</u>.  Named Plaintiff's reasonable attorneys' fees and costs, as determined and approved by the Court, shall be paid from the Settlement Fund within ten (10) days of the Effective Date.  Class Counsel shall apply for an award of attorneys' fees of up to one-third (33-1/3%) of the value of this settlement to the Class Members plus reimbursement of reasonable litigation costs, to be approved by the Court.  Members agrees not to oppose an application up to one-third (33-1/3%) of the Settlement Fund but reserves the right to oppose an application for fees in excess of that amount.

(ii)     <u>Service Award</u>.  Named Plaintiff may apply to the Court for a service award of up to five thousand dollars ($5,000). Subject to the Court's approval, the service award shall be paid from the Settlement Fund ten (10) days after the Effective Date.

(iii)     <u>Payments to Class Members</u>.  The amount paid to each Class Member shall be calculated as follows:

(Net Settlement Fund/Total APPSN Fees)

X

Number of APPSN Fees per Class Member

(iv)     Payments to individual class members ("Individual Payments") shall be made no later than ten (10) days after the Effective Date, as follows:

(1)     Class Members shall be sent a check by the Settlement Administrator at the address used to provide the Notice, or at such other address as designated by the Class Member. The Class Member shall have one-hundred and eighty (180) days to negotiate the check. Any checks uncashed after one hundred and eighty (180) days shall be distributed pursuant to Section 11.

(v)     Other than as indicated in Section 11, no portion of the Settlement Fund shall revert to Members.

## 10.     <u>THE SETTLEMENT ADMINISTRATOR</u>.

(a)     The Settlement Administrator shall execute a retainer agreement that shall provide, among other things, that the Settlement Administrator shall be bound by and shall perform the obligations imposed on it under the terms of this Agreement.

(b)     The Settlement Administrator shall be subject to the jurisdiction of the Court with respect to the administration of this Agreement.

(c)     The Settlement Administrator shall keep all information regarding Class Members confidential except as otherwise provided herein.  All data created and/or obtained and maintained by the Settlement Administrator pursuant to this Agreement shall be destroyed twelve (12) months after the Final Report is submitted to the Court, provided that Class Counsel and Members' Counsel, or either of them, at their own cost, shall receive a complete digital copy of the Settlement Administrator's records, together with a declaration establishing completeness and authenticity, which they may maintain consistent with their own document retention policies. Class Counsel shall not be permitted to contact or communicate with Class Members, other than for purposes relating to the implementation or verification of performance of the terms of this Agreement.

(d)     The Settlement Administrator also shall be responsible for timely and properly filing all tax returns necessary or advisable, if any, with respect to the Settlement Fund. Except as provided herein, Class Members shall be responsible for their own tax reporting of payments or credits received under the terms of this Agreement.

(e)     The Settlement Administrator shall also be responsible for timely and properly filing all required federal, state, and local tax returns, information returns, including, but not limited to, any Form 1099-series return, and tax withholding statements, in accordance with the provisions of Treasury Regulation § 1.468B-2(k)(1).

(f)     Within one hundred and ninety (190) days after the Effective Date or such other date as required by the Court, the Settlement Administrator shall prepare a declaration setting forth the total payments issued to Class Members by the Settlement Administrator, the total amount of any checks uncashed and/or returned, and the total amount of money being held by the Settlement Administrator.

11.    **FUNDS REMAINING AFTER DISTRIBUTION**.  In the event funds remain in the Settlement Fund after the initial distribution to Class Members, Members shall be reimbursed for the settlement administration costs it paid.  Thereafter, if funds remain, to the extent feasible, those funds shall be distributed pro rata in a second distribution to those Class Members that were paid or credited in the first distribution.  All settlement administration costs of a second distribution will be paid out of the Settlement Fund.  If a second distribution is not feasible, or if funds remain after a second distribution, those funds shall be distributed to a *cy pres* recipient or recipients, proposed by the Parties and to be approved by the Court, to work to promote financial literacy in Members' markets.

12.    **OPT-OUTS.**

(a)    A Class Member who wishes to exclude himself or herself from this Agreement, and from the release of claims and defenses provided for under the terms of this Agreement, shall submit an Exclusion Letter by mail to the Settlement Administrator.  For an Exclusion Letter to be valid, it must be postmarked on or before the Bar Date To Opt Out.  Any Exclusion Letter shall identify the Class Member, state that the Class Member wishes to exclude himself or herself from the Agreement, and shall be signed and dated.

