# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL WHITE, on Behalf of Himself and All Others Similarly Situated,<br><br>Plaintiff,<br>v.<br><br>MEMBERS 1ST FEDERAL CREDIT UNION,<br><br>Defendant. | **Case No. 1:19-cv-00556-JEJ** |

**PLAINTIFF'S AND CLASS COUNSEL'S UNOPPOSED
MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT,
AND INCORPORATED MEMORANDUM OF LAW**

**<u>Table of Contents</u>**

<u>Page</u>

STATEMENT OF FACTS ........................................................ 2

A. Factual Background and Procedural History........................ 2

B. Summary of the Settlement Terms. ................................... 4

    1. The Class. ....................................................... 4

    2. Relief for the Benefit of the Class........................... 5

    3. Class Release.................................................. 5

    4. The Notice Program. .......................................... 6

ARGUMENT ..................................................................... 7

A. The Legal Standard for Final Approval.............................. 7

B. This Settlement Satisfies All Criteria for Final Approval. ................. 8

    1. The Complexity, Expense and Duration of Litigation Supports Approval of the Settlement. ...................................... 9

    2. The Reaction of the Class to the Settlement Supports Approval of the Settlement................................................ 11

    3. The Stage of the Proceedings at Which Settlement Was Achieved and the Amount of Discovery Completed Supports Approval of the Settlement. .................................... 11

    4. The Risks of Establishing Liability and Damages, and Risks of Maintaining a Class Action Through Trial Supports Approval of the Settlement................................................ 14

    5. The Ability of Members 1st to Withstand a Greater Judgment. ..................................................... 16

    6. The Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and in Light of all the Attendant Risks of Litigation Supports Approval of the Settlement....... 16

C. The Notice to the Class Satisfied Rule 23 and Due Process. .......... 18

D. The Plan of Allocation is Fair and Reasonable and Should be Approved. ...................................................... 20

CONCLUSION ............................................................... 21

# Table of Authorities

**Cases**                                                                    **Page(s)**

*Austin v. Pennsylvania Dept. of Corrections*, 876 F. Supp. 1437 (E.D. Pa. 1995)  11

*Ayers v. Haley Barbour, et al.*, 358 F.3d 356 (5th Cir. 2004)  ........................... 9, 10

*Behrens v. Wometco Enterprises, Inc.,* 118 F.R.D. 534 (S.D. Fla. 1988)  ....... 10, 17

*Callahan v. Commonwealth Land Title Ins. Co., Nos.* 88-7656, 1990 WL 168273 (E.D. Pa. Oct. 29, 1990) ......................................... 17

*Cotton v. Hinton*, 559 F.2d 1326 (5th Cir. 1977) .................................................... 9

*Daniel B. v. O'Bannon*, 633 F. Supp. 919 (E.D. Pa. 1986) ...................... 17-18, 18

*Eichenholtz v. Brennan*, 52 F.3d 478 (3d Cir. 1995) ............................................... 7

*Flickinger*, 646 F. Supp.  ........................................................................... 17

 *In re General Motors Pick-Up Truck Fuel Tank Prod. Liab. Litig,*, 55 F.3d 768 (3d. Cir 1995)........................................................................... 11

*City of Detroit v. Grinnell*, 495 F. 2d 448 (2d Cir. 1974)........................................ 17

*Hall v. AT & T Mobility LLC, No. 07-5325* (JLL), 2010 WL 4053547 (D.N.J. Oct. 13, 2010)  .......................................................................... 12

*Haught v. Summit Res., LLC, No. 1:15-cv-0069,*  2016 U.S. Dist. LEXIS 45054 (M.D. Pa. Apr. 4, 2016)  ........................................................................ 8

*In re Am. Bus. Fin. Servs. Noteholders Litig.*, No. 05-232, 2008 WL 4974782 (E.D. Pa. Nov. 21, 2008)  ........................................................................ 20

*In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330 (S.D. Fla. 2011)  14

*In re Cigna Corp. Sec. Litig.*, 2007 WL 2071898 (E.D. Pa. July 13, 2007)  ....... 12-13, 13

*In re Ins. Brokerage Antitrust Litigation*, 579 F.3d 241 (3d Cir. 2009) ................. 8

*In re Johnson & Johnson Derivative Litig., Nos. 10-2033* (FLW) (FLW) (FLW), 2012 WL 5292963 (D.N.J. Oct. 26, 2012)  .......................................................... 12

