# EXHIBIT A

# SETTLEMENT AGREEMENT AND RELEASE

*Michael White v. Members 1st Federal Credit Union*

Active\107104824.v1-1/27/20

## PREAMBLE

This Settlement Agreement and Release (the "Agreement") is entered into by and among plaintiff Michael White ("Named Plaintiff") and all those on whose behalf he is prosecuting this action (each of them a "Plaintiff" and all of them "Plaintiffs"), on the one hand, and defendant Members 1st Federal Credit Union ("Members"), on the other hand, as of the date executed below. All references in this Agreement to a "party" or the "parties" shall refer to a party or the parties to this Agreement.

## RECITALS

A. Named Plaintiff initiated the Action (defined below) by filing a Class Action Complaint in the Philadelphia County Court of Common Pleas on December 6, 2018, alleging breach of contract and violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law. Members filed preliminary objections seeking, among other things, to transfer the Action to Cumberland County, Pennsylvania. Named Plaintiff voluntarily dismissed the Action and filed a new action in the United States District Court for the Middle District of Pennsylvania on March 29, 2019, adding a claim arising under the federal Electronic Funds Transfer Act, and Regulation E established by that Act.

B. Members moved to dismiss the Action on June 4, 2019, arguing, inter alia, that Named Plaintiff could not represent the members who were bound by the arbitration provision and class action waiver that had been incorporated into its Member Agreements. In response, Named Plaintiff filed an Amended Complaint (defined below) on July 9, 2019.

C. The Amended Complaint limits the Class to individuals who incurred APPSN Fees between March 29, 2015 (within the four year limitations period for breach of contract from the date the Common Pleas Complaint was filed) to January 14, 2019 the date that Members added the arbitration provision and class action waiver to its Member Agreements. It also limited Class membership to individuals who had closed their accounts before Members added the arbitration provision and class action waivers to its Member Agreements. In doing so, Named Plaintiff acknowledged he did not represent Members' current members.

D. On November 13, 2019, the Parties engaged in mediation before Justice Michael Eakin (Ret'd), which resulted in this Agreement.

E. Members is entering into this Agreement to resolve any and all controversies and disputes arising out of or relating to the allegations made in the Amended Complaint, and to avoid the burden, risk, uncertainty, expense, and disruption to its business operations associated with further litigation. Members does not in any way acknowledge, admit to or concede any of the allegations made in the Amended Complaint, and expressly disclaims and denies any fault or liability, or any charges of wrongdoing that have been or could have been asserted in the Amended Complaint. Members nevertheless believes that this settlement is in its best interest

and in the best interests of all of its members. Nothing contained in this Agreement shall be used or construed as an admission of liability and this Agreement shall not be offered or received in evidence in any action or proceeding in any court or other forum as an admission or concession of liability or wrongdoing of any nature or for any other purpose other than to enforce the terms of this Agreement.

F.   Named Plaintiff is entering into this Agreement to liquidate and recover on the claims asserted in the Amended Complaint, and to avoid the risk, delay, and uncertainty of continued litigation. Named Plaintiff does not in any way concede the claims alleged in the Amended Complaint lack merit or are subject to any defenses.

## AGREEMENT

**NOW**, **THEREFORE**, in consideration of the foregoing recitals, which are incorporated into and are an integral part of this Agreement, and in consideration of the mutual promises below, the parties agree as follows:

**1.   DEFINITIONS.**   In addition to the definitions contained elsewhere in this Agreement, the following definitions shall apply:

(a)   "Action" shall mean <u>Michael White v. Members 1st Federal Credit Union</u>, No. 1:19-cv-00556 (JEJ).

(b)   "Amended Complaint" shall mean the Amended Complaint Named Plaintiff filed on July 9, 2019.

(c)   "APPSN Fee(s)" shall mean the overdraft fee that Members charges on certain Point of Sale debit card transactions where there was a sufficient available balance at the time the transaction was authorized, but an insufficient available balance at the time the transaction was presented to Members for payment and posted to a member's account.

(d)   "Bar Date To Object" shall be the date set by the Court as the deadline for Class Members to file an Objection. The Bar Date To Object shall be thirty (30) days after the date the Notice (defined below) must be delivered to the Class Members.

(e)   "Bar Date To Opt Out" shall be the date set by the Court as the deadline for Class Members to opt out. The Bar Date To Opt Out shall be thirty (30) days after the date the Notice (defined below) must be delivered to the Class Members.

