# EXHIBIT B

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| MICHAEL WHITE, on Behalf of Himself and All Others Similarly Situated, <br><br> Plaintiff, <br> v. <br><br><br> MEMBERS 1ST FEDERAL CREDIT UNION, <br><br> Defendant. | **Case No. 1:19-cv-00556-JEJ** |

**JOINT DECLARATION OF KENNETH J. GRUNFELD, JEFFREY KALIEL, AND ARTHUR STOCK IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT, APPROVAL OF ATTORNEYS' FEES AND EXPENSES, AND SERVICE AWARD FOR PLANTIFF MICHAEL WHITE**

Kenneth J. Grunfeld, Jeffrey Kaliel, and Arthur Stock declare as follows:

1. We are Class Counsel for Plaintiff and the Class in the Action against Members 1st Federal Credit Union ("Members1st").[1] We submit this declaration in

---

[1] Unless otherwise stated, all capitalized defined terms have the same meaning as defined in the Settlement Agreement and Release attached to Plaintiff's Unopposed Motion for Approval of Class Settlement.

support of Plaintiff's Unopposed Motion for Final Approval of Class Settlement and for Certification of Class and Unopposed Motion for Approval of Attorney's Fees, Cost Reimbursement, and Service Award.  Unless otherwise noted, we have personal knowledge of the facts set forth in this Declaration, and could testify competently to them if called upon to do so.

2.     After litigation, mediation, and settlement negotiations, Plaintiff, Class Counsel, and Members 1st entered into a Settlement Agreement  and  Release ("Settlement"  or "Agreement") under which Members 1st has agreed to provide $1.08 million in monetary relief to the Class, including $910,000 in cash, the forgiveness of approximately $170,000 in debt from former account holders that arose from these challenged fees; implementation of a system update, a portion of which is designed to prevent overdraft fees on transactions approved on a positive available balance; and the payment of all notice and administration costs. Under the Settlement, Class Members will automatically receive distributions from the Net Settlement Fund in proportion to the actual harm that each of them sustained.

3.     The Action involved sharply opposed positions on several fundamental legal and factual issues.  Plaintiff maintains that the claims asserted in the Action are meritorious; that they would establish liability and recover substantial damages if the Action proceeded to trial; and that the final judgment recovered in favor of Plaintiff and the Class Members would be affirmed on an appeal.  Plaintiff's ultimate success in the litigation required them to prevail, in whole or in part, at *all* of these junctures.

Conversely, Members 1st's success at any one of these junctures could or would have spelled defeat for Plaintiff and the Class. Thus, continued litigation posed significant risks and countless uncertainties, as well as the time, expense and delays associated with trial and appellate proceedings.

4.      In light of the risks, uncertainties and delays associated with continued litigation, the Settlement represents a significant achievement by providing guaranteed benefits to the Class in the form of direct cash compensation, debt cancellation, and other valuable relief.

## A.   Background of the Litigation and Procedural History

5.      This case concerns Members 1st's practice of charging Overdraft Fees of $37 on transactions where the account holder had sufficient funds at the time the transaction occurred, but insufficient funds at the that the transaction was processed, often later in the same day ("Authorize Positive, Purportedly Settle Negative Fees" or "APPSN Fees"). The Amended Complaint alleges that Plaintiff Michael White was charged at least one such fee. Plaintiff alleges that APPSN Fees are not permitted by Members 1st's account agreements or by applicable statues and regulations. Plaintiff also alleges that the APPSN fees support actionable common law and statutory claims.

6.      On December 6, 2018, Plaintiff filed a Class Action Complaint in Philadelphia County Court of Common Pleas seeking monetary damages, restitution and declaratory relief arising from Members 1st's alleged unfair assessment and collection of Overdraft Fees. Plaintiff alleged breach of contract and violations of the

Pennsylvania Unfair Trade Practices and Consumer Protection Law.  After Members 1st filed preliminary objections seeking, among other things, to transfer the action to Cumberland County, Plaintiff voluntarily dismissed that action and filed this action in the Middle District of Pennsylvania on March 29, 2019, adding claims arising under the Federal Electronic Funds Transfer Act and Regulations established thereunder. Agreement, Recital A; Dkt. 1.

