# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

MICHAEL WHITE, on Behalf of Himself
and All Others Similarly Situated,

Plaintiff,

v.

MEMBERS 1ST FEDERAL CREDIT
UNION,

Defendant.

**Case No. 1:19-cv-00556-JEJ**

**PLAINTIFF'S AND CLASS COUNSEL'S UNOPPOSED
MOTION FOR FINAL APPROVAL OF APPLICATION FOR
ATTORNEYS' FEES AND EXPENSES AND SERVICE AWARD
AND INCORPORATED MEMORANDUM OF LAW**

**Table of Contents**

I. INTRODUCTION ........................................................................ 2

II. APPLICATION FOR ATTORNEYS' FEES AND COSTS ................... 2

   A. The Percentage-of-Recovery Method is Appropriate for this Case. ... 3

   B. The Requested Fee is Reasonable Under the Percentage of Recovery
      Method. ............................................................................. 4

      1. The Size of the Fund Created and the Number of Beneficiaries.... 5
      2. Objections to the Settlement Terms or Attorneys' Fees Requested.5
      3. The Skill and Efficiency of the Attorneys Involved. ..................... 6
      4. The Complexity and Duration of the Litigation. ........................... 7
      5. The Risk of Nonpayment ................................................................ 9
      6. The Amount of Time Devoted to the Case by Class Counsel ....... 11
      7. Awards in Similar Cases. ............................................................. 12
      8. The Percentage Fee that Would Have Been Negotiated Had the
         Case Been Subject to a Private Contingent Fee Arrangement. ...... 14
      9. Lodestar Cross-Check. ................................................................. 15

   C. The Expense Request is Reasonable. ................................................ 17

III. APPLICATION FOR SERVICE AWARD .......................................... 18

IV. CONCLUSION ............................................................................. 20

## Table of Authorities

**Cases**                                                                **Page(s)**

*Bennett v. Behring Corp.*, 96 F.R.D. 343 (S.D. Fla. 1982) .................................... 11

*Bredbenner v. Liberty Travel, Inc.*, No. 09-905, 2011 WL 1344745  (D.N.J. Apr. 8, 2011) ................................................................................................ 18

*Cosgrove v. Citizens Auto. Finance, Inc., No. 09–1095*, 2011 WL 3740809 (E.D. Pa. August 25, 2011) ...................................................................................... *passim*

*Craig v. Rite Aid Corp., No. 4:08-cv-2317*, 2013 WL 84928 (M.D. Pa. Jan. 7, 2013) ................................................................................................................... 19

*Creed v. Benco Dental Supply Co., No. 3:12-CV-01571*, 2013 WL 5276109 (M.D. Pa. Sept. 17, 2013) .......................................................................................... *passim*

*Cullen v. Whitman Medical Corp.*, 197 F.R.D. 136 (E.D. Pa.) ............................. 13

*Enter. Energy Corp. v. Columbia Gas Transmission*, 137 F.R.D. 240 (S.D. Ohio 1991) .................................................................................................................... 20

*Godshall v. Franklin Mint Co., No. 91-CV-6539*, 2004 WL 2745890 (E.D. Pa. Dec. 1, 2004) ................................................................................................................ 19

*Gunter v. Ridgewood Energy Corp.,* 223 F.3d 190 (3d Cir. 2009) ....................... 16

*Hough v. Summit Res., LLC, No 15-0069,*  2016 U.S Dist. LEXIS 45054 (M.D. Pa. Apr. 4, 2016) ........................................................................................................ 18

*In re Aetna Inc. Sec. Litig., No. MDL 1219*, 2001 WL 20928 (E.D. Pa. Jan 4, 2001) .................................................................................................................... 16

*In re AremisSoft Corp. Sec. Litig.*, 210 F.R.D. 109 (D.N.J. 2002) ....................... 13

*In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722 (3d Cir. 2001) ....................... 16

*In re Cendant Corp.*, 232 F.Supp.2d 327 (3d Cir. 2002) ...................................... 17

*In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330 (S.D. Fla. 2011) ................................................................................................................... 10, 19

*In re Computron Software, Inc. Sec. Litig.*, 6 F. Supp. 2d 313 (D.N.J. 1998) ........ 4

*In re Diet Drugs Prod. Liab. Litig.*, 582 F.3d 524 (3d Cir. 2009) .......................... 4

*In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297 (N.D. Ga. 1993) ... 7, 8

*In re EquiMed, Inc. Sec. Litig., No. 98-CV-5374* (NS), 2003 WL 735099 (E.D. Pa. Mar. 3, 2003) ........................................................................................................ 13

*In re Gen. Instrument Sec. Litig.*, 209 F.Supp.2d 423 (E.D. Pa. 2001) ................ 13

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768 (3d Cir. 1995) ...................................................................................... 3, 4

*In re Ikon Office Solutions, Inc., Sec. Litig.*, 194 F.R.D. 166 (E.D. Pa. 2000) .. 4, 14