(b)    The Settlement Administrator shall maintain a list of persons who have excluded themselves and shall provide such list to Members' Counsel and Class Counsel at least five (5) days prior to the date Class Counsel is required to file the Motion for Final Approval.  The Settlement Administrator shall retain the originals of all Exclusion Letters (including the envelopes with the postmarks).  The Settlement Administrator shall make the original Exclusion Letters available to Class Counsel, Members' Counsel and/or the Court upon two (2) court days' written notice.

13.    **OBJECTIONS.**

(a)    Any Class Member, other than a Class Member who timely submits an Exclusion Letter, may object to this Agreement.

(b)    To be valid and considered by the Court, the objection must be in writing and sent by first class mail, postage pre-paid, to the Settlement Administrator.  The objection must be postmarked on or before the Bar Date To Object, and must include the following information:

(i)    The objector's name, address, telephone number, the last four digits of his or her former account number with Members, and the contact information for any attorney retained by the objector in connection with the objection or otherwise in connection with this case;

(ii)    A statement of the factual and legal basis for each objection and any exhibits the objector wishes the Court to consider in connection with the objection; and

(iii)    A statement as to whether the objector intends to appear at the Final Approval Hearing, either in person or through counsel, and, if through counsel, identifying the counsel by name, address, and telephone number.

(c)     Class Counsel shall file any objections and responsive pleadings at least seven (7) days prior to the Final Approval Hearing Date.

(d)     Any objector who retains counsel shall be solely responsible for paying that attorney's fees and costs.

(e)     Any objector who fails to comply with the provisions herein shall waive and forfeit any and all rights to appear and/or object separately, and shall be bound by the terms of this Agreement and the orders and judgments of the Court.

14.     **RELEASE**.  Upon the Effective Date of the Settlement, Named Plaintiff and each Class Member who has not opted out of the Class pursuant to the procedures set forth in this Agreement will release, waive, and forever discharge Members and each of its present, former, and future parents, predecessors, successors, assigns, assignees, affiliates, conservators, divisions, departments, subdivisions, owners, partners, principals, trustees, creditors, shareholders, joint ventures, co-venturers, officers, and directors (whether acting in such capacity or individually), attorneys, vendors, accountants, nominees, agents (alleged, apparent, or actual), representatives, employees, managers, administrators, and each person or entity acting or purporting to act for them or on their behalf, including, but not limited to, Members and all of its subsidiaries and affiliates (collectively, "Members Releasees") from any and all claims they have or may have against the Members Releasees with respect to any claim or issue which was or could have been brought relating to the above-referenced fee practices against the Members Releasees in the Action, in all cases including any and all claims for damages, injunctive relief, interest, attorneys' fees, and litigation expenses (the "Released Claims").

15.     **CONDITIONS TO SETTLEMENT**.

(a)     This Agreement shall be subject to and is expressly conditioned on the occurrence of all of the following events:

(i)     The Court has entered the Preliminary Approval/Notice Order, as required by Section 5 above;

(ii)    The Court has entered the Final Approval Order as required by Sections 7 and 8 above, and all objections, if any, to such Order are overruled, and all appeals taken from such Order are resolved in favor of approval; and

(iii)   The Effective Date has occurred.

(b)     If all of the conditions specified in Section 15(a) are not met, then this Agreement shall be null and void.

(c)     In the event this Agreement is terminated, pursuant to Section 15(b) immediately above, or fails to become effective in accordance with Section 15(a) immediately above, then the parties shall be restored to their respective positions in this case as they existed as of the date of the execution of this Agreement.  In such event, the terms and provisions of this Agreement shall have no further force and effect with respect to the parties and shall not be used in this case or in any other action or proceeding for any other purpose, and any order entered by

this Court in accordance with the terms of this Agreement shall be treated as vacated, *nunc pro tunc*.

16. **REPRESENTATIONS.**

(a)     The parties to this Agreement represent that they have each read this Agreement and are fully aware of and understand all of its terms and the legal consequences thereof.  The parties represent that they have consulted or have had the opportunity to consult with and have received or have had the opportunity to receive advice from legal counsel in connection with their review and execution of this Agreement.

(b)     The parties have not relied on any representations, promises, or agreements other than those expressly set forth in this Agreement.

(c)     The Named Plaintiff, on behalf of the Class Members, represents that he has made such inquiry into the terms and conditions of this Agreement as he deems appropriate, and that by executing this Agreement, he, based on Class Counsel's advice, and their understanding of the Action, believe the Agreement and all the terms and conditions set forth herein, are fair and reasonable to all Class Members.