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 148 F.3d 283 (3d Cir. 1998) .......................................................................... 19, 20

*In re Safety Components*, 166 F. Supp. 2d 72 (D.N.J. 2001)  ............................... 16

*In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516 (3d Cir. 2004)  7, 9, 15-16, 16

*Lipuma v. American Express Company*, 406 F. Supp. 2d 1298 (S.D. Fla. 2005) .......................................................................... 15, 17

*Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358 (S.D.N.Y. 2002) ........... 20

*Mangone v. First USA Bank*, 206 F.R.D. 222 (S.D. Ill. 2001) .............................. 11

*Newman v. Stein*, 464 F.2d 693 (2d Cir. 1972) ...................................................... 17

*O'Keefe v. Mercedes-Benz United States, LLC*, 214 F.R.D. 266 (E.D. Pa. 2003)  11

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985)  .................................... 18-19

*Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414 (1968)  .............................................................................. 9

*Ressler v. Jacobson*, 822 F. Supp. 1551 (M.D. Fla. 1992)  ................................... 12

*Ripley v. Sunoco, Inc.*, 287 F.R.D. 300 (E.D. Pa. 2012) ........................................ 13

*Teachers' Ret. Sys. of Louisiana v. A.C.L.N., Ltd., No.* 01-cv-11814, 2004 WL 1087261 (S.D.N.Y. May 14, 2004) ....................................................................... 14

*United States v. Glens Falls Newspapers, Inc.*, 160 F.3d 853 (2d Cir. 1998) ....... 10

*White v. NFL*, 822 F. Supp. 1389 (D. Minn. 1993)  ............................................... 20

## Rules

Fed. R. Civ. P. .................................................................................................. *passim*

Plaintiff Michael White ("Plaintiff") respectfully moves for Final Approval of the Settlement Agreement and Release ("Settlement" or "Agreement"), attached as **Exhibit A**, which will resolve all claims against Members 1st Federal Credit Union ("Members 1st") in the above-captioned action ("Action").[1]  The Settlement consists of: (1) a $910,000 cash Settlement Fund; (2) debt forgiveness for Class Members for debts associated with the overdraft charges at issue in this case, valued at approximately $170,000; and (3) meaningful injunctive relief in the form of a change in practices by Members 1st, so that it is no longer charging overdraft fees in the circumstances that gave rise to this case.  In addition, Members 1st will pay for all costs of Notice to Class Members and Settlement Administration. *See* Joint Declaration of Jefferey Kaliel, Arthur Stock, and Kenneth J. Grunfeld ("Joint Decl.") ¶ 15, attached hereto as **Exhibit B**.  Based on the risks and uncertainties associated with continued litigation, the Settlement represents an outstanding achievement that will provide immediate benefits to the Settlement Class without further risks, delays, and unnecessary costs.

Plaintiff and Class Counsel now seek Final Approval of the Settlement.  Based upon the controlling Third Circuit legal standards and supporting facts, Final Approval is clearly warranted.

---

[1] All capitalized terms used throughout this memorandum have the same meanings as those found in Section II of the Settlement Agreement.

1

## STATEMENT OF FACTS

**A.     Factual Background and Procedural History.**

This case concerns Members 1st's practice of assessing $37 Overdraft Fees on debit card transactions that authorized against a positive balance but settled against a negative balance ("Authorize Positive, Purportedly Settle Negative Fees" or "APPSN Fees").   Plaintiff alleges that APPSN Fees are not permitted by Members 1st's account agreements. Plaintiff further alleges that APPSN Fees violate state consumer protection law as well as the Electronic Funds Transfer Act and regulations promulgated thereunder.  Joint Decl. ¶ 4.

On December 6, 2018, Plaintiff filed a Class Action Complaint in Philadelphia County Court of Common Pleas seeking monetary damages, restitution and declaratory relief arising from Members 1st's alleged unfair assessment and collection of Overdraft Fees.  Plaintiff alleged breach of contract and violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law.  After Members 1st filed preliminary objections seeking, among other things, to transfer the action to Cumberland County, Plaintiff voluntarily dismissed that action and filed this action in the Middle District of Pennsylvania on March 29, 2019, adding claims arising under the federal Electronic Funds Transfer Act and Regulations established thereunder.  Agreement, Recital A.; Joint Decl. ¶ 6.