(f)   "Class" shall mean those former members of Members who were charged APPSN Fees between March 29, 2015 and January 14, 2019, and who had closed their accounts prior to January 14, 2019.

(g)   "Class Counsel" shall mean Kaliel PLLC, Greg Coleman Law, and Golomb & Honik.

(h) "Class Member" shall mean any former member of Members who is in the Class.

(i) "Court" shall mean the U.S. District for the Middle District of Pennsylvania.

(j) "Effective Date" shall be thirty (30) days after the entry of the Final Approval Order (defined below) provided no objections are made to this Agreement. If there are objections to the Agreement, then the Effective Date shall be the later of: (1) forty five (45) days after entry of the Final Approval Order, if no appeals are taken from the Final Approval Order; or (2) if appeals are taken from the Final Approval Order, then thirty (30) days after an Appellate Court ruling affirming the Final Approval Order; or (3) Thirty (30) days after entry of a dismissal of the appeal.

(k) "Exclusion Letter" shall mean a letter by a Class Member who elects to opt out of this Agreement.

(l) "Final Approval Hearing Date" shall be the date set by the Court for the hearing on any and all motions for final approval of this Agreement.

(m) "Final Approval Order" shall mean the Order and Judgment approving this Agreement issued by the Court at or after the Final Approval Hearing Date.

(n) "Final Report" shall mean the report prepared by the Settlement Administrator of all receipts and disbursements from the Settlement Fund, as described in Section 10, below.

(o) "Members' Counsel" shall mean Fox Rothschild LLP and Post & Schell, P.C.

(p) "Motion For Final Approval" shall mean the motion or motions filed by Class Counsel, as referenced in Section 7, below.

(q) "Net Settlement Fund" shall mean the net amount of the Settlement Fund after payment of court approved attorneys' fees and costs, any court approved service award and the costs of Notice, and any fees paid to the Settlement Administrator.

(r) "Notice" shall mean the notice to Class Members of the Settlement provided for under the terms of this Agreement, as ordered by the Court in its Preliminary Approval/Notice Order (defined below) in accordance with Federal Rule of Civil Procedure 23(c)(2), and shall refer to the form of Notice attached hereto as Exhibit 1.

(s) "Notice Program" shall mean the methods provided for in this Agreement for giving the Notice.

(t) "Preliminary Approval/Notice Order" shall mean the Order issued by the Court preliminarily approving this Agreement and authorizing the sending of the Notice to Class Members, as provided in Sections 5 and 6, below.

(u)     "Settlement" means the settlement into which the Parties have entered to resolve the Action. The terms of the Settlement are set forth in this Agreement and the attached exhibit.

(v)     "Settlement Administrator" shall mean the entity that will provide the notice and other administrative handling in this Agreement. Class Counsel shall request bids from at least two separate qualified claims administrators and the one providing the lowest bid shall be selected.

(w)     "Settlement Fund" shall mean the Nine Hundred and Ten Thousand Dollars ($910,000.00) to be paid by Members to create a common fund for the benefit of the Settlement Class under the terms of this Agreement.

**2.     CHANGE IN PRACTICES**.  Members has implemented the 2019.00 Service Pack 6 Release issued by Symitar, a portion of which is designed to prevent an overdraft fee on transactions approved on a positive available balance.

**3.     DEBT FORGIVENESS.** In addition to the Settlement Fund, Members shall agree not to pursue any Class Member for any balance due and remaining unpaid at the time of the closing of the Class Member's account, other than for negative balances that resulted from a Members' loan, credit card, or fraud. Members calculates the amount forgiven pursuant to this paragraph to be approximately $170,000.00. The amounts forgiven pursuant to this paragraph shall cease to be reported as owed to Members in any credit reporting service, including Chexsystems, as of the Effective Date.

**4.     CLASS ACTION SETTLEMENT**.   Named Plaintiff shall propose and recommend to the Court that a settlement Class be certified, which classes shall be comprised of the Class Members. Members agrees solely for purposes of the Settlement provided for in this Agreement, and the implementation of such Settlement, that this Action shall proceed as a class action; provided, however, that if a Final Approval Order is not issued, then Members shall retain all rights to object to maintaining this Action as a class action. Named Plaintiff and Class Counsel shall not reference this Agreement in support of any subsequent motion relating to certification of a liability class.