7.     On June 4, 2019, Members 1st filed a motion to dismiss the Complaint, raising several defenses to the sufficiency of the Complaint.  In the motion to dismiss, Members 1st asserted that substantially all of its customers who had open accounts as of January 14, 2019, had agreed to arbitrate any claims, and had waived participation in any class litigation, against Members 1st.  Dkt.  12-2.  The motion also raised a statute of limitations defense challenging Plaintiff's individual claim.  On July 27, 2019, Plaintiff filed an Amended Complaint limiting the proposed class to individuals who, like himself, had closed their accounts prior to January 14, 2019, and accordingly were not subject to the arbitration agreement and class waiver.  Dkt.  27.  Members 1st Answered the Amended Complaint on July 23, 2019, asserting 25 affirmative defenses.  Dkt. 28.  Plaintiff also drafted and served targeted discovery requests.

8.     Prior to engaging in protracted and expensive litigation, the Parties engaged in preliminary settlement discussions.  Plaintiff's counsel made clear that they were interested in settling only on a class-wide basis.  On November 13, 2019, the Parties participated in a formal mediation session before retired Pennsylvania Supreme

4

Court Justice J. Michael Eakin in Harrisburg. *Id*. In advance of the mediation, Members 1st provided Plaintiff's Counsel with detailed transactional information regarding its overdraft charges on Debit Card Transactions for several months during the Class Period.

9.   At the mediation, the Parties reached an agreement and signed a Memorandum of Understanding which memorialized the parties' intention to settle all claims of Plaintiff and Class Members, subject to negotiation and execution of the Agreement and subject to Approval by the Court as required by Rule 23(e).  On November 14, 2019, the Parties filed a Joint Notice of Settlement with the Court, Dkt. 34, and on January 31, 2020, the Parties signed the Settlement Agreement now before the Court, attached to this Motion as Ex. A.

10.   Plaintiff moved for Preliminary Approval of Settlement and Class certification on January 31, 2020.  Dkt. 41.  This Court certified the proposed Class for settlement purposes, preliminarily approved the Settlement, and Approved the Form of Notice and Notice Procedures on February 3, 2020. Dkt. 42.

11.   Records provided by Members 1st to the Claims Administrator demonstrated that the Class consisted of 9,743 members. Declaration of Peter Sperry, Epiq Class Action & Claims Solutions, Inc. ¶ ¶ 7. ("Sperry Declaration"). Notice was distributed to Class Members beginning on June 16, 2020, when 9,494 email notices and 282 Postcard Notices were sent by the Claims Administrator. *Id. ¶¶* 12-12. Subsequently, an additional 946 postcard Notices were sent to individuals whose

initial email or postcard notices were returned as undeliverable.  *Id.* ¶¶ 13-15. In all, of the 9,743 Class members identified from Members 1st's records, all but 43 have received Notice.  Settlement checks will be mailed to all of the Class Members.

### B.   Class Counsel's Investigation

12.     Prior to filing this matter, Class Counsel spent many hours investigating the claims of several potential plaintiffs against Members 1st.  Class Counsel interviewed a number of potential plaintiffs to gather information about Members1st's conduct and its impact upon consumers.  Counsel also examined the account holder agreements and consulted with experts in the banking industry.  This information was essential to Class Counsel's ability to understand the nature of Members 1st's conduct, the language of the Account agreements at issue and potential relief and remedies.

13.     As a matter of due diligence, Class Counsel expended significant resources researching and developing the legal claims at issue.  Class Counsel also crafted document requests and interrogatories with an eye toward class certification, summary judgment and trial.  Additionally, Class Counsel spent a significant amount of time analyzing data regarding Members 1st's overdraft fee revenue.  Prior to Settlement, Class Counsel and Plaintiff's expert used this data to analyze the range of alleged damages at issue in this case, comparing overdraft fees actually charged to the overdraft fees that would have been charged had the bank not employed the challenged APPSN policy.  The completed data analysis demonstrates that Class Members in the aggregate were charged $1.88 million in APPSN fees.  Sperry Decl. ¶ 5.  The $1.08

million Settlement value represents approximately fifty-seven percent (57%) of the overdraft fees incurred as a result of the challenged overdraft practices.

14.    After the Parties executed the Summary Agreement in connection with the Settlement, Class Counsel and their expert engaged in settlement-related investigation and confirmatory discovery, to identify the specific APPSN Fees paid by each Class members.  That investigation required Plaintiff's expert to analyze the relevant transactional data related to overdraft fees imposed upon members of the Class.