*In re Merck & Co., Inc. Vytorin ERISA Litig., No. 08-CV-285* (DMC), 2010 WL 547613 (D.N.J. Feb. 9, 2010) ..................................................................... 13

*In re Prudential Ins. Co. Sale. Litig.*, 148 F.3d 283 (3d Cir. 1998 ............. 3, 15, 16

*In re Rite Aid Corp. Sec. Litig.*, 362 F. Supp. 2d 587 (E.D. Pa. 2005) .................. 16

*In re Rite Aid Corp. Sec. Litig.,* 396 F.3d 294 (3d Cir. 2005) ................................ 16

*In re Safety Components, Inc. Securities Litigation*, 166 F. Supp. 2d 72 (D.N.J. 2001) ................................................................................................................ 13

*In re Shell Oil Refinery*, 155 F.R.D. 552 (E.D. La. 1993) ...................................... 8

*In re U.S. Bioscience, Civ. A. No. 92–0678*, 1994 WL 485935 (E.D. Pa. May 23, 1994) ........................................................................................................... 14, 15

*In re U.S. Oil & Gas Litig.*, 967 F.2d 489 (11th Cir. 1992) .................................... 8

*Mehling v. N.Y. Life Ins. Co.*, 248 F.R.D. 455 (E.D. Pa. Mar. 4, 2008) ............... 20

*Milliron v. T-Mobile USA, Inc., No. 08-4149* (JLL), 2009 WL 3345762 (D.N.J. Sept. 10, 2009) ................................................................................................. 13

*Mills v. Electric Auto-Lite Co.*, 396 U.S. 375 (1970) ...................................... 17, 18

*Ressler v. Jacobson*, 822 F. Supp. 1551 (M.D. Fla. 1992) ...................................... 8

*Sala v. Nat'l R.R. Passenger Corp.*, 128 F.R.D. 210 (E.D. Pa. 1989) .................. 13

*United States v. Glens Falls Newspapers, Inc.*, 160 F.3d 853 (2d Cir. 1998) ......... 7

*Wallace v. Powell*, 288 F.R.D. 347 (M.D. Pa. 2012) ........................................... 16

**Rules**

Fed. R Civ. P. 23 .................................................................................................. 17

Plaintiff Michael White ("Plaintiff"), respectfully moves for approval of Plaintiff's Motion for Attorneys' Fees, Expenses, and Service Award.[1]   The Settlement consists of (1) a $910,000 cash Settlement Fund; (2) debt forgiveness for Class Members for debts associated with the overdraft charges at issue in this case, valued at approximately $170,000; and (3) meaningful injunctive relief in the form of a change in practices by Members 1st, so that it is no longer charging overdraft fees in the circumstances that gave rise to this case.  In addition, Members 1st is paying all of the costs of Notice and Administration of this settlement. *See* Settlement Agreement and Release, ¶ 1-3; Joint Declaration of Jefferey Kaliel, Arthur Stock, and Kenneth J. Grunfeld ("Joint Decl.") ¶ 2, attached to Plaintiff's Motion for Approval of Settlement as ***Exhibits A and B***.  Based on the risks and uncertainties associated with continued litigation, the Settlement represents an outstanding achievement that will provide immediate benefits to the Settlement Class without further risks, delays and costs.

Plaintiff and Class Counsel respectfully requests that the Court award attorneys' fees equal to thirty-three percent (33%) of the value of the monetary parts of the Settlement, and reimbursement of litigation related expenses, to compensate Class Counsel for their work in achieving the Settlement, and award an incentive

---

[1] All capitalized terms used throughout this memorandum have the same meanings as those found in Section II of the Settlement Agreement.

payment to the to the named Plaintiff, whose willingness to represent the Settlement Class and participation made the Settlement possible.

## I.    INTRODUCTION

This case concerns Members 1st's practice of assessing $37 Overdraft Fees on debit card transactions that authorized against a positive balance but settled against a negative balance ("Authorize Positive, Purportedly Settle Negative Fees" or "APPSN Fees").  Plaintiff alleges that APPSN Fees are not permitted by Members 1st's account agreements. Plaintiff further alleges that APPSN Fees violate state consumer protection law as well as the Electronic Funds Transfer Act and regulations promulgated thereunder.  Joint Decl. ¶¶ 5-6. The facts underlying this case, and the circumstances leading to settlement, are more fully described in the accompanying Motion for Approval of Settlement, and the Joint Declaration, which Plaintiff expressly incorporates herein.

## II.   APPLICATION FOR ATTORNEYS' FEES AND COSTS

As more fully addressed herein below, consistent with standard class action practice and procedure in the Third Circuit, in other circuits, and in similar overdraft fee class actions around the country, Class Counsel respectfully request attorneys' fees of thirty-three and one-third percent (33 1/3%) of the Settlement Fund created through their efforts.  Class Counsel also seek reimbursement of certain out-of-pocket costs and expenses totaling $46,325 reasonably incurred in connection with

the prosecution of this Action. *Id*. The Parties negotiated and reached agreement regarding attorneys' fees and costs only after reaching agreement on all other material terms of the Settlement.   Agreement ¶ 92; Joint Decl. ¶ 20; See also Declarations of Jeffrey Kaliel, Kenneth Grunfeld, and Arthur Stock (the "Individual Declarations") attached hereto as ***Exhibits A, B, and C***.   For the reasons detailed herein, the requested fee and cost awards are appropriate, fair and reasonable, and should be approved by the Court.