(d)     The Named Plaintiff represents that he has no knowledge of conflicts or other personal interests that would in any way impact his representation of the Class in connection with the execution of this Agreement.

(e)     Members represents and warrants that it has obtained all corporate authority necessary to execute this Agreement.

17. **FURTHER ASSURANCES**.  Each of the parties hereto agrees to execute and deliver all such further documents consistent with this Agreement, and to take all such further actions consistent with this Agreement, as may be required in order to carry the provisions of this Agreement into effect, subject to Class Counsel's obligation to protect the interests of the Class Members.

18. **APPLICABLE LAW**.  This Agreement shall be governed by and interpreted, construed, and enforced pursuant to the laws of the Commonwealth of Pennsylvania.

19. **NO ORAL WAIVER OR MODIFICATION**.  No waiver or modification of any provision of this Agreement or of any breach thereof shall constitute a waiver or modification of any other provision or breach, whether or not similar.  Nor shall any actual waiver or modification constitute a continuing waiver.  No waiver or modification shall be binding unless executed in writing by the party making the waiver or modification.

20. **ENTIRE AGREEMENT**.  This Agreement, including the exhibit attached hereto, constitutes the entire agreement made by and between the parties pertaining to the subject matter hereof, and fully supersedes any and all prior or contemporaneous understandings, representations, warranties, and agreements made by the parties hereto or their representatives pertaining to the subject matter hereof.  No extrinsic evidence whatsoever may be introduced in any judicial proceeding involving the construction or interpretation of this Agreement.

**21.**   **BINDING ON SUCCESSORS**.  This Agreement shall inure to the benefit of, and shall bind, each of the parties hereto and their successors.

**22.**   **SEVERABILITY**.   In the event any one or more of the provisions of this Agreement is determined to be invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of the remaining provisions contained in this Agreement will not in any way be affected or impaired thereby.

**23.**   **COUNTERPARTS AND FACSIMILE SIGNATURES.**  This Agreement may be executed and delivered in separate counterparts, each of which, when so executed and delivered, shall be an original, but such counterparts together shall constitute but one and the same instrument and agreement. Facsimile and pdf signature pages shall have the same force and effect as original signatures.

**24.**   **NOTIFICATION**.   Any notice to be given to Class Counsel and/or Named Plaintiff shall be sent by email as follows:

Jeffrey Kaliel, Esquire
Sophia Gold, Esquire
Kaliel PLLC
1875 Connecticut Avenue, NW, 10th Floor
Washington, DC 20009
Phone Number: (202) 350-4783
jkaliel@kalielpllc.com
sgold@kalielpllc.com

Greg F. Coleman, Esquire
Arthur Stock, Esquire
First Tennessee Plaza
800 S. Gay Street, Suite 1100
Knoxville, TN  37929
greg@gregcolemanlaw.com

Kenneth J. Grunfeld, Esquire
Golomb & Honik, P.C.
1835 Market Street, Suite 2900
Philadelphia, PA 19103
kgrunfeld@golombhonik.com
***Counsel for Plaintiff and the Proposed Classes***

Any notice to be given to Members under the terms of this Agreement shall be sent by email as follows:

Craig A. Styer, Esquire
Kelsey M. O'Neil, Esquire
Fox Rothschild LLP

Eagleview Corporate Center
747 Constitution Drive, Suite 100
Exton, PA  19341
cstyer@foxrothschild.com
koneil@foxrothschild.com
***Counsel for Defendant***

Any notice to the Settlement Administrator shall be sent by email to the address of the claims administrator, which will be determined by the lowest bid for services.

[SIGNATURE PAGES FOLLOW]

IN WITNESS WHEREOF, the parties have entered this Agreement as of the dates set forth below.

Dated: January 24 2020

MEMBERS 1ST FEDERAL CREDIT UNION, a Pennsylvania chartered credit union

By: _____

Its: _President and CEO_____

Dated: January___, 2020

MICHAEL WHITE, an individual on behalf of himself and those he represents

By:_____
        Michael White

**APPROVED AS TO FORM:**

Dated: January___, 2020

FOX ROTHSCHILD LLP
Craig A. Styer, Esquire
Kelsey M. O'Neil, Esquire

By:_____
        Craig A. Styer, Esquire

POST & SCHELL, P.C.
James J. Kutz, Esquire

Dated: January ____, 2020

By:_____
        James J. Kutz, Esquire

Attorneys for Defendant MEMBERS 1ST FEDERAL CREDIT UNION

13

IN WITNESS WHEREOF, the parties have entered this Agreement as of the dates set forth below.