On June 4, 2019, Members 1st filed a motion to dismiss the Complaint, raising

2

several defenses as to the sufficiency of the Complaint.  In the motion to dismiss, Members 1st asserted that substantially all of its customers who had open accounts as of January 14, 2019, had agreed to arbitrate any claims, and had waived the right to participate a class action against Members 1st.  Dkt. 12-2.  The motion also raised a statute of limitations defense arguably applicable to Plaintiff's individual claim. On July 27, 2019, Plaintiff filed an Amended Complaint limiting the proposed class to individuals who, like himself, had closed their accounts prior to January 14, 2019, and accordingly were not subject to the arbitration agreement and class waiver.  Dkt. 27.  Members 1st Answered the Amended Complaint on July 23, 2019, asserting 25 affirmative defenses.  Dkt. 28. Plaintiff's Counsel thereafter formulated and served targeted discovery requests. Joint Decl. ¶ 7.

While simultaneously pursuing discovery, the Parties engaged in preliminary settlement discussions.  Plaintiff's counsel made clear that they were interested in settling only on a class-wide basis.  On November 13, 2019, the Parties participated in a formal mediation session before retired Pennsylvania Supreme Court Justice J. Michael Eakin in Harrisburg.  *Id.* In advance of the mediation, Members 1st provided Plaintiff's Counsel with detailed transactional information regarding its overdraft charges on Debit Card Transactions for a sampling of several months during the Class Period. Joint Decl. ¶ 8.

3

At the mediation, the Parties reached an agreement and signed a Memorandum of Understanding which memorialized the parties' intention to settle all claims of Plaintiff and Class Members, subject to negotiation and execution of the Agreement and subject to Approval by the Court as required by Rule 23(e).  On November 14, 2019, the Parties filed a Joint Notice of Settlement with the Court, Dkt. 34, and on January 31, 2020, the Parties signed the Settlement Agreement now before the Court, attached to this Motion as Ex. A.  Joint Decl. ¶ 9.

On January 31, 2020, Plaintiff moved for appointment of Lead Counsel, preliminary approval of the settlement and certification of a class for settlement purposes.  Dkt. 41.  On February 3, 2020, this Court granted class certification for settlement purposes, preliminarily approved the Settlement, and approved the propose Notice Program.  Dkt. 42.  Subsequently, the Court-approved Notice was provided to 9,743 Class Members by either email or U.S. mail.  Declaration of Peter Sperry Regarding Implementation of Notice Program, ¶ 7 ("Sperry Decl."), attached hereto as *Exhibit C.*

### B.     Summary of the Settlement Terms.

### 1.      The Class.

The Class is defined as:

**Former members of Members 1st who were charged APPSN Fees between March 29, 2015 and January 14, 2019, and who had closed their accounts prior to January 14, 2019.**

4

Agreement ¶ 1(f).  The Class excludes individuals who held accounts after January 14, 2019 because those individuals have allegedly agreed to arbitrate disputes and have arguably waived participation in class actions against Members 1st.  Joint Decl.

2.    **Relief for the Benefit of the Class.**

The Settlement consideration consists of four main components: (a) a $910,000 cash Settlement Fund to be distributed to Class Members; (b) forgiveness of debts in the amount of approximately $170,000 incurred by Class Members to Members 1st, other than debts as a consequence of credit cards, loans, or fraud,[2] (c) the separate payment of costs of providing Notice to the Class and administration of the Settlement, including the fees and expenses of the Settlement Administrator and the Notice Administrator, valued at approximately $50,000; and (d) the cessation of charging overdraft fees on APPSN transactions. Agreement ¶¶ 2, 3, 6(e), 9.

3.    **Class Release.**

In exchange for the benefits conferred by the Settlement, all Class Members will be deemed to have released Members 1st from claims relating to the subject matter of the Action.  Agreement ¶ 14.

---

[2] These debts arose as a consequence of overdraft charges that are at issue in this case.

### 4.    The Notice Program.

Notice was distributed to all Class members who could be located through Members 1st's records by either email or, where email addresses were unavailable, U.S. mail.  The Notice Program is described in detail in the Agreement ¶ 6, and in the Sperry Declaration.