**5.     PRELIMINARY SETTLEMENT APPROVAL**.  Pursuant to the Court's December 19, 2019 Order, on or before January 31, 2020, Class Counsel shall file a motion seeking a Preliminary Approval/Notice Order. The proposed Preliminary Approval/Notice Order that will be attached to the motion shall be in a form agreed upon by Class Counsel and Members. The Preliminary Approval/Notice Order shall provide for the following: (1) preliminary approval of this Agreement; (2) provisional certification of the Class for settlement purposes; (3) approval of the Notice Program set forth herein and approval of the form and content of the Notices of Settlement as provided in Section 6 below; (4) appointment of Class Counsel as counsel to the provisionally certified class, and (5) scheduling of a Final Approval Hearing for a time and date mutually convenient for the Court, Class Counsel, and Members' Counsel.

**6.** **<u>NOTICE TO THE CLASSES.</u>**

(a) Members shall provide to the Settlement Administrator sufficient information to determine the number of APPSN Fees incurred by each Class Member, and the names, addresses, and (if known to Members) email addresses of each Class Member. The Settlement Administrator shall send the Notice to all Class Members no later than 120 days following the Court's approval of the Preliminary Approval/Notice Order.

(b) The Notice shall be mailed by the Settlement Administrator to Class Members by United States mail to the best available mailing addresses. Members shall provide the Settlement Administrator with last known mailing addresses for these Class Members. The Settlement Administrator shall run the names and addresses through the National Change of Address Registry and update as appropriate. If a mailed Notice is returned with forwarding address information, the Settlement Administrator shall re-mail the Notice to the forwarding address. For all mailed Notices that are returned as undeliverable, the Settlement Administrator shall use standard skip tracing devices to obtain forwarding address information and, if the skip tracing yields a different forwarding address, the Settlement Administrator shall re-mail the Notice to the address identified in the skip trace, as soon as reasonably practicable after the receipt of the returned mail. The Settlement Administrator may also attempt to reach Class Members who could not be reached by mail through email or other means. The Long-Form Notice shall be available on a settlement website maintained by the Settlement Administrator.

(c) The Settlement Administrator shall maintain a database showing mailing addresses to which each Notice was sent and any Notices that were not delivered by mail. A summary report of the Notice shall be provided to the Parties at least five (5) days prior to the deadline to file the Motion for Final Approval. The database maintained by the Settlement Administrator regarding the Notice shall be available to the parties and the Court upon request. It shall otherwise be confidential and shall not be disclosed to any third party without a court order.

(d) The Notice shall be in a form approved by the Court and, substantially similar to the notice form attached hereto as Exhibit 1. The parties may by mutual written consent make non-substantive changes to the Notice without Court approval.

(e) All costs associated with publishing, mailing and administering the Notice as provided for in this Section, and all costs of administration, including but not limited to the Settlement Administrator's fees and costs shall be paid by Members separate and apart from the Settlement Fund, subject to Members' right to reimbursement discussed at Section 11.

**7.** **<u>MOTION FOR FINAL APPROVAL</u>**. Provided the conditions in Section 15, below, are satisfied, Class Counsel shall file a Motion for Final Approval of this Agreement no later than 175 days following the Court's approval of the Preliminary Approval/Notice Order so that can be heard on the Final Approval Hearing Date.

**8.** **<u>ENTRY OF JUDGMENT</u>**. The Final Approval Order shall constitute the Court's final judgment in this Action. The Court shall retain jurisdiction to enforce the terms of the Final Approval Order.

**9.      THE SETTLEMENT FUND AND DISTRIBUTION.**

(a)     Creation of the Settlement Fund.  Within ten (10) days after the entry of the Preliminary Approval Order, Members shall transfer the Settlement Fund to the Settlement Administrator, who shall hold such funds in an Escrow Account.

(b)     Payments to Class Members.  The Settlement Fund includes (a) Class Counsels' fees and costs; (b) any service award payment to the Named Plaintiff; (c) distributions to Class Members; and (d) any taxes or additional fees, costs and expenses. In the event a Final Approval Order is not issued, or this Agreement is terminated by either party for any reason, including pursuant to Section 15, below, the Settlement Fund shall be refunded to Members within two (2) business days.

(c)     All funds held by the Settlement Administrator shall be deemed and considered to be in *custodia legis* of the Court, and shall remain subject to the jurisdiction of the Court, until distributed pursuant to this Agreement.