### C.    <u>Settlement Recovery</u>

15.    The Settlement consideration consists of four main components:  (a) a $910,000 cash Settlement Fund to be distributed to Class Members; (b) forgiveness of debts in the amount of $170,000 incurred by Class Members to Members 1st, other than debts as a consequence of credit cards, loans, or fraud,[2] (c) the separate payment of costs of providing Notice to the Class and administration of the Settlement, including the fees and expenses of the Settlement Administrator and the Notice Administrator, estimated to be about $50,000 (subject to reimbursement from the Settlement Fund if checks to Class members are returned or remain uncashed); and (d) the implementation of a system update, a portion of which is designed to prevent overdraft fees on transactions approved on a positive available balance.  Agreement

---

[2] The remaining debts arose as a consequence of overdraft charges that are at issue in this case.

¶¶ 2, 3, 6(e), 9.

16.    The practice change described herein is a significant benefit to Members 1st account holders.

### D.    Class Notice.

17.    The Notice Program in this Settlement was tailored to take advantage of the information Members 1st has available about the Class, including names and last-known addresses.  Notices were sent to the last known mail or email address of all Class Members.  The Notice apprised members of the Class of the material terms of the Settlement, the date and process by which persons in the Class may exclude themselves from the Class or object to the Settlement or petition for Attorneys' Fees, the date of the Final Approval Hearing, and the address of the Settlement Website at which persons in the Class may access the Long-Form Notice, Agreement and related documents and information. Agreement ¶ 6 and Ex. 1.

18.    The Settlement Administrator administered the Notice program.  The Settlement Administrator ran addresses through the National Change of Address Registry, and mailed all such members of the Class postcards the Notice, and performed reasonable address traces for all Notices that were returned as undeliverable.  Agreement ¶ 6(b).

19.    The Notice Program reached an extremely high percentage of the Class and satisfies the requirements of constitutional due process.

### E.    Service Awards, Attorneys' Fees and Costs.

20.     Class Counsel requests attorneys' fees of up to thirty-three and one third percent (33 1/3%) of the value of the Settlement, as well as reimbursement of costs and expenses incurred in connection with the Action.   The Parties negotiated and reached agreement regarding attorneys' fees and costs and service award only after reaching agreement on all other material terms of this Settlement.

**F.     Considerations Supporting Settlement.**

**1.     This Settlement is the Product of Good Faith, Informed and Arm's Length Negotiations.**

21.     The Parties concluded that the benefits of settlement in this case outweigh the risks and uncertainties of continued litigation, as well as the attendant time and expenses associated with contested class certification proceedings and possible interlocutory appellate review, completing merits discovery, pretrial motion practice, trial, and final appellate review.

22.     The Settlement in this case is the result of intensive, arm's-length negotiations between experienced attorneys who are familiar with class action litigation and with the legal and factual issues of this Action.  The Parties engaged in a full day formal mediation before an experienced and respected mediator, retired Pennsylvania Supreme Court Justice J. Michael Eakin.

23.     Furthermore, Class Counsel are particularly experienced in the litigation, certification, trial, and settlement of nationwide class action cases.  In negotiating this Settlement in particular, Class Counsel had the benefit of years of experience and a

familiarity with the facts of this case as well as with other cases involving similar claims.   As detailed above, Class Counsel conducted a thorough investigation and analysis of Plaintiff's claims and engaged in informal discovery with Members 1st. Class Counsel's review of the discovery enabled it to gain an understanding of the evidence related to central questions in the case, and prepared it for well-informed settlement negotiations.

24.   Class Counsel were also well-positioned to evaluate the strengths and weaknesses of Plaintiff's claims, and the appropriate basis upon which to settle them, as a result of their litigating similar claims in both state and federal courts across the country.

### 2   Complexity, Expense, and Duration of Litigation

25.   The traditional means for handling claims like those at issue here would tax the court system, require a massive expenditure of public and private resources, and given the relatively small value of the claims of the individual members of the Class, would be impracticable. The claims and defenses in this Action are complex, as is clear by Class Counsel's efforts in other bank overdraft fee cases that have been hard fought for years.  For example, Member 1st would certainly argue that its contract properly disclosed its practice of charging APPSN Fees.   There is no doubt that continued litigation here would be difficult, expensive, and time consuming.  The risks and obstacles in this case are just as great as those in other bank overdraft fee cases and this case would likely have taken years to successfully prosecute.  Recovery by

any means other than settlement would require additional years of litigation in this Court and the Third Circuit Court of Appeals.