### A.   The Percentage-of-Recovery Method is Appropriate for this Case.

"There are two methods for calculating attorneys' fees in a class action: the percentage-of-recovery method and the lodestar method." *Cosgrove v. Citizens Auto. Finance, Inc.,* No. 09–1095, 2011 WL 3740809, at *8 (E.D. Pa. August 25, 2011) (citation omitted).   In common fund cases such as this one, "the percentage-of-recovery method is generally favored because it allows courts to award fees from the fund in a manner that rewards counsel for success and penalizes it for failure." *Creed v. Benco Dental Supply Co.*, No. 3:12-CV-01571, 2013 WL 5276109, at * 5 (M.D. Pa. Sept. 17, 2013) (citing *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 300 (3d Cir. 2005)).   Although the percentage-of-recovery method is preferred, courts sometimes conduct a lodestar "cross-check" to test the reasonableness of a fee. *Prudential*, 148 F.3d 283 at 333.

While there is no general rule, the Third Circuit has observed that fee awards generally range from 19% to 45% of the settlement fund. *See In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.,* 55 F.3d 768, 822 (3d Cir. 1995); *In re Ikon Office Solutions, Inc., Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000) ("Percentages awarded have varied considerably, but most fees appear to fall in the range of nineteen to forty-five percent."); *In re Computron Software, Inc. Sec. Litig.*, 6 F. Supp. 2d 313, 322-23 (D.N.J. 1998) ("There is no set standard, however, on how to determine a reasonable percentage. Awards utilizing the percentage-of-recovery method can reasonably range from nineteen percent to forty-five percent of a settlement fund").

## B.   <u>The Requested Fee is Reasonable Under the Percentage of Recovery Method.</u>

The Third Circuit has identified the following factors to be considered when evaluating the reasonableness of a fee award:

> (1) the size of the fund created and the number of beneficiaries, (2) the presence or absence of substantial objections by Class Members to the settlement terms and/or fees requested by counsel, (3) the skill and efficiency of the attorneys involved, (4) the complexity and duration of the litigation, (5) the risk of nonpayment, (6) the amount of time devoted to the case by plaintiffs' counsel, (7) the awards in similar cases, and (8) the percentage fee that would have been negotiated had the case been subject to a private contingent fee arrangement at the time counsel was retained.

*In re Diet Drugs Prod. Liab. Litig.,* 582 F.3d 524, 541 (3d Cir. 2009) (*citing Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 (3d Cir. 2000)). These factors "are

not to be applied in a rigid, formulaic manner, but rather a court must weigh them in light of the facts and circumstances of each case." *Cosgrove*, 2011 WL 3740809, at *8.

A fee of 33 1/3% is reasonable and in fact fairly typical both inside and outside of this Circuit and, more specifically, is typical in other Overdraft Fee class actions.

### 1. The Size of the Fund Created and the Number of Beneficiaries.

As noted above, the Settlement establishes a common fund of $910,000, debt forgiveness of about $170,000, and an agreement by Members 1st to cease the practice at issue in this case. Notice has been disseminated to almost 10,000 members of the Settlement Class.  If the Court approves the Settlement, Plaintiff and the Settlement Class will recover approximately 57%  of the value of their most probable damages in cash and debt relief. e.  Joint Decl. ¶ 36.  In addition, the Settlement provides for a change in Members 1st's practice, so that it will no longer charge APPSN fees, saving Class members and other customers of Members 1sthundreds of thousands of dollars in the future.  Joint Decl. ¶ 2.   As the Action has resulted in significant benefits to Settlement Class Members, and other Members 1st customers, this factor weighs heavily in favor of the requested fee award.

### 2. Objections to the Settlement Terms or Attorneys' Fees Requested.

As of the date of the filing of this memorandum, after over 9700 Class Members received Notice of this settlement, not a single one has objected to any part of the Settlement, the Notice of which included the attorneys' fees requested. Declaration of Peter Sperry ¶19 ("Sperry Decl."), attached to Plaintiff's Motion for Approval of Settlement as ***Exhibits B and C*** This favor also weighs heavily in favor of approval.

### 3.    The Skill and Efficiency of the Attorneys Involved.

"The skill and efficiency of class counsel is measured by the quality of the result achieved, the difficulties faced, the speed and efficiency of the recovery, the . . . experience and expertise of the counsel, the skill . . . with which counsel prosecuted the case and the performance . . . of opposing counsel." *Cosgrove*, 2011 WL 3740809, at *9 (citing *Bredbenner v. Liberty Travel, Inc.,* Civ. A. No. 09–905, 2011 WL 1344745, at *15 (D.N.J. Apr. 8, 2011)).