Dated: January __, 2020

MEMBERS 1ST FEDERAL CREDIT UNION, a Pennsylvania chartered credit union

By:_____

Its:_____

Dated: January 27 2020

MICHAEL WHITE, an individual on behalf of himself and those he represents

By:_____
        Michael White

**APPROVED AS TO FORM:**

Dated: January___, 2020

FOX ROTHSCHILD LLP
Craig A. Styer, Esquire
Kelsey M. O'Neil, Esquire

By:_____
        Craig A. Styer, Esquire

POST & SCHELL, P.C.
James J. Kutz, Esquire

Dated: January ____, 2020

By:_____
        James J. Kutz, Esquire

Attorneys for Defendant MEMBERS 1ST FEDERAL CREDIT UNION

13

IN WITNESS WHEREOF, the parties have entered this Agreement as of the dates set forth below.

Dated: January ___, 2020

MEMBERS 1ST FEDERAL CREDIT UNION, a Pennsylvania chartered credit union

By:_____

Its:_____


Dated: January___, 2020

MICHAEL WHITE, an individual on behalf of himself and those he represents

By:_____
        Michael White


**APPROVED AS TO FORM:**

Dated: January 24, 2020

FOX ROTHSCHILD LLP
Craig A. Styer, Esquire
Kelsey M. O'Neil, Esquire

By:_____
        Craig A. Styer, Esquire


POST & SCHELL, P.C.
James J. Kutz, Esquire


Dated: January ____, 2020


By:_____
        James J. Kutz, Esquire

Attorneys for Defendant MEMBERS 1ST FEDERAL CREDIT UNION

IN WITNESS WHEREOF, the parties have entered this Agreement as of the dates set forth below.

Dated: January ___, 2020        MEMBERS 1ST FEDERAL CREDIT UNION, a Pennsylvania chartered credit union

By:_____

Its:_____

Dated: January___, 2020        MICHAEL WHITE, an individual on behalf of himself and those he represents

By:_____
           Michael White

**APPROVED AS TO FORM:**

Dated: January____, 2020        FOX ROTHSCHILD LLP
Craig A. Styer, Esquire
Kelsey M. O'Neil, Esquire

By:_____
           Craig A. Styer, Esquire

POST & SCHELL, P.C.
James J. Kutz, Esquire

Dated: January 27, 2020

By:_____
           James J. Kutz, Esquire

Attorneys for Defendant MEMBERS 1ST FEDERAL CREDIT UNION

DocuSign Envelope ID: 910C3072-B5F2-467F-97FF-43EB74E39AF5

1/29/2020

Dated: January _____, 2020

KALIEL PLLC
Jeffrey Kaliel, Esquire
Sophia Gold, Esquire

By: _____
        Jeffrey Kaliel, Esquire

Dated: January 27, 2020

GREG COLEMAN LAW PC
Greg Coleman, Esquire
Arthur Stock, Esquire

By: _____
        Greg Coleman

Dated: January 30, 2020

GOLOMB & HONIK, P.C.
Kenneth J. Grunfeld, Esquire

By: _____
        Kenneth J. Grunfeld, Esquire

Attorneys for Named Plaintiff MICHAEL WHITE

14

# EXHIBIT 1

**If You Paid Overdraft Fees to Members 1st Federal Credit Union You May Be Eligible for a Payment from a Class Action Settlement.**

A $910,000 Settlement has been reached in a class action about APPSN fees ("Overdraft Fees") charged on certain Point of Sale debit card transactions by Members 1st Federal Credit Union ("Members") where there was a sufficient available balance at the time the transaction was authorized, but an insufficient available balance at the time the transaction was presented to Members for payment and posted to a customer's account. Members denies the allegations in the case and deny that they engaged in any wrongdoing.

**Who's Included?** The Settlement Class includes former Members customers who were charged qualifying Overdraft Fees between March 29, 2015 and January 14, 2019, and who had closed their accounts prior to January 14, 2019. Excluded from the Settlement Class is Members 1st Federal Credit Union, its parents, subsidiaries, affiliates, officers and directors, all Settlement Class members who make a timely election to be excluded, and all judges assigned to this litigation and their immediate family members.

**What Are the Settlement Terms?** Members has agreed to establish a Settlement Fund of $910,000 from which Settlement Class members will receive payments. If the Court approves the Settlement, each Settlement Class member will automatically receive a payment by check for his or her *pro rata* portion of the Settlement Fund based on the number of qualifying Overdraft Fees they paid during the period covered by the Settlement.