The best testament to the reasonableness and fairness of the Settlement is the magnitude of the recovery. The $910,000 Settlement Fund, together with the $170,000 in debt forgiveness constitutes recovery of 57% of Class Members' potential damages.  That figure does not include the significant benefits to account holders based on the credit union's practice changes. Joint Decl. ¶ 13. This recovery is remarkable given the risks that Plaintiff faced. Indeed, the Court had not yet made a determination on liability, and Plaintiff risked the Court holding that the relevant Account agreements authorized APPSN fees. *Id.* Further, the Court had yet to certify a class. In light of the substantial risks Plaintiff and the Class faced, the Settlement is an excellent result.

Therefore, Plaintiff and Class Counsel respectfully request that the Court: (1) grant Final Approval to the Settlement; (2) certify for settlement purposes the Settlement Class pursuant to Federal Rules of Civil Procedure 23(b)(3) and (e); and (4) enter Final Judgment dismissing the Action with prejudice.

**ARGUMENT**

**A.      The Legal Standard for Final Approval.**

Under Federal Rule of Civil Procedure 23(e), a class action may not be settled without a final determination by the trial court that the proposed settlement is "fair, reasonable and adequate."  *In re Warfarin Sodium Antitrust Litig.* ("*Warfarin*", 391 F.3d 516, 534 (3d Cir. 2004) ("*Warfarin*"). The determination of fairness, reasonableness, and adequacy are left to the trial court's sound discretion.  *Id.* at 535 ("The decision of whether to approve a proposed settlement of a class action is left to the sound discretion of the district court."); *Eichenholtz v. Brennan*, 52 F.3d 478, 582 (3d Cir. 1995) (affirming district court and stating that "the approval of a class action is committed to the sound discretion of the district court").

The Court of Appeals for the Third Circuit has adopted the following nine-factor test for determining whether a settlement is fair, reasonable, and adequate at the final approval stage:

> '(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.'

*In re Ins. Brokerage Antitrust Litigation*, 579 F.3d 241, 258 (3d Cir. 2009) (citing *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975)); *see also Haught v. Summit Res., LLC,* No. 1:15-cv-0069,  2016 U.S. Dist. LEXIS 45054 at *11-12 (M.D. Pa. Apr. 4, 2016)((Jones, J.).

### B.    This Settlement Satisfies All Criteria for Final Approval.

Each of the relevant factors weighs in favor of Final Approval of this Settlement. First, the Settlement was reached in the absence of collusion, and is the product of good-faith, informed, and arm's length negotiations by competent counsel, in conjunction with an experienced mediator.  Furthermore, an analysis of the factors related to the fairness, adequacy and reasonableness demonstrates that the Settlement is more than sufficient under Rule 23(e), such that Final Approval is clearly warranted.

Any settlement requires the parties to balance the merits of the claims and defenses asserted against the attendant risks of continued litigation and delay.  Plaintiff believes that the claims asserted are meritorious and that they would prevail if this matter proceeded to trial.  Members 1st assets in its answer that Plaintiff's claims are unfounded and denies any potential liability.

The Parties concluded that the benefits of settlement in this case outweigh the risks and uncertainties of continued litigation, as well as the attendant time and expenses associated with contested class certification proceedings and possible

interlocutory appellate review, completing merits discovery, pretrial motion practice, trial, and final appellate review.  Joint Decl. ¶21.

### 1.    The Complexity, Expense and Duration of Litigation Supports Approval of the Settlement.

As an initial matter, "it is common knowledge that class action suits have a well-deserved reputation as being most complex."  *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977).   Accordingly, avoiding the delay, risks, and costs of continued litigation against a defendant is a valid reason for counsel to recommend, and for the court to approve a settlement.  *See Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968); *see also Warfarin*, 391 F.3d at 536 (recognizing that consideration of continued litigation with additional discovery, extensive pretrial motions, a lengthy trial, and post-trial motions and appeals weighed in favor of the settlement); *Ayers v. Haley Barbour, et al.*, 358 F.3d 356, 369 (5th Cir. 2004) ("settling now avoids the risks and burdens of potentially protracted litigation.").

The traditional means for handling claims like those at issue here would tax the court system, require a massive expenditure of public and private resources, and given the relatively small value of the claims of the individual members of the Settlement Class, could be impracticable.  Joint Decl. ¶ 25.  The claims and defenses in this Action are complex.  *Id.*  The risks and obstacles in this case are just as great as those in other bank Overdraft Fee cases, and this case would likely have taken years as well to

successfully prosecute. *Id*. Recovery by any means other than settlement would require additional years of litigation in this Court and the Third Circuit Court of Appeals. *Id*.; *see United States v. Glens Falls Newspapers, Inc.*, 160 F.3d 853, 856 (2d Cir. 1998) (noting that "a principal function of a trial judge is to foster an atmosphere of open discussion among the parties' attorneys and representatives so that litigation may be settled promptly and fairly so as to avoid the uncertainty, expense and delay inherent in a trial").