(d)     All funds held by the Settlement Administrator at any time shall be deemed to be a Qualified Settlement Fund as described in Treasury Regulation §1.468B-1, 26 C.F.R. §1.468B-1.

(e)     Payments shall be made from the Settlement Fund as follows:

(i)     Named Plaintiff's Attorneys' Fees and Costs.  Named Plaintiff's reasonable attorneys' fees and costs, as determined and approved by the Court, shall be paid from the Settlement Fund within ten (10) days of the Effective Date.  Class Counsel shall apply for an award of attorneys' fees of up to one-third (33-1/3%) of the value of this settlement to the Class Members plus reimbursement of reasonable litigation costs, to be approved by the Court.  Members agrees not to oppose an application up to one-third (33-1/3%) of the Settlement Fund but reserves the right to oppose an application for fees in excess of that amount.

(ii)    Service Award.  Named Plaintiff may apply to the Court for a service award of up to five thousand dollars ($5,000). Subject to the Court's approval, the service award shall be paid from the Settlement Fund ten (10) days after the Effective Date.

(iii)   Payments to Class Members.  The amount paid to each Class Member shall be calculated as follows:

(Net Settlement Fund/Total APPSN Fees)

X

Number of APPSN Fees per Class Member

(iv)    Payments to individual class members ("Individual Payments") shall be made no later than ten (10) days after the Effective Date, as follows:

6

        (1)    Class Members shall be sent a check by the Settlement Administrator at the address used to provide the Notice, or at such other address as designated by the Class Member. The Class Member shall have one-hundred and eighty (180) days to negotiate the check. Any checks uncashed after one hundred and eighty (180) days shall be distributed pursuant to Section 11.

    (v)    Other than as indicated in Section 11, no portion of the Settlement Fund shall revert to Members.

**10.    THE SETTLEMENT ADMINISTRATOR.**

    (a)    The Settlement Administrator shall execute a retainer agreement that shall provide, among other things, that the Settlement Administrator shall be bound by and shall perform the obligations imposed on it under the terms of this Agreement.

    (b)    The Settlement Administrator shall be subject to the jurisdiction of the Court with respect to the administration of this Agreement.

    (c)    The Settlement Administrator shall keep all information regarding Class Members confidential except as otherwise provided herein. All data created and/or obtained and maintained by the Settlement Administrator pursuant to this Agreement shall be destroyed twelve (12) months after the Final Report is submitted to the Court, provided that Class Counsel and Members' Counsel, or either of them, at their own cost, shall receive a complete digital copy of the Settlement Administrator's records, together with a declaration establishing completeness and authenticity, which they may maintain consistent with their own document retention policies. Class Counsel shall not be permitted to contact or communicate with Class Members, other than for purposes relating to the implementation or verification of performance of the terms of this Agreement.

    (d)    The Settlement Administrator also shall be responsible for timely and properly filing all tax returns necessary or advisable, if any, with respect to the Settlement Fund. Except as provided herein, Class Members shall be responsible for their own tax reporting of payments or credits received under the terms of this Agreement.

    (e)    The Settlement Administrator shall also be responsible for timely and properly filing all required federal, state, and local tax returns, information returns, including, but not limited to, any Form 1099-series return, and tax withholding statements, in accordance with the provisions of Treasury Regulation § 1.468B-2(k)(1).

    (f)    Within one hundred and ninety (190) days after the Effective Date or such other date as required by the Court, the Settlement Administrator shall prepare a declaration setting forth the total payments issued to Class Members by the Settlement Administrator, the total amount of any checks uncashed and/or returned, and the total amount of money being held by the Settlement Administrator.

**11.     FUNDS REMAINING AFTER DISTRIBUTION**. In the event funds remain in the Settlement Fund after the initial distribution to Class Members, Members shall be reimbursed for the settlement administration costs it paid. Thereafter, if funds remain, to the extent feasible, those funds shall be distributed pro rata in a second distribution to those Class Members that were paid or credited in the first distribution. All settlement administration costs of a second distribution will be paid out of the Settlement Fund. If a second distribution is not feasible, or if funds remain after a second distribution, those funds shall be distributed to a *cy pres* recipient or recipients, proposed by the Parties and to be approved by the Court, to work to promote financial literacy in Members' markets.