26.     One of the most expensive aspects of ongoing litigation in this case involves the retention of experts to perform data analyses and to present those analyses in expert reports, at depositions, and at trial.  Experts in the fields of marketing and banking might also have been necessary. These considerations, and the other considerations noted above, militate heavily in favor of the Settlement.

27.     The Settlement provides immediate and substantial benefits to approximately 7,500 Members 1st's former customers.  The proposed Settlement is the best vehicle for the Class to receive the relief to which they are entitled in a prompt and efficient manner.

### 3.     The Reaction of the Class to the Settlement

28.     After 9,700 Notices were delivered to Class members have been delivered, not a single Class Member has objected to the Settlement.  Sperry Decl. ¶ 18-19.   Nor have any members of the Class requested to be excluded. The overwhelmingly favorable reaction of the Class to the Settlement supports approval by the Court.

### 4.     The Stage of the Proceedings at Which Settlement Was Achieved and the Amount of Discovery Completed Supports Approval of the Settlement.

29.     Plaintiff settled the Action with the benefit of an analysis of data

regarding Members 1st's APPSN fee revenue based on a sampling of several months' worth of data during the Class Period.  As noted above, the review of this information positioned Class Counsel to evaluate with confidence the strengths and weaknesses of Plaintiff's claims and prospects for success at class certification, summary judgment, and trial.

30.     Class Counsel have significant experience litigating the class actions and overdraft fee claims similar to those at issue in this Action.  In litigating these cases, Class Counsel have not merely been overseeing the litigation, but rather have been at the forefront of the litigation, having personally drafted discovery requests, taken depositions, extensively reviewed documents, argued and briefed motions to dismiss, prepared motions for class certification, partaken in other motion practice, settled numerous overdraft class actions at mediations, and argued Preliminary Approval and Final Approval motions.

31.     In addition, Class Counsel, with the assistance of experts, have extensively analyzed multiple sets of data from various banks targeted at determining the damages incurred by the certified and putative classes.  The data analysis has enabled Class Counsel to gain an understanding of the evidence related to central questions in the overdraft class actions and has prepared Class Counsel for well-informed settlement negotiations.  With Class Counsel's experience handling and litigating overdraft class actions comes extensive knowledge of the applicable law governing Plaintiff's claims.

32.     Class Counsel possess extensive knowledge of and experience in prosecuting class actions in courts throughout the United States, and have recovered hundreds of millions of dollars for the classes they have represented.  The experience, resources and knowledge Class Counsel bring to this Action is extensive and formidable.  Needless to say, Class Counsel is qualified to represent the Class and will along with the class representatives, vigorously protect the interests of the Class. .Declarations and Resumes of each of the firms are field concurrently with this Declaration.

   **5.     The Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and in Light of all the Attendant Risks of Litigation Supports Approval of the Settlement.**

33.     Plaintiff's $1.08 million recovery is outstanding, given the complexity of the litigation and the significant barriers that would loom in the absence of settlement: motions for summary judgment; trial; and appeals after a Plaintiff's verdict.  Based on Members 1st's data, Class Counsel estimate that the Class' most likely recoverable damages at trial would have been approximately $1.88 million compensatory damages.  Thus, Class Members are recovering about 57% of their most probable damages, without further risks attendant to litigation.  That is a significant achievement considering the obstacles that Plaintiff faced in the litigation, including the issue of whether Plaintiff's claims are preempted by the National Bank Act.  Further, the percent recovery is even better when one considers the substantial benefit to Members

1st account holders  as a result of the practice changes described above.

34.     There can be no doubt that this $1.08 million Settlement is a fair and reasonable recovery for the Class in light of the Bank's defenses, and the challenging and unpredictable path of litigation Plaintiff would have faced absent a settlement.

### F.  Request for Attorneys' Fees

35.     Class Counsel respectfully request attorneys' fees of thirty-three percent and one-third (33 1/3%) of the value of the settlement created through their efforts. Class Counsel also seek reimbursement of certain out-of-pocked costs and expenses totaling  $46,517 reasonably incurred in connection with the prosecution of this Action.  These out-of-pocket expenses were reasonably and necessarily incurred in furtherance of the prosecution of this Action.  The Parties negotiated and reached agreement regarding attorneys' fees and costs only after reaching agreement on all other material terms of the Settlement.