Class Counsel conferred a substantial benefit on the Settlement Class in the face of significant litigation obstacles.  Joint Decl. ¶38.  Litigation of this Action required counsel highly trained in class action law and procedure as well as the specialized issues presented here.  Class Counsel possess these attributes, and their participation added immense value to the representation of this large Settlement Class.  Joint Decl. ¶¶ 38-39; See also Individual Declarations, and Firm Resumes

attached thereto.  The record demonstrates that the Action involved a broad range of complex and novel challenges that Class Counsel met at every juncture.

In addition, Class Counsel are highly experienced in this particular area of fee litigation, having litigated and settled many class actions, some involving overdraft fees, class actions in state and federal courts throughout the country.   Individual Decls.  Class Counsel used the extensive knowledge and experience obtained from those cases and applied it to the instant Action in order to achieve a fair and reasonable settlement, at an early juncture, for the Settlement Class Members. *Id*. Further, considering the potential for this Action to turn into a multi-year litigation (as has happened in several other overdraft fee class actions), Class Counsel's ability to negotiate the instant Settlement at the early stages of this litigation demonstrates their high level of skill and efficiency.   *Creed*, 2013 WL 5276109 at *5. Accordingly, this factor weighs in favor of the requested fee award.

### 4.      The Complexity and Duration of the Litigation.

The claims and defenses are complex and litigating them is both difficult and time-consuming.  Joint Decl. ¶ 40.  Although this Action settled after just six months of litigation, recovery by any means other than settlement would have required additional years of litigation. *Id*. In fact, many Overdraft Fee class actions were litigated for years prior to reaching a settlement. *Id*.  Others have already been tried or are at a posture where they are close to being tried. *Id*.  There can be no question

that Class Counsel's experience and knowledge from those cases resulted in the settlement of this Action at this early juncture. *Id. See United States v. Glens Falls Newspapers, Inc.*, 160 F.3d 853, 856 (2d Cir. 1998) (noting that "a principal function of a trial judge is to foster an atmosphere of open discussion among the parties' attorneys and representatives so that litigation may be settled promptly and fairly so as to avoid the uncertainty, expense and delay inherent in a trial."); *In re Domestic Air Transp. Antitrust Litig*., 148 F.R.D. 297, 317, 325-26 & n.32 (N.D. Ga. 1993) ("[A]djudication of the claims of two million claimants could last half a millennium").

By contrast, the Settlement provides immediate and substantial benefits to approximately 10,000 members of the Settlement Class.   Joint Decl. ¶ 27.  As stated in *In re Shell Oil Refinery*, 155 F.R.D. 552 (E.D. La. 1993):

> The Court should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation.  In this respect, "[i]t has been held proper to take the bird in the hand instead of a prospective flock in the bush."

*Id*. at 560 (alterations in original) (quoting *Oppenlander v. Standard Oil Co*., 64 F.R.D. 597, 624 (D. Colo. 1974)); *see also In re U.S. Oil & Gas Litig*., 967 F.2d 489, 493 (11th Cir. 1992) (noting that complex litigation "can occupy a court's docket for years on end, depleting the resources of the parties and taxpayers while rendering meaningful relief increasingly elusive").  Particularly because the

"demand for time on the existing judicial system must be evaluated in determining the reasonableness of the settlement," *Ressler v. Jacobson*, 822 F. Supp. 1551, 1554 (M.D. Fla. 1992) (citation omitted), there can be no doubt about the adequacy of the present Settlement, which provides generous benefits to the Class.  As with the other cases that have gone or are going to trial, proceeding forward would have consumed millions of dollars of Class Counsel's time and delayed any payments to class members for several years.  Joint Decl. ¶ 42.  "[T]he risk that the case could last for many more years-and the risk that, even after all these years, it would not yield an outcome that makes counsel's efforts worthwhile-is a substantial one.  It is furthermore, a risk that class counsel assumed when he took this case and which he deserves compensation for assuming." *Creed*, 2013 WL 5276109 at *6. Accordingly, this factor weighs in favor of approval.

### 5.    The Risk of Nonpayment.

In undertaking to prosecute this complex case entirely on a contingent fee basis, Class Counsel assumed a significant risk of nonpayment or underpayment. Joint Decl. ¶¶ 43-46.  That risk warrants an appropriate fee.  "[E]stablishing liability—at trial or ultimately on appeal—is never guaranteed." *Cosgrove*, 2011 WL 3740809, at *9.  The risks are inherent in financing and prosecuting complex litigation of this type, but Class Counsel undertook representation with the knowledge that they would have to spend substantial time and money and face

significant risks without any assurance of being compensated for their efforts. Only the most experienced plaintiffs' litigation firms would risk the time and expense involved in bringing this Action in light of the possibility of a recovery at an uncertain date, or of no recovery at all. Apart from the risk of no recovery, the deferral of fees in such an undertaking while at the same time advancing possibly hundreds of thousands of dollars in expenses would deter most firms.