**Your Rights May Be Affected.** If you do not want to be legally bound by the Settlement, you must exclude yourself from the Settlement Class by **[XX/XX/2020]**. If you do not timely exclude yourself, you will release your Overdraft Fees related claims against Members, and you will not be able to sue Members for any claim relating to the lawsuit. If you stay in the Settlement Class, you may object to the Settlement in writing by **[XX/XX/2020]**. The Notice available at the website below explains how to exclude yourself from or object to the Settlement. The Court will hold a hearing on **[XX/XX/2020]**, to consider whether to approve the Settlement and Class Counsel's request for attorneys' fees of up to 33-1/3% of the Settlement Fund, plus expenses and Class Representative's Service Award. You may appear at the hearing, but you are not required to attend. To speak at the hearing, you must first object to the Settlement in writing pursuant to the instructions in the Settlement Agreement. You may also hire your own attorney, at your own expense, to appear or speak for you at the hearing.

**Questions?** If you have questions about this Settlement, please visit the settlement website at www.XXXXXXXXX.com or call the toll-free number, 1-866-977-0814. Do not contact Defendants or the Court.

Members 1st Overdraft Settlement
P.O. Box 6389
Portland OR 97228-6389

## Legal Notice about a Class Action Settlement

&lt;&lt;BARCODE&gt;&gt;

&lt;&lt;NAME1&gt;&gt;
&lt;&lt;NAME2&gt;&gt;
&lt;&lt;ADDRESS1&gt;&gt;
&lt;&lt;ADDRESS2&gt;&gt;
&lt;&lt;CITY&gt;&gt; &lt;&lt;ST&gt;&gt; &lt;&lt;ZIP&gt;&gt;
&lt;&lt;COUNTRY&gt;&gt;

# EXHIBIT 2

<u>U.S. DISTRICT FOR THE MIDDLE DISTRICT OF PENNSYLVANIA</u>

# If You Paid Overdraft Fees to Members 1st Federal Credit Union, You May Be Eligible for a Payment from a Class Action Settlement.

*A federal court authorized this notice. This is not a solicitation from a lawyer.*

- A $910,000.00 Settlement has been reached in a class action about APPSN Fees ("Overdraft Fees") charged on certain Point of Sale transactions by Members 1st Federal Credit Union ("Members") where there was a sufficient available balance at the time the transaction was authorized, but an insufficient available balance at the time the transaction was presented to Members for payment and posted to a customer's account. Members maintains that there was nothing wrong with the transaction processing practices it used and that it complied, at all times, with applicable laws and regulations and the terms of the account agreements with its customers.

- Former holders of Members Accounts may be eligible for a payment or Account credit from the Settlement Fund.

- The Settlement Class includes former Members customers who were charged qualifying Overdraft Fees between March 29, 2015 and January 14, 2019, and who had closed their accounts prior to January 14, 2019. Excluded from the Settlement Class is Members 1st Federal Credit Union, its parents, subsidiaries, affiliates, officers and directors, all Settlement Class members who make a timely election to be excluded, and all judges assigned to this litigation and their immediate family members.

- Your legal rights are affected whether you act or don't act. Read this notice carefully.

| SUMMARY OF YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **Receive a Payment** | If you are entitled under the Settlement to a payment, you do not have to do anything to receive it. If the Court approves the Settlement and it becomes final and effective, and you remain in the Settlement Class, you will automatically receive a payment by check. |
| **Exclude Yourself from the Settlement** | Receive no benefit from the Settlement. This is the only option that allows you to retain your right to bring any other lawsuit against Members about the claims in this case. |
| **Object** | Write to the Court if you do not like the terms of the Settlement. |
| **Do Nothing** | You will receive a payment to which you are entitled, and will give up your right to bring your own lawsuit against Members about the claims in this case. |

- These rights and options — **and the deadlines to exercise them** — are explained in this notice.

- The Court in charge of this case still has to decide whether to approve the Settlement. Payments will be provided if the Court approves the Settlement and after any appeals are resolved. Please be patient.

| WHAT THIS NOTICE CONTAINS |
|---|

**BASIC INFORMATION** ...........................................................................................**PAGE 3**
    1. Why is there a notice?
    2. What is this lawsuit about?
    3. What do "Account," "Overdraft Fee," "Relevant Overdraft Fee" and "Debit Card" mean?
    4. Why is this a class action?
    5. Why is there a Settlement?