One of the most expensive aspects of ongoing litigation in this case involves the retention of experts to perform data analyses and to present those analyses in expert reports, at depositions, and at trial. Joint Decl. ¶ 26. Experts in the fields of marketing and banking may also be necessary. *Id*. These considerations, and the other considerations noted above, militate heavily in favor of the Settlement. *Id.; see Behrens*, 118 F.R.D. at 542 (noting likely "battle of experts" at trial regarding damages, which would pose "great difficulty" for plaintiffs).

The Settlement provides immediate and substantial benefits to approximately 10,000 former Members 1st customers. Joint Decl. ¶ 27. The proposed Settlement is the best vehicle for the Settlement Class to receive the relief to which they are entitled in a prompt and efficient manner. *Id*.

**2.   The Reaction of the Class to the Settlement Supports Approval of the Settlement.**

It is well settled that "the reaction of the class to the settlement 'is perhaps the most significant factor to be weighed in considering its adequacy.'"  *O'Keefe v. Mercedes-Benz United States, LLC*, 214 F.R.D. 266, 294 (E.D. Pa. 2003) (quoting *Sala v. National R.R. Passenger Corp.*, 721 F. Supp. 80, 83 (E.D. Pa. 1989)).  Not a single Settlement Class Member has objected to the Settlement or requested exclusion. Sperry ¶¶ 18-19 .  *See Mangone v. First USA Bank*, 206 F.R.D. 222, 227 (S.D. Ill. 2001) ("In evaluating the fairness of a class action settlement, such overwhelming support by class members is strong circumstantial evidence supporting the fairness of the Settlement."); *Austin v. Pennsylvania Dept. of Corrections*, 876 F. Supp. 1437, 1458 (E.D. Pa. 1995) ("Because class members are presumed to know what is in their best interest, the reaction of the class to the Settlement Agreement is an important factor for the court to consider.").  The overwhelmingly favorable reaction of the Settlement Class to the Settlement supports approval by the Court.

**3.   The Stage of the Proceedings at Which Settlement Was Achieved and the Amount of Discovery Completed Supports Approval of the Settlement.**

Courts consider the "degree of case development that class counsel have accomplished prior to settlement" to ensure that "counsel had an adequate appreciation of the merits of the case before negotiating."  *In re General Motors Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 813 (3d Cir. 1995).  At the same time, this

Court should be mindful that "[e]ven settlements reached at a very early stage and prior to formal discovery are appropriate where there is no evidence of collusion and the settlement represents substantial concessions by both parties." *In re Johnson & Johnson Derivative Litig.*, Nos. 10-2033 (FLW), 11-4992 (FLW), 11-2511 (FLW), 2012 WL 5292963, at *14 (D.N.J. Oct. 26, 2012); *see also Ressler v. Jacobson*, 822 F. Supp. 1551, 1555 (M.D. Fla. 1992) ("The law is clear that early settlements are to be encouraged, and accordingly, only some reasonable amount of discovery should be required to make these determinations.").

Although this case settled relatively early on, Plaintiff settled the Action with the benefit of an analysis of key documentation and data regarding Members 1st's APPSN transactions. Joint Decl. ¶ 13. As noted above, the review of this information and data positioned Class Counsel to evaluate with confidence the strengths and weaknesses of Plaintiffs' claims and prospects for success at class certification, summary judgment, and trial. *Id.* In addition, the Parties engaged in a full day formal mediation before an experienced and respected mediator, retired Pennsylvania Supreme Court Justice J. Michael Eakin. Joint Decl. ¶ 22. "[T]he participation of an independent mediator in settlement negotiations virtually insures that the negotiations were conducted at arm's length and without collusion between the parties." *Hall v. AT & T Mobility LLC*, No. 07-5325 (JLL), 2010 WL 4053547, at *7 (D.N.J. Oct. 13, 2010) (internal quotation marks omitted); *see also In re Cigna Corp. Sec. Litig.*, 2007

WL 2071898, at *3 (E.D. Pa. July 13, 2007) ("Concerning the presumption of fairness, it is clear that negotiations for the settlement occurred at arm's length, as the parties were assisted by a retired federal district judge who was privately retained and served as a mediator.").