**12.     OPT-OUTS.**

(a)     A Class Member who wishes to exclude himself or herself from this Agreement, and from the release of claims and defenses provided for under the terms of this Agreement, shall submit an Exclusion Letter by mail to the Settlement Administrator. For an Exclusion Letter to be valid, it must be postmarked on or before the Bar Date To Opt Out. Any Exclusion Letter shall identify the Class Member, state that the Class Member wishes to exclude himself or herself from the Agreement, and shall be signed and dated.

(b)     The Settlement Administrator shall maintain a list of persons who have excluded themselves and shall provide such list to Members' Counsel and Class Counsel at least five (5) days prior to the date Class Counsel is required to file the Motion for Final Approval. The Settlement Administrator shall retain the originals of all Exclusion Letters (including the envelopes with the postmarks). The Settlement Administrator shall make the original Exclusion Letters available to Class Counsel, Members' Counsel and/or the Court upon two (2) court days' written notice.

**13.     OBJECTIONS.**

(a)     Any Class Member, other than a Class Member who timely submits an Exclusion Letter, may object to this Agreement.

(b)     To be valid and considered by the Court, the objection must be in writing and sent by first class mail, postage pre-paid, to the Settlement Administrator. The objection must be postmarked on or before the Bar Date To Object, and must include the following information:

> (i)     The objector's name, address, telephone number, the last four digits of his or her former account number with Members, and the contact information for any attorney retained by the objector in connection with the objection or otherwise in connection with this case;
>
> (ii)    A statement of the factual and legal basis for each objection and any exhibits the objector wishes the Court to consider in connection with the objection; and
>
> (iii)   A statement as to whether the objector intends to appear at the Final Approval Hearing, either in person or through counsel, and, if through counsel, identifying the counsel by name, address, and telephone number.

  (c) Class Counsel shall file any objections and responsive pleadings at least seven (7) days prior to the Final Approval Hearing Date.

  (d) Any objector who retains counsel shall be solely responsible for paying that attorney's fees and costs.

  (e) Any objector who fails to comply with the provisions herein shall waive and forfeit any and all rights to appear and/or object separately, and shall be bound by the terms of this Agreement and the orders and judgments of the Court.

 **14.** **RELEASE**. Upon the Effective Date of the Settlement, Named Plaintiff and each Class Member who has not opted out of the Class pursuant to the procedures set forth in this Agreement will release, waive, and forever discharge Members and each of its present, former, and future parents, predecessors, successors, assigns, assignees, affiliates, conservators, divisions, departments, subdivisions, owners, partners, principals, trustees, creditors, shareholders, joint ventures, co-venturers, officers, and directors (whether acting in such capacity or individually), attorneys, vendors, accountants, nominees, agents (alleged, apparent, or actual), representatives, employees, managers, administrators, and each person or entity acting or purporting to act for them or on their behalf, including, but not limited to, Members and all of its subsidiaries and affiliates (collectively, "Members Releasees") from any and all claims they have or may have against the Members Releasees with respect to any claim or issue which was or could have been brought relating to the above-referenced fee practices against the Members Releasees in the Action, in all cases including any and all claims for damages, injunctive relief, interest, attorneys' fees, and litigation expenses (the "Released Claims").

 **15.** **CONDITIONS TO SETTLEMENT.**

  (a) This Agreement shall be subject to and is expressly conditioned on the occurrence of all of the following events:

   (i) The Court has entered the Preliminary Approval/Notice Order, as required by Section 5 above;

   (ii) The Court has entered the Final Approval Order as required by Sections 7 and 8 above, and all objections, if any, to such Order are overruled, and all appeals taken from such Order are resolved in favor of approval; and

   (iii) The Effective Date has occurred.

  (b) If all of the conditions specified in Section 15(a) are not met, then this Agreement shall be null and void.

  (c) In the event this Agreement is terminated, pursuant to Section 15(b) immediately above, or fails to become effective in accordance with Section 15(a) immediately above, then the parties shall be restored to their respective positions in this case as they existed as of the date of the execution of this Agreement. In such event, the terms and provisions of this Agreement shall have no further force and effect with respect to the parties and shall not be used in this case or in any other action or proceeding for any other purpose, and any order entered by

this Court in accordance with the terms of this Agreement shall be treated as vacated, *nunc pro tunc*.