### 1.     The Size of the Fund created and the Number of Beneficiaries

36.     If the Court approves the Settlement, Plaintiff and the Class will recover approximately $910,000 in cash plus $170,000 in debt forgiveness, equal to approximately 57% of the $1,883,152 total damages incurred by Class Members. Sperry Declaration ¶ 5.  The Net Settlement (after deduction of Attorneys' Fees, expenses, and service fees awarded by the Court) sum will be distributed to all Class Members, in proportion to the amount of APPSN overcharges that each incurred. Settlement Agreement, ¶ 9(e).  Debt forgiveness will benefit all of the Class members

who have debts to Members 1st due to the imposition of APPSN fees However, when considering the benefit to Members 1st members as a result of the business practice changes that will eliminate APPSN charges in the future, and Members 1st's separate payment of the costs of Notice and Settlement Administration, the value of the settlement is significantly greater.

### 2.      The Reaction of Class Members

37.    After nearly every Class Member received notice, not a single Class Member objected to any part of the Settlement, which included the attorneys' fees requested.

### 3.   The Skill and Efficiency of the Attorneys Involved

38.    Class Counsel conferred a substantial benefit on the Class in the face of significant litigation obstacles.  To begin with, it is very difficult to identify – let alone establish liability based upon – the APPSN practice that lies at the heart of the Action. Litigation of this Action required counsel highly trained in class action law and procedure as well as the specialized issues presented here.  Class Counsel possess these attributes, and their participation added immense value to the representation of this large Class.  The record demonstrates that the Action involved a broad range of complex and novel challenges that Counsel met at every juncture.

39.    In addition, Class Counsel is highly experienced in this particular area of bank overdraft fee litigation, having litigated and settled many overdraft fee class actions state and federal courts throughout the country.  Class Counsel used the

extensive knowledge and experience obtained from those cases and applied it to the instant Action in order to achieve a fair and reasonable settlement, at an early juncture, for the Class Members.  Further, considering the potential for this Action to turn into a multi-year litigation (as has happened in several other overdraft fee class actions), Class Counsel's ability to negotiate the instant Settlement at the early stages of this litigation demonstrates their high level of skill and efficiency.

### 4.  The Complexity and Duration of the Litigation

40.     The claims and defenses are complex and litigating them is both difficult and time-consuming.  Although this Action settled after just a few months of litigation, recovery by any means other than settlement would have required additional years of litigation.  In fact, many bank overdraft fee class actions were litigated for years prior to reaching a settlement.  Others have already been tried or are close to being tried. There can be no question that Class Counsel's experience and knowledge from those cases resulted in the settlement of this Action at this early juncture.

41.     By contrast, the Settlement provides immediate and substantial benefits to almost 10,000 members of the Settlement Class.

42.     As with the other cases that have gone or are going to trial, proceeding forward would have consumed hundreds of thousands of dollars of Class Counsel's time and delayed any payments to class members for several years.

### 5.  The Risks of Nonpayment

43.     In undertaking to prosecute this complex case entirely on a contingent fee

basis, Class Counsel assumed a significant risk of nonpayment or underpayment.

44.     The risks are inherent in financing and prosecuting complex litigation of this type, but Class Counsel undertook representation with the knowledge that they would have to spend substantial time and money and face significant risks without any assurance of being compensated for their efforts.  Only the most experienced plaintiffs' litigation firms would risk the time and expense involved in bringing this Action in light of the possibility of a recovery at an uncertain date, or of no recovery at all.  Apart from the risk of no recovery, the deferral of fees in such an undertaking while at the same time advancing possibly hundreds of thousands of dollars in expenses would deter most firms.

45.     Although Class Counsel are confident in their case, Class Counsel are mindful that Members 1st advanced significant defenses that would have had to have been overcome in any continued litigation.  This Action involved several major litigation risks, several of which are discussed above.