Although Class Counsel are confident in their case, Class Counsel are mindful that Members 1st advanced significant defenses that would have had to been overcome in any continued litigation. Joint Decl. ¶ 45. This Action involved several major litigation risks. *Id.* As a Court recognized in granting final approval to the settlement with Bank of America in another overdraft case: "The combined risks here were real and potentially catastrophic. . . . [B]ut for the Settlement, Plaintiffs and the class faced a multitude of potentially serious, substantive defenses, any one of which could have precluded or drastically reduced the prospects of recovery." *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1347-48 (S.D. Fla. 2011).

Had Plaintiff succeeded in obtaining class certification of a class, Plaintiff and the certified class would still have faced summary judgment, a trial on the merits, and a post-judgment appeal. Joint Decl. ¶ 46. The uncertainties and delays from this process would have been significant. *Id.* Despite Class Counsel's effort

in litigating and settling this Action for over a year, Class Counsel remains completely uncompensated for the time invested in the Action, in addition to the expenses advanced.  Joint Decl. ¶46 _.  There can be no dispute that this case entailed substantial risk of nonpayment.  The time Class Counsel spent on this case was time that could not be spent on other matters.  Class Counsel knows first-hand the risk of working on overdraft fee cases that resulted in little or no recovery after incurring hundreds of hours of attorney time and tens of thousands of dollars advanced in litigation expenses.  *Id.* This factor also militates in favor of the requested attorneys' fees.

Given the myriad risks attending these claims, as well as the certainty of substantial delay and expense from ongoing litigation, the Settlement cannot be seen as anything except a fair compromise.  *See, e.g.*, *Bennett v. Behring Corp.*, 96 F.R.D. 343, 349-50 (S.D. Fla. 1982), *aff'd*, 737 F.2d 982 (11th Cir. 1984) (plaintiffs faced a "myriad of factual and legal problems" creating "great uncertainty as to the fact and amount of damage," making it "unwise [for plaintiffs] to risk the substantial benefits which the settlement confers . . . to the vagaries of a trial").

Accordingly, "a fee of one-third of the [S]ettlement is appropriate to compensate [Class Counsel] for the risks [they] took to secure significant benefits for the [Settlement Class].  *Creed*, 2013 WL 5276109 at *6.

11

### 6.    The Amount of Time Devoted to the Case by Class Counsel.

Class Counsel spent significant hours investigating the factual basis of Members 1st' charging APPSN Fees, and researching and developing the legal claims at issue. Joint Decl. ¶ 47. Class Counsel also spent substantial time preparing for mediation, which required Class Counsel to analyze a large amount of data and work with their expert to determine the likely class size and members. *Id*. Prior to Settlement, Class Counsel and Plaintiffs' expert used this data to analyze the range of alleged damages at issue in this case. *Id*.

After the Parties executed the Summary Agreement in connection with the Settlement, Class Counsel spent an enormous amount of time negotiating the specific terms of the Settlement. In addition, Class Counsel engaged in an extensive settlement-related investigation and confirmatory discovery, to determine—among other things—an appropriate plan for allocation of the Settlement Fund. Joint Decl. ¶ 48. That investigation required Plaintiffs' expert to analyze the relevant transactional data related to Overdraft Fees imposed upon members of the Settlement Class, and to help determine the fairest and most appropriate distribution formula. *Id*.

Moreover, Class Counsel spent extensive time preparing the preliminary and final approval papers in support of the Settlement. In addition to the work already performed, Class Counsel envisions spending a significant amount of time and effort

going forward to present final approval, coordinate with the administrator and counsel for the Defendant on notice and distribution matters, and communicate with the Plaintiffs and Class Members regarding the Settlement and their rights.  Joint Decl. ¶ 49.

Accordingly, this factor supports the requested fee.

### 7.    Awards in Similar Cases.

"An award of one-third of the settlement is consistent with similar settlements throughout the Third Circuit."  *Creed*, 2013 WL 5276109 at *6 (citing *Martin v. Foster Wheeler Energy Corp.*, No. 3:06-CV-0878, at *5, 2008 WL 906472 (M.D. Pa. March 31, 2008) ("District courts within the Third Circuit have typically awarded attorneys' fees of 30% to 35% of the recovery, plus expenses, in settlements of this size.").  *See also In re CareSciences, Inc. Sec. Litig.*, Civ. A. No. 01-5266 (E.D. Pa. Oct. 29, 2004) (awarding one-third recovery of $3.3 million settlement fund, plus expenses); *In re Penn Treaty Am. Corp.,* Civ. A. No. 01-1896 (E.D. Pa. Feb.5, 2004) (awarding 30% of $2.3 million settlement fund); *In re Corel Corp. Sec. Litig.*, 293 F. Supp. 2d 484, 495-98 (E.D. Pa.2003) (awarding one-third of $7 million settlement fund, plus expenses); *Erie Forge and Steel, Inc. v. Cyprus Minerals Co.*, Civ. Action No. 94-404 (W.D.Pa.1996) (33.3% fee from $3.6 million recovery)); *Sala v. Nat'l R .R. Passenger Corp.,* 128 F.R.D. 210 (E.D. Pa. 1989) (awarding 33%

of the first million dollars of settlement, plus 30% of the remainder between one and two million dollars of a $1.79 million fund).[2]