**WHO IS IN THE SETTLEMENT** ..............................................................................**PAGE 4**
    6. Who is included in the Settlement?

**THE SETTLEMENT'S BENEFITS** ...........................................................................**PAGE 4**
    7. What does the Settlement provide?
    8. How do I receive a payment or Account credit?
    9. What am I giving up to stay in the Settlement Class?

**EXCLUDING YOURSELF FROM THE SETTLEMENT** ................................................**PAGE 5**
    10. How do I get out of the Settlement?
    11. If I do not exclude myself, can I sue Members for the same thing later?
    12. If I exclude myself from the Settlement, can I still receive a payment?

**THE LAWYERS REPRESENTING YOU** ....................................................................**PAGE 5**
    13. Do I have a lawyer in this case?
    14. How will the lawyers be paid?

**OBJECTING TO THE SETTLEMENT** ........................................................................**PAGE 6**
    15. How do I tell the Court that I don't like the Settlement?
    16. What's the difference between objecting and excluding?

**THE COURT'S FINAL APPROVAL HEARING** ...........................................................**PAGE 6**
    17. When and where will the Court decide whether to approve the Settlement?
    18. Do I have to come to the hearing?
    19. May I speak at the hearing?

**IF YOU DO NOTHING** ...........................................................................................**PAGE 7**
    20. What happens if I do nothing at all?

**GETTING MORE INFORMATION** .............................................................................**PAGE 7**
    21. How do I get more information?

## BASIC INFORMATION

### 1. Why is there a notice?

A Court authorized this notice because you have a right to know about the proposed Settlement of this class action lawsuit, and about all of your options, before the Court decides whether to give Final Approval to the Settlement. This notice explains the lawsuit, the Settlement and your legal rights.

The U.S. District for the Middle District of Pennsylvania is overseeing this case. The case is known as *Michael White v. Members*, No. 1:19-cv-00556 (JEJ), (the "Action"). The person who sued is called the "Plaintiff." The Defendant is Members 1st Federal Credit Union ("Members").

### 2. What is this lawsuit about?

The lawsuit claims that Members improperly charged APPSN Fees on certain Point of Sale debit card transactions where there was a sufficient available balance at the time the transaction was authorized, but an insufficient available balance at the time the transaction was presented to Members for payment and posted to a customer's account. Members maintains that there was nothing wrong with the transaction processing practices it used and that it complied, at all times, with applicable laws and regulations and the terms of the account agreements with its customers. The Amended Complaint is posted on the Settlement Website and contains all of the allegations and claims asserted against Members. Members maintains that there was nothing wrong with the transaction processing practices it used and that it complied, at all times, with applicable laws and regulations and the terms of the account agreements with its customers.

### 3. What does "Overdraft Fees" mean?

"**Overdraft Fees**" shall mean the APPSN Fee(s) that Members charged on certain Point of Sale debit card transactions where there was a sufficient available balance at the time the transaction was authorized, but an insufficient available balance at the time the transaction was presented to Members for payment and posted to a customer's account.

### 4. Why is this a class action?

In a class action, one or more people called class representatives (in this case, Plaintiff Michael White) sue on behalf of people who have similar claims. The people included in the class action are called the Settlement Class or ("Settlement Class members"). One court resolves the issues for all Settlement Class members, except for those who timely exclude themselves from the Settlement Class.

### 5. Why is there a Settlement?

The Court has not decided in favor of either the Plaintiff or Members. Instead, both sides agreed to the Settlement. By agreeing to the Settlement, the Parties avoid the costs and uncertainty of a trial, and Settlement Class Members receive the benefits described in this notice. The Class Representative and Class Counsel believe the Settlement is best for everyone who is affected.

# WHO IS IN THE SETTLEMENT?

To see if you can get a payment from the Settlement, you first have to determine if you are a Settlement Class member.

### 6. Who is included in the Settlement?

The Settlement Class includes former Members customers who were charged qualifying Overdraft Fees between March 29, 2015 and January 14, 2019, and who had closed their accounts prior to January 14, 2019. Excluded from the Settlement Class is Members 1st Federal Credit Union, its parents, subsidiaries, affiliates, officers and directors, all Settlement Class members who make a timely election to be excluded, and all judges assigned to this litigation and their immediate family members.

You may contact the Settlement Administrator if you have any questions as to whether you are in the Settlement Class.