Furthermore, Class Counsel have significant experience over the past few years in litigating the claims at issue through their active roles in Overdraft Fee class actions throughout the country. Joint Decl. ¶23. Class Counsel, with the assistance of experts, have extensively analyzed multiple sets of data from various banks targeted at determining the damages incurred by the certified and putative classes. Id. The data analysis has enabled Class Counsel to gain an understanding of the evidence related to central questions in this Action and has prepared Class Counsel for well-informed settlement negotiations. Id. With Class Counsel's experience handling and litigating Overdraft Fee class actions comes extensive knowledge of the claims, defenses, and applicable law governing Plaintiff's claims.

In sum, Plaintiff and Class Counsel had sufficient information to act intelligently in negotiating the terms of the Settlement that are before the Court for approval. See Ripley v. Sunoco, Inc., 287 F.R.D. 300, 312 (E.D. Pa. 2012) (stating that "[d]espite the early settlement of this case," this factor weighs in favor of approving the settlement because "the parties conducted an 'exhaustive investigation of the facts and the underling claims and defenses"). Moreover, a proposed settlement that is the

result of arm's-length negotiations by class counsel is presumptively fair and reasonable. *See Teachers' Ret. Sys. of Louisiana v. A.C.L.N., Ltd.*, No. 01-cv-11814, 2004 WL 1087261, at *1 (S.D.N.Y. May 14, 2004).

### 4. The Risks of Establishing Liability and Damages, and Risks of Maintaining a Class Action Through Trial Supports Approval of the Settlement.

Plaintiff and Class Counsel are confident in the strength of their case, but are also pragmatic in their awareness of the various defenses available and risks inherent to litigation. Joint Decl. ¶ 33. As Judge James Lawrence King recognized in granting final approval to the settlement in a similar overdraft case: "The combined risks here were real and potentially catastrophic . . . . [B]ut for the Settlement, Plaintiffs and the class faced a multitude of potentially serious, substantive defenses, any one of which could have precluded or drastically reduced the prospects of recovery." *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1347-48 (S.D. Fla. 2011). Judge King's acknowledgment of these risks should be instructive given his intimate familiarity with defendant banks' defenses to plaintiffs' Overdraft Fee claims as a result of his presiding over the MDL for the past few years.

Plaintiff faced the risk of losing at the class certification stage, during summary judgment, in trial, or on appeal based on various theories advanced by Members 1st. The success of Plaintiff's claims in future litigation turns on these and other questions that are certain to arise in the context of motions for summary judgment and at trial.

14

Another major risk derives from the fact that the language in Members 1st's Account agreements raises a factual question of whether Members 1st adequately disclosed its practice of assessing APPSN fees. Joint Decl. ¶ 25. Thus, Members 1st asserted as a defense that its disclosures were adequate and that Plaintiff failed to state a claim upon which relief could be granted. Answer, Dkt. 28, at 10.

Each of these risks, by itself, could easily have impeded Plaintiff's and the Settlement Class' successful prosecution of these claims at trial and in an eventual appeal. Under the circumstances, Plaintiff and Class Counsel appropriately determined that value of the Settlement outweighs the gamble of continued litigation.

Moreover, even if Plaintiff prevailed at trial, any recovery could be delayed for years by an appeal. *Lipuma v. American Express Company*, 406 F. Supp. 2d 1298, 1322 (S.D. Fla. 2005) (likelihood that appellate proceedings could delay class recovery "strongly favor[s]" approval of a settlement).

The risks of maintaining this Action as a class action through trial provides additional support to Plaintiff's position that the Settlement should be approved. Members 1st raised seven different defenses to class certification in its Answer. Dkt. 28 at 8-9. And even assuming that Plaintiff were successful in getting a class certified, there is a risk that Defendant would ask the Court to reconsider or amend its decision before final judgment. *See Warfarin*, 391 F.3d at 537 ("A district court retains the

authority to decertify or modify a class at any time during the litigation if it proves to be unmanageable.").

> **5.     The Ability of Members 1st to Withstand a Greater Judgment.**

This factor has no application in this case, and does not weigh either in favor or against approval of the settlement.