**16.     REPRESENTATIONS.**

(a)     The parties to this Agreement represent that they have each read this Agreement and are fully aware of and understand all of its terms and the legal consequences thereof.  The parties represent that they have consulted or have had the opportunity to consult with and have received or have had the opportunity to receive advice from legal counsel in connection with their review and execution of this Agreement.

(b)     The parties have not relied on any representations, promises, or agreements other than those expressly set forth in this Agreement.

(c)     The Named Plaintiff, on behalf of the Class Members, represents that he has made such inquiry into the terms and conditions of this Agreement as he deems appropriate, and that by executing this Agreement, he, based on Class Counsel's advice, and their understanding of the Action, believe the Agreement and all the terms and conditions set forth herein, are fair and reasonable to all Class Members.

(d)     The Named Plaintiff represents that he has no knowledge of conflicts or other personal interests that would in any way impact his representation of the Class in connection with the execution of this Agreement.

(e)     Members represents and warrants that it has obtained all corporate authority necessary to execute this Agreement.

**17.     FURTHER ASSURANCES**.  Each of the parties hereto agrees to execute and deliver all such further documents consistent with this Agreement, and to take all such further actions consistent with this Agreement, as may be required in order to carry the provisions of this Agreement into effect, subject to Class Counsel's obligation to protect the interests of the Class Members.

**18.     APPLICABLE LAW**.  This Agreement shall be governed by and interpreted, construed, and enforced pursuant to the laws of the Commonwealth of Pennsylvania.

**19.     NO ORAL WAIVER OR MODIFICATION**.  No waiver or modification of any provision of this Agreement or of any breach thereof shall constitute a waiver or modification of any other provision or breach, whether or not similar.  Nor shall any actual waiver or modification constitute a continuing waiver.  No waiver or modification shall be binding unless executed in writing by the party making the waiver or modification.

**20.     ENTIRE AGREEMENT**.  This Agreement, including the exhibit attached hereto, constitutes the entire agreement made by and between the parties pertaining to the subject matter hereof, and fully supersedes any and all prior or contemporaneous understandings, representations, warranties, and agreements made by the parties hereto or their representatives pertaining to the subject matter hereof.  No extrinsic evidence whatsoever may be introduced in any judicial proceeding involving the construction or interpretation of this Agreement.

**21.** **BINDING ON SUCCESSORS**. This Agreement shall inure to the benefit of, and shall bind, each of the parties hereto and their successors.

**22.** **SEVERABILITY**. In the event any one or more of the provisions of this Agreement is determined to be invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of the remaining provisions contained in this Agreement will not in any way be affected or impaired thereby.

**23.** **COUNTERPARTS AND FACSIMILE SIGNATURES.** This Agreement may be executed and delivered in separate counterparts, each of which, when so executed and delivered, shall be an original, but such counterparts together shall constitute but one and the same instrument and agreement. Facsimile and pdf signature pages shall have the same force and effect as original signatures.

**24.** **NOTIFICATION**. Any notice to be given to Class Counsel and/or Named Plaintiff shall be sent by email as follows:

Jeffrey Kaliel, Esquire
Sophia Gold, Esquire
Kaliel PLLC
1875 Connecticut Avenue, NW, 10th Floor
Washington, DC 20009
Phone Number: (202) 350-4783
jkaliel@kalielpllc.com
sgold@kalielpllc.com

Greg F. Coleman, Esquire
Arthur Stock, Esquire
First Tennessee Plaza
800 S. Gay Street, Suite 1100
Knoxville, TN  37929
greg@gregcolemanlaw.com

Kenneth J. Grunfeld, Esquire
Golomb & Honik, P.C.
1835 Market Street, Suite 2900
Philadelphia, PA 19103
kgrunfeld@golombhonik.com
***Counsel for Plaintiff and the Proposed Classes***

Any notice to be given to Members under the terms of this Agreement shall be sent by email as follows:

Craig A. Styer, Esquire
Kelsey M. O'Neil, Esquire
Fox Rothschild LLP

11

Eagleview Corporate Center
747 Constitution Drive, Suite 100
Exton, PA  19341
cstyer@foxrothschild.com
koneil@foxrothschild.com
***Counsel for Defendant***

      Any notice to the Settlement Administrator shall be sent by email to the address of the claims administrator, which will be determined by the lowest bid for services.

[SIGNATURE PAGES FOLLOW]

IN WITNESS WHEREOF, the parties have entered this Agreement as of the dates set forth below.