46.     Apart from the risks, continued litigation would have involved substantial delay and expense, which further counsels in favor of Final Approval.  Had Plaintiff succeeded in obtaining class certification of a multistate class, Plaintiffs and the certified class would still have faced summary judgment, a trial on the merits, and a post-judgment appeal.  The uncertainties and delays from this process would have been significant.  Despite Class Counsel's effort in litigating and settling this Action for over a year, Class Counsel remains completely uncompensated for the time invested

in the Action, in addition to the expenses advanced.  There can be no dispute that this case entailed substantial risk of nonpayment.  The time Class Counsel spent on this case was time that could not be spent on other matters.  Class Counsel knows first-hand the risk of working on overdraft fee cases that resulted in little or no recovery after incurring hundreds of hours of attorney time and tens of thousands of dollars advanced in litigation expenses.

### 6.  The Amount of Time Devoted to the Case by Class Counsel

47.    Class Counsel expended significant resources researching and developing the legal claims at issue.  Although never served, Class Counsel also crafted document requests and interrogatories with an eye toward class certification, summary judgment and trial.  Additionally, Class Counsel spent substantial time analyzing data and working with their expert calculating the number of APPSN charges incurred by Class members.  Prior to Settlement, Class Counsel and Plaintiffs' expert used this data to analyze the range of alleged damages at issue in this case.

48.    After the Parties executed the Summary Agreement in connection with the Settlement, Class Counsel engaged in an extensive settlement-related investigation and confirmatory discovery, to determine—among other things—an appropriate plan for allocation of the Settlement Fund.  That investigation required Plaintiffs' expert to analyze the relevant transactional data related to Overdraft Fees imposed upon

members of the Class, and to help determine the fairest and most appropriate distribution formula in light of the data that members 1st possessed and maintained.

49.     In addition to the work already preformed, Class Counsel envisions spending a significant amount of time and effort going forward to present final approval, coordinate with the administrator and counsel for the Defendant on notice and distribution matters, and communicate with the Plaintiffs and Class Members regarding the Settlement and their rights.

### 7.   The Percentage Fee that Would Have Been Negotiated Had the Case Been Subject to a Private Contingent Fee Arrangement

50.     Class Counsel frequently represent commercial and personal injury clients on a contingent basis.  In commercial cases, it is not infrequent for fees to be in the range of 40% to 45% of the recovery.  Similarly, contingency fees in personal injury cases range between 33.33% and 40.0%. If there is an appeal taken, fees increase an additional 5.0% above the base agreed-upon percentage. Accordingly, Plaintiff's Counsel's fee request of 33% of the Settlement Fund is well within the range of similar private contingent fee arrangements.

### 8.   Lodestar Cross-Check

51.     The collective lodestar for Class Counsel is $347,600, based upon 546.1 hours expended, multiplied by a blended rate of $674 per hour.  In the event the Court

awards the request fee of 33% of the value of the Settlement, or $360,000, this would result in a multiplier of 1.04.  Detailed information on time spend in the case appears in the Declarations of Jeffrey Kaliel, Kenneth Grunfeld, and Arthur Stock, attached to Plaintiff's and Class Counsel's Motion for Final Approval of Application for Attorneys' Fes and Expenses and Service Award as Exhibits A, B, and C.

### G.  Counsel Seek an Award of Reasonable Expenses

52.    Plaintiff's Counsel also seek award of $46,517 for expenses actually incurred.  The largest parts of expenses are $43,050 for expert consultation services, and $1,655 for mediation expenses.  Detailed information is provided in the Kaliel, Grunfeld, and Stock Declarations.

### H.  Service Award for Plaintiff Michael White

53.  Class Counsel seeks a Service Award of $5,000 for Plaintiff Michael White. The Service Award will be paid from the Settlement Fund and will be in addition to the Class Member Payments Plaintiff is entitled to under the terms of the Settlement. This award will compensate Mr. White for his time and effort in the Action and for the risks he assumed in prosecuting the Action against Members 1st.

* * *

I declare under penalty of perjury of the laws of Pennsylvania and the United States that the foregoing is true and correct, and that this declaration was executed in Philadelphia, Pennsylvania on September 14, 2020.

/s/ Kenneth J. Grunfeld
Kenneth J. Grunfeld

I declare under penalty of perjury of the laws of Pennsylvania and the United States that the foregoing is true and correct, and that this declaration was executed in Washington, D.C. on September 14, 2020.

/s/ Jeffrey Kaliel
Jeffrey Kaliel

I declare under penalty of perjury of the laws of Pennsylvania and the United States that the foregoing is true and correct, and that this declaration was executed in Clarksboro, New Jersey on September 14, 2020.

/s/Arthur Stock
Arthur Stock