The fee requested here is also in line with the fees awarded in other Overdraft Fee class actions throughout the country:

| **Overdraft Fee Case Name** | **Percentage-of-the-Fund Awarded** |
|---|---|
| *Lopez v. JPMorgan Chase Bank, N.A.*, No. 1:09-MD-02036-JLK (S.D. Fla.) | **44%** of value of settlement, which includes 30% of $110 million cash fund and 30% of value of practice changes |
| *Jacobs v. Huntington Bancshares Inc.* No. 11-cv-000090 (Lake County Ohio) | **40%** of value of settlement, which includes 40% of $8.975 million and 40% of $7 Million in debt forgiveness |
| *Nelson v. Rabobank, N.A.*, No. RIC 1101391 (Cal. Supr.) | **35.2%** ($750k fee includes % of practice changes) |
| *Molina v. Intrust Bank, N.A.*, No. 10-CV-3686 (Dist. Ct. Ks.) | **33%** of $2.7 million |
| *Hawkins et al v. First Tenn. Bank, N.A.* (Cir. Ct. Tenn.) | **35%** of $16.75 million |
| *Swift v BancorpSouth*, No. 1:10-cv-00090-GRJ (N.D. Fla.) | **35%** of $24 million |
| *Casto v. City National Bank, N.A.*, No. 10-C-1089 (Cir. Ct. W.Va.) | **33%** of $3 million |
| *Schulte v. Fifth Third Bank*, No. 09-cv-6655 (N.D. Ill.) | **33%** of $9.5 million |

---

[2] Additionally, a number of courts within the Third Circuit have awarded fees in the same range within the last few years.  *See, e.g., In re Merck & Co., Inc. Vytorin ERISA Litig.*, No. 08-CV-285 (DMC), 2010 WL 547613 (D.N.J. Feb. 9, 2010) (awarding 33 1/3%); *Milliron v. T-Mobile USA, Inc.*, No. 08-4149 (JLL), 2009 WL 3345762 (D.N.J. Sept. 10, 2009) (awarding 33 1/3%); *In re EquiMed, Inc. Sec. Litig.*, No. 98-CV-5374 (NS), 2003 WL 735099 (E.D. Pa. Mar. 3, 2003) (awarding 33 1/3%); *Cullen v. Whitman Medical Corp.*, 197 F.R.D. 136 (E.D. Pa.) (awarding 33 1/3%); *In re Gen. Instrument Sec. Litig.,* 209 F.Supp.2d 423 (E.D. Pa. 2001) (awarding 33 1/3%); *In re Safety Components, Inc. Securities Litigation,* 166 F. Supp. 2d 72 (D.N.J. 2001) (awarding 33 1/3%); *In re AremisSoft Corp. Sec. Litig.*, 210 F.R.D. 109 (D.N.J. 2002) (awarding 33 1/3%).

| *Johnson v. Community Bank, N.A.*, No. 12-cv-01405-RDM (M.D. Pa.) | **33%** of $2.5 million |
|---|---|
| *Bodnar v. Bank of America*, No. 5:14-cv-03224-EGS (E.D. Pa.) | **33%** of $27 million |

Accordingly, the requested 33 1/3% of the Settlement Fund is reasonable and should be awarded here.

> ### 8.   The Percentage Fee that Would Have Been Negotiated Had the Case Been Subject to a Private Contingent Fee Arrangement.

"In private contingency fee cases, particularly in tort matters, plaintiffs' counsel routinely negotiate agreements providing for between thirty and forty percent of any recovery." *In re Ikon Office Solutions, Inc., Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000). *See also In re U.S. Bioscience*, Civ. A. No. 92–0678, 1994 WL 485935, at *9-10 (E.D. Pa. May 23, 1994) (Special Master's report by Hon. Arlin Adams examining pre-negotiated fee agreements between 30-40%). Class Counsel frequently represent commercial and personal injury clients on a contingent basis. Joint Decl. ¶ 50. In commercial cases, it is not infrequent for fees to be in the range of 40% to 45% of the recovery. Id. Similarly, contingency fees in personal injury cases range between 33.33% and 40.0%. *Id*. If there is an appeal taken, fees increase an additional 5.0% above the base agreed upon percentage. *Id*.

Accordingly, Plaintiffs' Counsel's fee request of 33 1/3% of the Settlement Fund is well within the range of similar private contingent fee arrangements. Accordingly, this factor weighs in favor of the requested fee award.