# THE SETTLEMENT'S BENEFITS

### 7. What does the Settlement provide?

Members has agreed to establish a Settlement Fund of $910,000.00 from which Settlement Class members will receive payments. The Settlement Fund will also pay all attorneys' fees, costs and expenses awarded to Class Counsel, and any Service Award to the Class Representative. The exact amount of Settlement Class members' payments cannot be determined at this time. The exact amount cannot be determined until the notice process is complete and the Court makes a final decision on the amount of attorneys' fees, costs and expenses awarded to Class Counsel and any Service Award to the Class Representative.

Additionally, Members has agreed to implement the 2019.00 Service Pack 6 Release issued by Symitar, a portion of which is designed to prevent an overdraft fee on transactions approved on a positive available balance.

Also, Members has agreed not to pursue any Settlement Class member for any balance due and remaining unpaid at the time of the closing of the Settlement Class member's Members account, other than for negative balances that resulted from a Settlement Class members' loan, credit card, or fraud. Members calculates the amount forgiven to be approximately $170,000.00.  The amounts forgiven pursuant to the Agreement shall cease to be reported as owed to Members in any credit reporting service, including Chexsystems, as of the Effective Date.

### 8. How do I receive a payment?

If you are in the Settlement Class and entitled to receive a cash benefit, you do not need to do anything to receive a payment. If the Court approves the Settlement and it becomes final and effective, you will automatically receive a payment by check for your *pro rata* portion of the Settlement Fund based on the number of qualifying Overdraft Fees you paid to Members during the period covered by the Settlement.

### 9. What am I giving up to stay in the Settlement Class?

Unless you exclude yourself from the Settlement Class, you cannot sue or be part of any other lawsuit against Members about the legal issues in this Action. It also means that all of the decisions by the Court will bind you. The "Release" included in the Settlement Agreement describes the precise legal

claims that you give up if you remain in the Settlement. The Settlement Agreement is available at wwwXXXXXXXXXXXXXXXX.com.

# EXCLUDING YOURSELF FROM THE SETTLEMENT

If you do not want benefits from the Settlement, and you want to keep the right to sue Members on your own about the legal issues in this Action, then you must take steps to get out of the Settlement. This is called excluding yourself — or it is sometimes referred to as "opting-out" of the Settlement Class.

### 10. How do I get out of the Settlement?

To exclude yourself from the Settlement, you must send a letter that includes the following:

- Your printed or typed name and full mailing address;
- A short statement that you want to be excluded from the Members 1st Federal Credit Union Overdraft Settlement; and
- Your signature and date.

You must mail your exclusion request, postmarked no later than **[XX/XX/2020]**, to the Settlement Administrator at:

Members 1st Overdraft Settlement

P.O. Box 6389

Portland, OR 97228-6389

### 11. If I do not exclude myself, can I sue Members for the same thing later?

No. Unless you exclude yourself, you give up the right to sue Members for the claims that the Settlement resolves. You must exclude yourself from this Settlement Class in order to try to pursue your own lawsuit.

### 12. If I exclude myself from the Settlement, can I still receive a payment?

No. You will not receive a payment if you exclude yourself from the Settlement.

# THE LAWYERS REPRESENTING YOU

### 13. Do I have a lawyer in this case?

The Court has appointed a number of lawyers to represent you and others in the Settlement Class as "Class Counsel," including:

| | | |
|---|---|---|
| Jeff Kaliel, Esq.<br>Sophia Gold, Esq.<br>KALIEL PLLC<br>1875 Connecticut Ave. NW<br>10th Floor<br>Washington, DC 20009 | Greg Coleman, Esq.<br>Arthur Stock, Esq.<br>GREG COLEMAN LAW<br>800 S. Gay Street, Suite 1100<br>Knoxville, TN 37929 | Kenneth J. Grunfeld, Esq.<br>GOLOMB & HONIK, P.C<br>1835 Market Street<br>Suite 2900<br>Philadelphia, PA 19103 |

Class Counsel will represent you and others in the Settlement Class. You will not be charged for these lawyers. If you want to be represented by your own lawyer, you may hire one at your own expense.

Questions? Call 1-866-977-0814
or visit www.XXXXXXXXXXXX.com

**14. How will the lawyers be paid?**

Class Counsel intends to request up to 33-1/3% of the money in the Settlement Fund for attorneys' fees, plus reimbursement of their expenses incurred in connection with prosecuting this Action. The fees and expenses awarded by the Court will be paid out of the Settlement Fund. The Court will determine the amount of fees and expenses to award. Class Counsel will also request that $5,000.00 for the Class Representative be paid from the Settlement Fund for his service to the entire Settlement Class.