> **6.     The Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and in Light of all the Attendant Risks of Litigation Supports Approval of the Settlement.**

These factors "evaluate whether the settlement represents a good value for a weak case or a poor value for a strong case." *Warfarin*, 391 F.3d at 538. "In conducting this evaluation, it is recognized 'that settlement represents a compromise in which the highest hopes for recovery are yielded in exchange for certainty and resolution and [courts should] guard against demanding too large a settlement based on the court's view of the merits of the litigation.'" *In re Safety Components*, 166 F. Supp. 2d 72, 92 (D.N.J. 2001) (citing *In re Aetna Sec. Litig.*, No. MDL 1219, 2001 WL 20928, at *11 (E.D. Pa. Jan. 4, 2001)).

The "best possible" recovery necessarily assumes Plaintiff's success on both liability and damages, as well as the ability of Members 1st to pay the judgment, if any. This hypothetical amount must be one that is, in fact, "possible" to recover. However, many facts must be considered in making this determination. Courts agree that the determination of a "reasonable" settlement is not susceptible to mathematical

16

precision.  Indeed, "in any case[,] there is a range of reasonableness with respect to a settlement." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972).  Moreover, courts have determined that settlement may be reasonable even where plaintiffs recover only part of their action losses.  *City of Detroit v. Grinnell*, 495 F. 2d 448, 455 (Second Cir. 1974); *Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988) ("[T]he fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate.").  "The existence of strong defenses to the claims presented makes the possibility of a low recovery quite reasonable." *Lipuma*, 406 F. Supp. 2d at 1323.

As discussed above, the Settlement is the product of arm's-length negotiations conducted by the Parties' experienced counsel under the supervision of a reputable and skilled mediator.  As a result of these negotiations, the Parties have reached a Settlement that Class Counsel believe to be fair, reasonable, and in the Settlement Class' best interests.   Class Counsel's assessment in this regard is entitled to considerable deference. *See Callahan v. Commonwealth Land Title Ins. Co.*, Nos. 88-7656, 88-8319, 1990 WL 168273, at *16 (E.D. Pa. Oct. 29, 1990) (approving settlement and stating that  "a court should refrain from merely substituting its own judgment of the merits of a settlement for that of counsel intimately associated with the litigation and consequently far more able to weigh its relative strengths and weaknesses"); *Daniel B. v. O'Bannon*, 633 F. Supp. 919, 926 (E.D. Pa. 1986) (stating

that "the professional judgment of counsel involved in the litigation is entitled to significant weight").

Class members' $1,080,000 total monetary recovery is outstanding, given the complexity of the litigation and the significant barriers that would loom in the absence of settlement: motions for summary judgment; trial; and appeals after a Plaintiff's verdict.  Based on Members 1st's data, Class Counsel estimate that the Settlement Class' most likely recoverable damages at trial would have been approximately $1,883,152. Sperry Decl. ¶ 7.  Thus, under the Settlement, Plaintiff and the Settlement Class are recovering a value of approximately 57% of their most probable damages, without further risks attendant to litigation. *Id*. That is a significant achievement considering the obstacles that Plaintiff faced in the litigation, including the issue of whether Plaintiff's claims are preempted by the National Bank Act.  Further, the percent recovery is even greater when one considers the millions of dollars in savings that will benefit Settlement Class Members and other Account holders as a result of the practice changes described above and that the Credit Union is paying the costs associated with Notice and Settlement administration.  *Id*.

### C. <u>The Notice to the Class Satisfied Rule 23 and Due Process.</u>

In addition to having personal jurisdiction over the Plaintiff, who is a party to this Action, the Court also has personal jurisdiction over all members of the Settlement Class because they received the requisite notice and due process. *See Phillips*

18

*Petroleum Co. v. Shutts,* 472 U.S. 797, 811-12 (1985) (citing *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 314-15 (1950)); *see also In re Prudential Ins. Co. of Am. Sales Practices Litig.,* 148 F.3d 283, 306 (3d Cir. 1998) ("*Prudential*").

The Notice Program was comprised of three parts: (1) email notice to all members of the Settlement Class for whom Members 1st had an email address; (2) notice by postcard to those Class members for whom who members 1st did not have an email address, and for Class members whose email Notice was undeliverable; and (3) a "Long Form" notice containing more detail than the Mailed Notice and Published Notice, that has been available on the Settlement website (www.whitesettlement.com) and via U.S. mail upon request.   Sperry Decl.