Dated: January 24 2020  MEMBERS 1ST FEDERAL CREDIT UNION, a Pennsylvania chartered credit union

By: _____

Its: President and CEO


Dated: January___, 2020  MICHAEL WHITE, an individual on behalf of himself and those he represents


By:_____
   Michael White


**APPROVED AS TO FORM:**

Dated: January___, 2020  FOX ROTHSCHILD LLP
Craig A. Styer, Esquire
Kelsey M. O'Neil, Esquire


By:_____
   Craig A. Styer, Esquire


POST & SCHELL, P.C.
James J. Kutz, Esquire


Dated: January ___, 2020


By:_____
   James J. Kutz, Esquire

Attorneys for Defendant MEMBERS 1ST FEDERAL CREDIT UNION

13

IN WITNESS WHEREOF, the parties have entered this Agreement as of the dates set forth below.

Dated: January ___, 2020        MEMBERS 1ST FEDERAL CREDIT UNION, a
                                Pennsylvania chartered credit union

                                By:_____

                                Its:_____


Dated: January 27 2020          MICHAEL WHITE, an individual on behalf of
                                himself and those he represents

                                By: /s/ Michael A. White
                                    Michael White


**APPROVED AS TO FORM:**

Dated: January___, 2020         FOX ROTHSCHILD LLP
                                Craig A. Styer, Esquire
                                Kelsey M. O'Neil, Esquire


                                By:_____
                                    Craig A. Styer, Esquire


                                POST & SCHELL, P.C.
                                James J. Kutz, Esquire


Dated: January ____, 2020

                                By:_____
                                    James J. Kutz, Esquire

                                Attorneys for Defendant MEMBERS 1ST FEDERAL
                                CREDIT UNION

13

IN WITNESS WHEREOF, the parties have entered this Agreement as of the dates set forth below.

Dated: January __, 2020         MEMBERS 1ST FEDERAL CREDIT UNION, a
                                Pennsylvania chartered credit union

                                By:_____

                                Its:_____


Dated: January __, 2020         MICHAEL WHITE, an individual on behalf of
                                himself and those he represents


                                By:_____
                                        Michael White



**APPROVED AS TO FORM:**

Dated: January 24, 2020         FOX ROTHSCHILD LLP
                                Craig A. Styer, Esquire
                                Kelsey M. O'Neil, Esquire

                                By:_____
                                    Craig A. Styer, Esquire


                                POST & SCHELL, P.C.
                                James J. Kutz, Esquire


Dated: January ____, 2020

                                By:_____
                                        James J. Kutz, Esquire

                                Attorneys for Defendant MEMBERS 1ST FEDERAL
                                CREDIT UNION

13

IN WITNESS WHEREOF, the parties have entered this Agreement as of the dates set forth below.

Dated: January __, 2020        MEMBERS 1ST FEDERAL CREDIT UNION, a
                               Pennsylvania chartered credit union

                               By:_____

                               Its:_____


Dated: January __, 2020        MICHAEL WHITE, an individual on behalf of
                               himself and those he represents


                               By:_____
                                       Michael White



**APPROVED AS TO FORM:**

Dated: January __, 2020        FOX ROTHSCHILD LLP
                               Craig A. Styer, Esquire
                               Kelsey M. O'Neil, Esquire


                               By:_____
                                       Craig A. Styer, Esquire


                               POST & SCHELL, P.C.
                               James J. Kutz, Esquire


Dated: January 27, 2020

                               By:_____
                                       James J. Kutz, Esquire
                               Attorneys for Defendant MEMBERS 1ST FEDERAL
                               CREDIT UNION

Case 1:19-cv-00556-JEJ  Document 43-1  Filed 09/14/20  Page 18 of 19

1/29/2020

Dated: January ____, 2020

KALIEL PLLC
Jeffrey Kaliel, Esquire
Sophia Gold, Esquire

By: _Jeffrey Kaliel_ (DocuSigned)

Jeffrey Kaliel, Esquire

Dated: January 27, 2020

GREG COLEMAN LAW PC
Greg Coleman, Esquire
Arthur Stock, Esquire

By: _Greg Coleman_

Greg Coleman

Dated: January 30, 2020

GOLOMB & HONIK, P.C.
Kenneth J. Grunfeld, Esquire

By: _Kenneth J. Grunfeld_

Kenneth J. Grunfeld, Esquire

Attorneys for Named Plaintiff MICHAEL WHITE