### 9.     Lodestar Cross-Check.

To assess whether the percentage-of-recovery method produces a reasonable fee, the Third Circuit recommends crosschecking the fee amount under the percentage-of-recovery method against the lodestar method. *Prudential*, 148 F.3d at 340-41.  The Court determines the lodestar by multiplying the number of hours counsel have worked on the Action by a reasonable hourly billing rate for such services in a given geographical area provided by lawyers of comparable levels of experience. *Id.* at 331 n. 102.  Multipliers are then applied to the lodestar in many instances to reflect the risks of non-recovery, as incentive to take on socially-beneficial cases, or as reward for extraordinary results. *Id*. at 340-41.  The lodestar cross-check utilizes a blended hourly rate for all the attorneys working on the Action. *In re Rite Aid Corp*, 396 F.3d at 306-07.  Furthermore, the lodestar cross-check requires "neither mathematical precision nor bean-counting." *Id.* at 306.  The resulting lodestar multiplier need not fall within any prescribed range. *Id.*  "In evaluating the hours reasonably spend on the case, the court does not have to 'review actual billing records' but can 'rel[y] on summaries submitted by the attorneys.'" *Wallace v. Powell*, 288 F.R.D. 347, 376 (M.D. Pa. 2012)

In the Third Circuit, courts look to fee awards in similar cases to determine the reasonableness of a fee. *Gunter*, 223 F.3d at 198. The Third Circuit has recognized that multipliers "ranging from one to four are frequently awarded in

common fund cases when the lodestar method is applied." *In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722, 742 (3d Cir. 2001) (quoting *Prudential*, 148 F.3d at 341); *In re Rite Aid Corp. Sec. Litig.*, 362 F. Supp. 2d 587 (E.D. Pa. 2005) (approving multiplier of 4.07); *In re Aetna Inc. Sec. Litig.*, No. MDL 1219, 2001 WL 20928, at *15 (E.D. Pa. Jan 4, 2001) (approving multiplier of 3.6).

The collective lodestar for Class Counsel is $347,600, based upon 546.1 hours expended multiplied by a blended rate of $636 per hour.  Joint Decl. ¶ 51.  In the event the Court awards the requested fee of 33% of the Settlement Value or $360,000, this fee would result in almost no multiplier: the fee will be 1.04 times the lodestar.   Given the nature, complexity, and potential duration of this Action, as detailed above, the risk of non-recovery, the value of the social benefit, and the extraordinary results in light of the obstacles, the tiny increase above multiplier is appropriate and reasonable.

### C.  The Expense Request is Reasonable.

Under Fed. R Civ. P. 23(h), the court may "award reasonable nontaxable costs that are authorized by law or by the parties' agreement."   "Counsel in common fund cases is entitled to reimbursement of expenses that were adequately documented and reasonably and appropriately incurred in the prosecution of the case." *In re Cendant Corp*., 232 F.Supp.2d 327, 343 (3d Cir. 2002).  Class Counsel request a total reimbursement of $46, 517 for certain litigation costs and expenses.

Joint Decl. ¶ 51; *see Mills v. Electric Auto-Lite Co*., 396 U.S. 375, 391-92 (1970). This sum represents actual out-of-pocket costs and expenses that Class Counsel necessarily incurred in connection with the prosecution and settlement of the Action. *See* Individual Declarations.  These costs and expenses consist mainly of $43,050 in expert fees, including expert fees paid to Arthur Olsen for the  analysis to determine the damages for the Settlement Class in the Action, to properly identify members of the Settlement Class, and to create a plan of allocation for the Settlement Fund; $1,655 in mediation costs. *Id*. Class Counsel does not seek reimbursement for all costs incurred. *Id*. The requested out-of-pocket expenses were reasonably and necessarily incurred in furtherance of the prosecution of this Action.  *Id*.

## III.  APPLICATION FOR SERVICE AWARD

Pursuant to the Settlement, Class Counsel requests a Service Awards of $5,000 for Plaintiff Michael White.  Agreement ¶ 9(e)(2); Joint Decl. ¶ 53.  It is routine to give service awards to class representatives because of their additional efforts in zealously prosecuting the case.  *See Sullivan,* 667 F.3d at n.65 ("The purpose of these payments is to compensate named plaintiffs for the services they provided and the risks they incurred during the court of the class action litigation" and "to reward the public service of contributing to the enforcement of mandatory laws.") (quoting *Bredbenner v. Liberty Travel, Inc.*, No. 09-905, 2011 WL 1344745,

at *22 (D.N.J. Apr. 8, 2011)); *Hough v. Summit Res.,* LLC, No 15-0069,  2016 U.S Dist. LEXIS 45054, at *19-21 (M.D. Pa. Apr. 4, 2016). "Awards to class representatives lie within the discretion of the Court and may be awarded for the benefit conferred on the class.  Factors courts examine when assessing such awards include the risks to the representative, his involvement in the litigation, and the degree to which he benefitted as a class member." *Cosgrove v. Citizens Automobile Finance, Inc.*, No. 09-1095, 2011 WL 3740809, at *10 (E.D. Pa. Aug. 25, 2011).