## OBJECTING TO THE SETTLEMENT

**15. How do I tell the Court that I don't like the Settlement?**

If you are a Settlement Class member, you can object to any part of the Settlement, the Settlement as a whole, Class Counsel's requests for fees and expenses, and/or Class Counsel's request for a Service Award for the Class Representative. To object, you must submit a letter that includes the following:

- The name of this Action, which is Michael White v. Members 1st Federal Credit Union, No. 1:19-cv-00556 (JEJ);
- Your printed or typed name, address, telephone number, the last four digits of your former account number with Members, and the contact information for any attorney retained by you in connection with the objection or otherwise;
- A statement of the factual and legal basis for each objection and any exhibits you wish the Court to consider in connection with the objection; and
- A statement as to whether you intend to appear at the Final Approval Hearing, either in person or through counsel, and, if through counsel, identifying the counsel by name, address, and telephone number.

You must submit your objection to the Settlement Administrator, postmarked no later than **[XX/XX/2020]**, to the following address:

> Members 1st Overdraft Settlement
> P.O. Box 6389,
> Portland OR 97228-6389

**16. What's the difference between objecting and excluding?**

Objecting is telling the Court that you do not like something about the Settlement. You can object to the Settlement only if you do not exclude yourself from the Settlement. Excluding yourself from the Settlement is telling the Court that you don't want to be part of the Settlement. If you exclude yourself from the Settlement, you have no basis to object to the Settlement because it no longer affects you.

## THE COURT'S FINAL APPROVAL HEARING

The Court will hold a Final Approval Hearing to decide whether to approve the Settlement, and the request for attorneys' fees, expenses and Service Award for the Class Representative. You may attend and you may ask to speak, but you don't have to do so.

**Questions? Call 1-866-977-0814**
**or visit www.XXXXXXXXXXX.com**

**17. When and where will the Court decide whether to approve the Settlement?**

The Court will hold a Final Approval Hearing at (XX:XX p.m. on DATE), at the _____. The hearing may be moved to a different date or time without additional notice, so it is a good idea to review www.XXXXXXXX.com for updates. At this hearing, the Court will consider whether the Settlement is fair, reasonable and adequate. The Court will also consider any request by Class Counsel for attorneys' fees and expenses and for Service Award for the Class Representative. If there are objections, the Court will consider them at this time. After the hearing, the Court will decide whether to approve the Settlement. We do not know when the Court will make its decision. Please review www.XXXXXXXX.com for any Settlement updates.

**18. Do I have to come to the hearing?**

No. Class Counsel will answer any questions the Court may have. But, you may come at your own expense. If you send an objection, you do not have to come to Court to talk about it. As long as you submit your written objection on time, to the proper address, and it complies with the requirements set forth previously, the Court will consider it. You may also pay your own lawyer to attend, but it is not necessary.

**19. May I speak at the hearing?**

You may ask the Court for permission to speak at the Final Approval Hearing. To do so, you must submit a timely objection to the Settlement and send a letter saying that you intend to appear and wish to speak. Your Notice of Intention to Appear must include the following:

- Your name, address and telephone number;

- A statement that this is your "Notice of Intention to Appear" at the Final Approval Hearing for the White v. Members 1st Federal Credit Union in *Michael White v. Members 1st Federal Credit Union, No. 1:19-cv-00556 (JEJ)*;

- The reasons you want to be heard and copies of any papers, exhibits, or other evidence or information that is to be presented to the Court at the Final Approval Hearing; and

- Your signature.

You must submit your Notice of Intention to Appear so that it is postmarked no later than **[XX/XX/2020]**, to all of the address listed in Question 15.

# IF YOU DO NOTHING

**20. What happens if I do nothing at all?**

If you do nothing, you will still receive the benefits to which you are entitled under the Settlement Agreement. Unless you exclude yourself, you will not be able to start a lawsuit or be part of any other lawsuit against Members relating to the issues in this Action.

# GETTING MORE INFORMATION

**21. How do I get more information?**

This Notice summarizes the proposed Settlement. More details can be found in the Settlement Agreement, which can be found at www.XXXXXXXX.com. You may also write with questions to Members 1st Overdraft Settlement, P.O. Box 6389, Portland, OR 97228-6389, or call the toll-free

**Questions? Call 1-866-977-0814**
**or visit www.XXXXXXXXXXX.com**

number, 1-866-977-0814. Do not contact Members 1st Federal Credit Union or the Court for information.