The Settlement Administrator received the data files that identified the names, email addresses, and last known addresses of all the members of the Settlement Class. It initially sent 9,494 notices by email, and 282 by postcard. *Id*. ¶¶11-12.   It subsequently sent an additional 946 postcard notices to Class members whose initial email or postcard notices were undeliverable.   *Id*. ¶¶ 13-15.   The Mailed Notice Program was timely completed.   *Id*.   In addition, the Settlement Website, with a Long Form notice and other important filings relating to the Settlement, was established to enable members of the Settlement Class to obtain detailed information about the Action and the Settlement. *Id*. ¶ 16. As of September 10, 2020, the Settlement Website

had 692 Page hits.  *Id.*  Thus, the Notice Program in this case satisfies the requirements of both Rule 23 and due process.

**D.**  **The Plan of Allocation is Fair and Reasonable and Should be Approved.**

Approval of a plan of allocation of settlement proceeds in a class action under Rule 23 is "governed by the same standards of review applicable to approval of the settlement as a whole: the plan must be fair, reasonable and adequate." *In re Am. Bus. Fin. Servs. Noteholders Litig.*, No. 05-232, 2008 WL 4974782, *9 (E.D. Pa. Nov. 21, 2008).  An allocation formula need only have a "reasonable, rational basis," where, as here, it is "recommended by 'experienced and competent' class counsel." *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 367 (S.D.N.Y. 2002); *White v. NFL*, 822 F. Supp. 1389, 1420-24 (D. Minn. 1993), *aff'd* 41 F.2d 402 (8th Cir. 1994).

Class Counsel and their expert used Members 1st's customer transactional and account data to determine which Account holders were charged for APPSN transactions, and the number of times that each was charged.  Joint Decl. ¶ 13. Thereafter, each Settlement Class Member's *pro rata* share of the Net Settlement Fund was calculated.  Agreement ¶ 9(e)(3).  Thus, the plan of allocation fairly and adequately accounts for the value of each Settlement Class Member's individual claim.

**CONCLUSION**

The Settlement securing immediate relief, including $910,000 in cash compensation and $170,000 in debt relief for the Settlement Class as a result of the practice changes implemented after the overdraft fee litigation commenced against the banking industry, and the Credit Union's payment of the costs of Notice and Settlement Administration up to a maximum of $180,000, constitutes an outstanding result by any objective measure. The Settlement easily satisfies the fairness and reasonableness standard of Rule 23(e), as well as the class certification requirements of Rules 23(a) and (b)(3).

Accordingly, Plaintiff and Class Counsel respectfully request that this Court grant Final Approval to the Settlement and enter Final Judgment dismissing the Action with prejudice.  A proposed Final Approval Order is attached hereto as ***Exhibit D***.

Dated: September 14, 2020.

Respectfully Submitted,

/s/Kenneth J. Grunfeld
Kenneth J. Grunfeld,
 PA Attorney ID: 84121
**GOLOMB & HONIK, P.C.**
1835 Market Street, Suite 2900
Philadelphia, PA 19103
Telephone: (215) 346-7338
Facsimile: (215) 985-4169
kgrunfeld@golombhonik.com

21

Jeffrey D. Kaliel (admitted *pro hac)*
Sophia Gold
**KALIEL PLLC**
1875 Connecticut Ave., NW, 10th Floor
Washington, D.C.  20009
Telephone: (202) 350-4783
jkaliel@kalielpllc.com
sgold@kalielpllc.com

Gregory F. Coleman (admitted *pro hac*)
Arthur Stock, PA Attorney ID 64336
**GREG COLEMAN LAW PC**
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Telephone: (865) 247-0080
Facsimile: (865) 522-0049
greg@gregcolemanlaw.com
arthur@gregcolemanlaw.com

## **<u>CERTIFICATION</u>**

Pursuant to Local Rule 7.8(b)(2), I certify that Plaintiff's Unopposed Motion for Approval of Class Settlement and Incorporated Memorandum of Law contains 4,801 words, excluding caption, tables, and signature block.


<u>/s/Arthur Stock</u>
Arthur Stock

## <u>CERTIFICATE OF SERVICE</u>

I, Kenneth J. Grunfeld, counsel for the Plaintiff and the Proposed Class, hereby certifies that on this 11th day of September, 2020, a true and correct copy of the foregoing was filed and served via CM/ECF on all counsel of record.

/s/Kenneth J. Grunfeld
Kenneth J. Grunfeld, PA Attorney ID: 84121
**GOLOMB & HONIK, P.C.**