The above factors, as applied to this Action, demonstrate the reasonableness of the Service Award for Michael White.  Joint Decl. ¶ 52; *see, e.g., Checking Account Overdraft*, 830 F. Supp. 2d at 1357-58 ("The Court notes that the class representatives expended time and effort in meeting their fiduciary obligations to the Class, and deserve to be compensated for it.").

White provided assistance that enabled Class Counsel to successfully prosecute the Action and reach the Settlement, including: (1) submitting to interviews with Class Counsel; (2) locating and forwarding responsive documents and information; and (3) participating in conferences with Class Counsel.  In so doing, White was integral to forming the theory of the case.

White not only devoted his time and effort to the litigation, but the end result of his efforts, and those of Class Counsel, was a substantial benefit to the Settlement Class.  The amount requested accords with incentive awards granted by

courts in this Circuit and other Overdraft Fee cases throughout the country. *See e.g., Craig v. Rite Aid Corp.*, No. 4:08-cv-2317, 2013 WL 84928, at * 13 (M.D. Pa. Jan. 7, 2013) (ranging from $5,000 to $7,500); *Godshall v. Franklin Mint Co.*, No. 91-CV-6539, 2004 WL 2745890, at *4 (E.D. Pa. Dec. 1, 2004) ($20,000); *Mehling v. N.Y. Life Ins. Co.*, 248 F.R.D. 455, 467 (E.D. Pa. Mar. 4, 2008) (ranging from $7,500 to $15,000); *Nelson v. Rabobank, N.A.*, No. RIC 1101391 (Cal. Supr.) ($5,000); *Taulava v. Bank of Hawaii*, No. 11-1-0037-02 KTN (1st Cir. Haw.) ($7,500); *Casto v. City National Bank, N.A.*, No. 10-C-1089 (Cr. Ct. W.Va.) ($7,500); *Harris v. Associated Bank, N.A.*, No. 1:09-MD-02036-JLK ($5,000); *Blahut v. Harris Bank, N.A.*, No. 1:09-MD-02036-JLK ($5,000); *Wolfgeher v. Commerce Bank, N.A.*, No. 1:09-MD-02036-JLK ($5,000); *McKinley v. Great Western Bank*, No. 1:09-MD-02036-JLK ($5,000).

If the Court approves it, the Service Awards of $5,000 (to be paid from the Settlement Fund) will be 0.4% of the Settlement Fund, a ratio that falls well below the range of what has been deemed to be reasonable service awards.; *See, e.g*., *Enter. Energy Corp. v. Columbia Gas Transmission*, 137 F.R.D. 240, 251 (S.D. Ohio 1991) (approving service awards totaling $300,000, or 0.56% of a $56.6 million settlement). The Service Awards will be paid from the Settlement Fund. Agreement ¶ 95. Consequently, the Service Awards requested here is reasonable and should be approved by the Court.

## IV. CONCLUSION

The fee request satisfies the guidelines of the Third Circuit given the outstanding result, the litigation risks, and the time, effort and skill required to litigate claims of this nature to a satisfactory conclusion.

Accordingly, Plaintiff and Class Counsel respectfully request that this Court: (1) approve the requested Service Awards to the Plaintiff; (2) award Class Counsel attorneys' fees and expenses; and (3) enter Final Judgment dismissing the Action with prejudice.  A proposed Order is attached hereto as ***Exhibit*** *D.*

 Dated: September 14, 2020.

Respectfully Submitted,


 /s/Kenneth J, Grunfeld
Kenneth J. Grunfeld, PA Attorney ID: 84121
**GOLOMB & HONIK, P.C.**
1835 Market Street, Suite 2900
Philadelphia, PA 19103
Telephone: (215) 346-7338
Facsimile: (215) 985-4169
kgrunfeld@golombhonik.com

Jeffrey D. Kaliel (admitted *pro hac*)
Sophia Gold
**KALIEL PLLC**
1875 Connecticut Ave., NW, 10th Floor
Washington, D.C.  20009
Telephone: (202) 350-4783
jkaliel@kalielpllc.com
sgold@kalielpllc.com

21

Gregory F. Coleman (admitted *pro hac*)
Arthur Stock, PA Attorney ID 64336
**GREG COLEMAN LAW PC**
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Telephone: (865) 247-0080
Facsimile: (865) 522-0049
greg@gregcolemanlaw.com
arthur@gregcolemanlaw.com

## <u>CERTIFICATION</u>

Pursuant to Local Rule 7.8(b)(2), I certify that Plaintiff's Unopposed Motion for Approval of Class Settlement and Incorporated Memorandum of Law contains 4,816 words, excluding caption, tables, and signature block.

/s/Arthur Stock
Arthur Stock

## **CERTIFICATE OF SERVICE**

I, Kenneth J. Grunfeld, counsel for the Plaintiff and the Proposed Class, hereby certifies that on this 14th day of September, 2020, a true and correct copy of the foregoing was filed and served via CM/ECF on all counsel of record.

/s/Kenneth J. Grunfeld

Kenneth J. Grunfeld, PA Attorney ID: 84121
**GOLOMB & HONIK, P.C.**